KRISTA L. BAUGHMAN (SBN: 264600)
kbaughman@dhillonlaw.com
HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
STUART MCCOMMAS (*pro hac vice* forthcoming)
SMCCommas@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Plaintiff
JOHN STOSSEL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOHN STOSSEL, an individual,<br><br>Plaintiff v.<br><br>FACEBOOK, INC., a Delaware corporation; SCIENCE FEEDBACK, a French non-profit organization; and CLIMATE FEEDBACK, a French non-profit organization,<br><br>Defendants. | Case Number:<br><br>**COMPLAINT FOR DEFAMATION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Stossel ("Stossel") by and through his undersigned attorneys, for his Complaint against Facebook, Inc., ("Facebook") Science Feedback, and Climate Feedback (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1.    This case presents a simple question: do Facebook and its vendors defame a user who posts factually accurate content, when they publicly announce that the content failed a "fact-check" and is "partly false," and by attributing to the user a false claim that he never made? The answer, of course, is yes.

2.    Facebook's CEO has famously acknowledged to Congress that "[w]e do not want to become the arbiters of truth."

3.    Yet Facebook and its "fact-check" vendors are currently serving as judge, jury, and executioner regarding whether users are on the "right" or "wrong" side of a complex scientific debate. And when user content challenges the scientific opinions with which Defendants agree, Defendants use the pretext of a "fact-check" to affix disparaging labels to the content, or to expressly mischaracterize the content, even when Defendants know that none of the facts underlying the content are false.

4.    This reality is evidenced in the case of Plaintiff John Stossel, an award winning career journalist with a formerly unblemished reputation for truthful and accurate reporting.

5.    In the last year, Stossel posted on Facebook two short video reports in which he interviewed experts in the climate change arena about facts and data that Defendants concede are true.

6.    Without identifying a single false fact contained in the video reports – and in one instance, apparently without even bothering to review the video at all – Defendants publicly announced that Stossel's reporting had failed a "fact-check."

7.    In one video, Defendants falsely attributed to Stossel a claim he *never made,* and on that basis flagged the content as "misleading" and "missing context," so that would-be viewers would be routed to the false attribution statement.

8.    To the second video, Defendants affixed a "partly false" / "[contains] factual inaccuracies" label, despite Defendants' knowledge that the content contained no false facts.

9.    When Stossel challenged Defendants on their false attribution and labels, Defendants'

reviewers explained that the judgment was based on Defendants' displeasure with the "tone" of Stossel's speech, with what it allegedly "implies," and with the "broader claims" it was exploring – not about *any* false facts it contained.

10.    Stossel was given no meaningful avenue to contest these unilateral decisions about the truth of his journalism. Meanwhile, his viewership plummeted due to both Facebook's censorship and the reputational harm caused by the false labels.

11.    Defendants defamed Stossel, with malice. First, they attributed to Stossel a claim he did not make, and which caused his viewers to shun him. Defendants made this false attribution recklessly, before they had even reviewed his video. And even after Stossel brought the issue to Defendants' attention, Defendants refused to correct their speech, and intentionally left the false attribution online for anyone to see, where it remains today.

12.    Then, Defendants falsely labeled Stossel's second video report as having failed a "fact-check" and stated that it contained "factual inaccuracies" and was "partly false." Defendants applied these labels, knowing full well that Stossel's content contained not a single false fact, and despite the concession by Defendants' own scientist reviewer that no "specific facts" in the report were "wrong."

13.    Defendants' statements are provably false, inherently damaging to Stossel, and were made either with a reckless disregard for their truth or falsity, or with knowledge of their falsity.

14.    With this lawsuit, Stossel asks the Court to declare that Defendants are not permitted to hide behind the masquerade of a "fact-check" to defame him with impunity, and that they must make him whole for the damage they have maliciously caused by their provably false and disparaging statements about his reporting.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332(a), because this is a civil action between citizens of different states and countries, where the amount in controversy exceeds the sum of $75,000.000, exclusive of interest and costs. There is complete diversity of citizenship between Plaintiff Stossel (a New York resident), Facebook (a Delaware corporation with a principal place of business in California), Science Feedback (a French non-profit organization), and Climate Feedback (a French subsidiary of and/or "d/b/a" for



3

1  Science Feedback).

2       16.    This Court has personal jurisdiction over all Defendants. Facebook has its principal place

3  of business in this District. Science Feedback and Climate Feedback contract with Facebook to render

4  services that affect California residents and which have harmed Plaintiff. Science Feedback and Climate

5  Feedback also employ U.S. and California residents in connection with rendering services to Facebook.

6  All Defendants thus have sufficient minimum contacts with California and/or have intentionally availed

7  themselves of significant benefits provided by the State of California, rendering the exercise of

8  jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9       17.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because Facebook is

10  deemed to reside in this District, and a substantial part of the events or omissions giving rise to the claim

11  occurred in this District.

12  **INTRADISTRICT ASSIGNMENT**

13       18.    This Action is properly assigned to the San Jose Division of the Court, as the conduct

14  giving rise to this dispute occurred in or was directed to Santa Clara County, California. *See* Local

15  Rule 3-2(e).

16  **PARTIES**

17       19.    Plaintiff John Stossel ("Stossel") is an individual who resides in New York County, New

18  York.

19       20.    Defendant Facebook, Inc. ("Facebook") is a Delaware corporation with its principal

20  place of business in Menlo Park, California, county of Santa Clara.

21       21.    On information and belief and according to public sources, Defendant Science Feedback

22  is a non-profit Association Déclarée registered in France, and is the parent organization of Climate

23  Feedback.

24       22.    On information and belief and according to public sources, Defendant Climate Feedback

25  is a subsidiary of Science Feedback, and is either a French non-profit organization or simply an

26  alternative business name or "d/b/a" for Science Feedback.

27  //

28  //

4



Complaint                                                                 Case No.

## RELEVANT FACTS

### The Parties

23.     Plaintiff John Stossel is a well-respected, award winning career journalist and reporter. He worked at ABC News for over twenty-five years, including as a correspondent and 20/20 co-anchor. He later became the host of a weekly news show on Fox Business. Mr. Stossel has received nineteen Emmy Awards, five awards from the National Press Club, and is also a four-time published author. Currently, he publishes short weekly news videos on social media, primarily on Facebook, where he has over one million followers.

24.     Defendant Facebook is an American multinational technology company based in Menlo Park, California, that provides an online social networking service of the same name. On information and belief, there are currently 2.8 billion individuals worldwide who engage in speech on Facebook's platform.

25.     Defendant Science Feedback is French Association Déclarée. Science Feedback describes itself as a "a worldwide network of scientists sorting fact from fiction in science based media coverage."[1] On information and belief and according to public sources, Science Feedback is the parent organization of several "fact-checking websites," including Climate Feedback.

26.     On information and belief and according to public sources, Climate Feedback is a subsidiary of Science Feedback, and is either a French non-profit organization or simply an alternative business name or "d/b/a" for Science Feedback. Climate Feedback describes itself as a "a worldwide network of scientists sorting fact from fiction in climate change media coverage."[2] Science Feedback and Climate Feedback are collectively referred to as the "Feedback Defendants," herein.

27.     The Feedback Defendants contract and work with Facebook to "fact-check" content posted by Facebook users. Facebook commissions the fact-checking and applies content, labels, and other information developed by the fact-checking to the speech of its users.

28.     The Feedback Defendants employ U.S. and California residents to perform the "fact-checking" work for Facebook. Examples include a Science Feedback Science Editor who, according to

---

[1] *See* Science Feedback – A Scientific Reference to Reliable Information Online, also available at https://sciencefeedback.co.
[2] *See* https://climatefeedback.org/.

Complaint                                                                 Case No.

his public LinkedIn account, currently resides in Berkeley, California, and Climate Feedback Science Editor Nikki Forrester who, according to her publicly posted materials, currently resides in West Virginia.

**Defendants' "Fact-Checking" Process**

29.   Facebook's website[3] states its "commit[ment] to fighting the spread of misinformation on Facebook," and represents that the company "work[s] with independent, third-party fact-checking organizations" to meet this goal.

30.   Facebook describes that "[t]he focus of this fact-checking program is identifying and addressing **viral misinformation,** particularly clear hoaxes that have no basis in fact. Fact-checking partners prioritize provably false claims…" (Emphasis in original), *see* FN 3.

31.   The website further describes that "[f]act-checking partners do not prioritize claims that are inconsequential or consist of minor inaccuracies. Additionally, the program is not meant to interfere with individual expression, opinions and debate…" *See* FN 3.

32.   With respect to the role of fact-checkers, Facebook states: "[f]act-checkers will review content, check its facts, and rate its accuracy." *See* FN 3.

33.   Facebook defines its "partly false" rating as "[c]ontent has some factual inaccuracies."[4] It lists this definition on multiple pages, further stating that "[c]ontent rated 'Partly False' includes some factual inaccuracies."

34.   With respect to Facebook's own role in labeling user speech, the company states: "[w]e apply a label to content that's been reviewed by fact-checking partners, so people can read additional context. We also notify people before they try to share this content, and people who have shared it in the past." *See* FN 3.

35.   With respect to the consequences of a "fact-check," Facebook states: "[o]nce a fact-checker rates a piece of information as False, Altered or Partly False, it will appear lower in News Feed,

---

[3] *See* Fact-Checking on Facebook | Facebook Business Help Center, also available at https://www.facebook.com/business/help/2593586717571940?id=673052479947730
[4] *See* Rating Options for Fact-Checkers | Facebook Business Help Center, also available at: https://www.facebook.com/business/help/341102040382165?id=673052479947730; *see also* https://www.facebook.com/journalismproject/programs/third-party-fact-checking/new-ratings.

6



be filtered out of Explore on Instagram, and be featured less prominently in Feed and Stories. This significantly reduces the number of people who see it. We also reject ads with content that has been rated by fact-checkers." *See* FN 3.

36.     Facebook continues: "[p]ages and websites that repeatedly share misinformation rated False or Altered will have some restrictions, including having their distribution reduced. They may also have their ability to monetize and advertise removed, and their ability to register as a news Page removed for a given time period." *See* FN 3.

**Stossel's Fire Video**

37.     On September 22, 2020, Mr. Stossel published on his Facebook page a short news video entitled "Government Fueled Fires," which ran just under five minutes in length (the "Fire Video").[5]

38.     In the Fire Video, Mr. Stossel discussed the massive forest fires that were ravaging California in 2020, and reported on several reasons cited by politicians, scientists, and environmentalists as the cause of the fires.

39.     The Fire Video generally explored two causes of forest fires: climate change, and the buildup of vegetation due to fire suppression stemming from government policy.

40.     In the Fire Video, Stossel repeatedly acknowledged that climate change plays a role in forest fires. He cited data from the Western Regional Climate Center and stated that "climate change has made things worse. California has warmed 3 degrees over 50 years."

41.     The Fire Video included news clips of reports about the causes of forest fires published by the news media, including the Los Angeles Times, the New York Times, Our Daily Planet, ABC 10 News, KPIX 5, CNN News, and the Sacramento Bee. The Fire Video also included quotes from US Forest Service Ecologist Hugh Safford, and an interview with environmentalist Michael Shellenberger.

42.     The Fire Video covered some of the sensational media reporting about a so-called "climate apocalypse," and explored a scientific hypothesis advanced by Mr. Shellenberger and others – namely, that while climate change undoubtedly contributes to forest fires, it was not the primary cause of the 2020 California fires.

43.     In the Fire Video, Stossel interviewed Mr. Shellenberger, who confirmed that "climate

---

[5] *See* https://www.facebook.com/watch/?v=743082746536680.



Complaint                                                                                                          Case No.

change is real," but opined that based on his interpretation of the data, climate change was not the *primary* reason for the 2020 forest fires, and who noted – accurately – that "forests that were well-managed have survived the megafires."

44.     The Fire Video concluded with Stossel stating as follows: "Bad policies were the biggest cause of this year's fires, not the slightly warmer climate. And while climate change is a problem, Shellenberger's new book explains, it's not an apocalypse."

**Defendants Falsely Attribute to Stossel a Claim He Didn't Make**

45.     Shortly after Stossel published the Fire Video, Facebook placed a label prominently over or below the Fire Video, stating "Missing Context. Independent fact-checkers say this information could mislead people," under which was a button stating "See Why." A copy of this page is as follows:





Complaint

8

Case No.

46.   If a viewer clicks on the "See Why" button, the following text box appears:



47.   If a viewer then clicks on the text box, she is directed to a page on Climate Feedback's website (the "Verdict Page"), which states: "Claim – 'forest fires are caused by poor management. Not by climate change.' Verdict: misleading" (the "Claim"):[6]



---

[6] For full page, *see* Climate change, forest management and several other causes contribute to wildfire severity and total area burned in the western United States – Climate Feedback, also available at https://climatefeedback.org/claimreview/climate-change-forest-management-and-several-other-causes-contribute-to-wildfire-severity-and-total-area-burned-in-the-western-united-states/?fbclid=IwAR3s8qPmSScINCXh9fKFUfKxA1HRF-u07sFpp24fg9UOn8SdVTeQUHzEuGk

Complaint                                                                    Case No.

48.    A reasonable reader who clicked through the various prompts and read the Verdict Page would and did understand Defendants to mean that Stossel had made the debunked "Claim" set forth above.

49.    In reality, not only is the "Claim" contained nowhere in Stossel's Fire Video, but the Fire Video repeatedly confirms the opposite: that climate change *is* one of the causes of forest fires.

50.    In the Verdict Page's "Key Take Away" section, Climate Feedback states that "[c]limate change is not the only factor that affects fire behavior, but it is an important one," and acknowledges that "land management practices" also contribute to the severity of wildfires in the western US.

51.    In other words, the scientific conclusions of Climate Feedback's "Key Take Away" and Stossel's Fire Video are substantively identical: they both assert that climate change and land management practices are each causes of forest fires.

52.    Climate Feedback's and Stossel's scientific conclusions vary only by degree, regarding what primacy to place on which cause of the 2020 forest fires. This is a complex topic of scientific debate.

53.    Yet, Defendants flagged Stossel's reporting as failing a "fact-check" and being "misleading" and "missing context," based on their *false attribution* to Stossel of the "climate change doesn't cause forest fires" claim that he never made.

54.    Defendants' false attribution and public condemnation of Stossel's reporting has led naturally to Stossel's viewership feeling duped and betrayed. In response to Defendants' statements, Stossel's long-time viewers have sent him messages calling him "shameful" and asking "what happened to you?!?," with regards to his impeccable journalism.

55.    On September 25, 2020, Mr. Stossel received a notification from Facebook regarding his Fire Video, stating "Content is being seen by fewer people because it was rated Missing Context by an independent fact-checker."

56.    On information and belief, many would-be viewers of the Fire Video chose not to view it, after reading Defendants' false statements.

57.    As a journalist who relies primarily on Facebook to communicate with his audience, the false statements and the curtailing of his viewership caused immediate and irreparable harm to Stossel's



Complaint                                                                                                    Case No.

professional reputation, as well as financial harm.

**Defendants Did Not Bother to Review the Fire Video Before They Defamed Stossel**

58.    Incredibly, and as Stossel later learned, Defendants apparently had *not even bothered to review* his Fire Video before condemning it.

59.    In the wake of the above events, Stossel made significant efforts to bring to Defendants' attention the falsity of their statements about the Fire Video, and specifically how the Claim had been falsely attributed to his content. Stossel first contacted Climate Feedback's editor, Nikki Forrester, who chose not to respond.

60.    Stossel then spoke with two of the three scientists who Climate Feedback listed on the Verdict Page as "reviewers" of the Fire Video, Stefan Doerr and Zeke Hausfather. Both of these scientists freely conceded that they hadn't reviewed the Fire Video before Climate Feedback condemned it as advancing a false Claim.[7]

61.    In Mr. Doerr's interview with Stossel, Mr. Doerr stated "if this is implying that we have reviewed the video, then this is clearly wrong, there's something wrong with the system." *See* FN 7.

62.    In Mr. Hausfather's interview with Stossel, after Mr. Hausfather was given the chance to watch the Fire Video, he was asked whether Climate Feedback's adjudication was fairly applied to the Fire Video. Mr. Hausfather replied "I don't necessarily think so. **While there are plenty of debates around how much to emphasize forest management versus climate change, your piece clearly discussed that both are at fault here.**" *See* FN 7.

63.    Thus, Climate Feedback's own scientist reviewers confirmed that the attribution of the Claim ("forest fires are caused by poor management. Not by climate change") to Stossel's Fire Video was false.

64.    Stossel asked the scientists why his Fire Video would have been flagged as failing a "fact-check," since the fact-check was directed against a Claim that Stossel never made. In response, Mr. Doerr opined that the video was likely flagged because it contained an interview with Mr. Shellenberger, an environmentalist who criticizes environmental alarmism, and who had previously

---

[7] Stossel published his interviews with these scientists in a YouTube video available at: https://www.youtube.com/watch?v=punjBhQG__s.

Complaint                                                                                                          Case No.

been "fact-checked" by Defendants.

65.     For his part, Mr. Hausfather conceded that "this issue has become very political, which is unfortunate." *See* FN 7.

66.     The scientists' comments demonstrate that Defendants' false statements about Stossel's reporting were based on blind assumptions about what the Fire Video *probably said,* simply because it contained an interview of someone with whose conclusions Defendants had previously disagreed.

67.     Following these interviews, Stossel's agent sent a follow-up email to Climate Feedback editor Nikki Forrester, informing her of Mr. Hausfather's conclusions and repeating the request that Defendants' false attribution and associated false labels be corrected. Ms. Forrester responded this time, but only to direct Stossel to submit an appeal with Science Feedback.

68.     Days later, Mr. Hausfather wrote to Stossel to say that, "after talking with Climate Feedback," he had changed his mind and now believed that the Fire Video "minimizes the role of climate."

69.     On October 8, 2020, Climate Feedback added to its Verdict Page an "Update" that further defamed Stossel, this time by falsely accusing him of "misrepresent[ing]…our process." The Update was buried in the middle of the Verdict Page, and it linked to a fresh page posted by Climate Feedback, entitled "Responding to Stossel TV video on our rating process" (the "Response Page").[8]

70.     In its Response page, Climate Feedback identified no false facts contained in Stossel's report.

71.     Instead, Climate Feedback defended its false statements about Stossel's reporting on the grounds that "viewers did not receive an accurate explanation of the scientific research on the role of climate change in western US wildfires." *See* FN 8. In making this sweeping judgment, Climate Feedback did not explain what an "accurate explanation of the scientific research" would look like, nor did it identify any factual *inaccuracies* in Stossel's report about the role of climate change in western US wildfires.

72.     This defense highlights a central problem with Defendants' labelling system: since

---

[8] *See* Responding to Stossel TV video on our rating process – Climate Feedback; also available at https://climatefeedback.org/responding-to-stossel-tv-video-on-our-rating-process/.



Complaint                                                                                    Case No.

1   "missing context" is a description that could theoretically be applied to *any* content – whether five

2   minutes or five hundred minutes in length – Defendants use the label to condemn any content that

3   expresses an opinion with which Defendants disagree, under the pretext of a "fact-check."

4       73.    The remainder of the Response Page did not even discuss the content of Stossel's video

5   at all, but instead attempted to dig Climate Feedback out of the embarrassing hole its own scientists had

6   dug during their interviews with Stossel.

7       74.    First, the Response Page blamed Stossel for reaching out directly to Climate Feedback's

8   editor and scientist reviewers about false attribution. Then, Climate Feedback claimed that the two

9   scientists Stossel had interviewed "are not involved in our rating of Facebook content, including this

10   video" – yet both are clearly listed as "Reviewers" on the Verdict Page:



26       75.    Incredibly, Climate Feedback also claimed it had no obligation to actually review

27   Stossel's content before publicly disparaging it, stating "it is not necessary to create a separate claim

28   review article for each post we rate."

Complaint                                                  Case No.

76.   Of course, this position flies in the face of well-settled defamation law, which prohibits a speaker from making false statements about another, with reckless disregard for whether the statements are true or false.

77.   Ultimately, Defendants defamed Stossel by falsely attributing to him an inaccurate claim that he did not make, and by using that false attribution to flag his content so that all would-be viewers of the Fire Video would doubt its integrity. Defendants took this conduct recklessly, without bothering to ensure that its scientist reviewers actually reviewed the Fire Video.

### Stossel's Alarmism Video

78.   On April 17, 2021, Stossel re-published on his Facebook page a video report he had previously published in November 2019, entitled "Are We Doomed?" (the "Alarmism Video").[9] This video questioned claims made by those who Stossel refers to as "environmental alarmists," including claims that hurricanes are getting stronger, that sea level rise poses a catastrophic threat, and that humans will be unable to cope with the fallout.

79.   In the Alarmism Video, Stossel included clips of a panel he moderated, attended by a Professor of Climatology at the University of Delaware, a former President of the American Association of State Climatologists, and an astrophysicist. This panel acknowledged rising sea levels and discussed whether humans can adapt to the problems they pose; discussed data that undermine the claim that hurricanes are getting stronger; and discussed how carbon dioxide can be simultaneously a greenhouse gas and a beneficial fuel for crops.

80.   In the Alarmism Video, Stossel noted that while the panel was intended to be a debate of opposing hypotheses regarding the effects of climate change, the many individuals invited as counterpoints in the debate had refused to attend.

81.   Stossel concluded the Alarmism Video by asking "It's confusing when there are so many serious people [on the other side of the debate] who are so worried. I wish there were a real debate. Why won't the other side debate?"

### Defendants Falsely Label the Alarmism Video as "Partly False"

82.   When the Alarmism Video had originally been published in November 2019, it received

---

[9] *See* https://www.facebook.com/100044336443834/videos/844893982901945.



Complaint                                                                                    Case No.

no label from Defendants.

83.     Yet, shortly after the April 2021 re-publication of the Alarmism Video, Facebook placed a label prominently over the video, stating "Partly False Information. Checked by independent fact-checkers," under which was a button stating "See Why," as follows:



84.     If a viewer clicked on the "See Why" button, the following text box appears:



Complaint                                                                                          Case No.

85.     If a viewer then clicks on the text box, she is directed to a page on Climate Feedback's website captioned "[v]ideo promoted by John Stossel for Earth Day relies on incorrect and misleading claims about climate change" (the "'Fact-Check' Page"):[10]



# Video promoted by John Stossel for Earth Day relies on incorrect and misleading claims about climate change









86.     Yet the "Fact-Check" Page identified no false facts in Stossel's report.

87.     Instead, the very language of the "Fact-Check" Page confirmed that what was being

---

[10] *See* Video promoted by John Stossel for Earth Day relies on incorrect and misleading claims about climate change – Climate Feedback; also available at https://climatefeedback.org/evaluation/video-promoted-by-john-stossel-for-earth-day-relies-on-incorrect-and-misleading-claims-about-climate-change/?fbclid=IwAR0zwHkSkUG0u_mu3pRahVy-09w3tcBwGiAuWECjScr5DcyR9Ofj8IxgCbE

Complaint                                                                                           Case No.

checked was Stossel's "reasoning" and "overall scientific credibility" – not the underlying facts cited in his journalism.

88.     As but one example: in the Alarmism Video, panelist David Legates, Professor of Climatology at the University of Delaware, stated that "[sea levels have] been rising for approximately 20,000 years." This fact is accurate, as shown by the very data cited by Climate Feedback on its 'Fact-Check' Page:



89.     Yet, Climate Feedback concluded that stating this true fact was "imprecise and misleading, as it **implies** sea levels have continued rising since then and current sea level rise is just a continuation of past natural fluctuations." (Emphasis added). *See* FN 10.

90.     In other words, Defendants' false labels of Stossel's reporting were based on **perceived implications** that Defendants drew from the true facts stated in Stossel's report – not on false facts.

91.     The reality that facts are not the subject of Defendants' "fact-checks" was yet again confirmed by Climate Feedback's own scientist reviewers – this time, in an interview Stossel conducted of Patrick Brown, Assistant Professor of San Jose State University, and one of the scientists who analyzed the Alarmism Video at Climate Feedback's request.

92.     In the interview,[11] Stossel expressed his frustration with being labeled as "partly false"

---

[11] *See* The Climate Censors - YouTube, also available at
https://www.youtube.com/watch?app=desktop&v=_yn1MQjF5gs.



Complaint                                                                                              Case No.

for reciting true facts, and asked what was wrong with stating, for example, that there has been no significant observed trends in hurricane strength over the past century. In response, Brown opined "I think it's wrong that you were criticized for saying that. The IPCC [Intergovernmental Panel on Climate Change], they don't claim that [hurricanes] are increasing, they don't claim that droughts are increasing, they don't claim that floods are increasing."

93.     When Stossel again asked Brown why Defendants had labelled the Alarmism Video "partly false," Brown stated "[y]ou get…flagged for downplaying that [climate change is] a problem at all…**it's a tonal thing**, I guess." (Emphasis added). *See* FN 11.

94.     Following the interview, Brown emailed Stossel stating that "[t]he problem is the omission of contextual information **rather than specific 'facts' being 'wrong'**." (Emphasis added).

95.     Similarly, one of Climate Feedback's reviewers told Stossel that "**broader claims are being disputed**," rather than false facts. (Emphasis added).

96.     In light of Defendants' *own definition* of the "partly false" label as content that "includes some factual inaccuracies," Defendants defamed Stossel when they stated that his report contained factual inaccuracies, even though they knew it did not.

97.     In June 2021, Stossel published a written response to the "Fact-Check" Page (the "Written Response"[12]) in which he discussed the factual underpinnings for each claim or question raised in his Alarmism Video. This response noted that "a simple reading of Climate Feedback's so-called fact check reveals not a single factual error in our video."

98.     As the foregoing facts confirm, Defendants' "fact-check" process is nothing more than a pretext used by Defendants to defame users with impunity, particularly when Defendants disagree with the scientific opinions expressed in user content. Often, the pretext appears to be invoked based on implicit or explicit viewpoint biases.

99.     Indeed, the available information suggests that Defendants perform negative "fact-checks" of content posted by those who opine that climate change is a manageable problem *three times more often* than they perform negative "fact-checks" on climate change alarmists. Moreover,

---

[12] *See* Climate Feedback's Misleading Claims - Stossel TV (johnstossel.com), also available at https://www.johnstossel.com/climate-feedback-response/.



Complaint                                                                        Case No.

Defendants appear to have labeled Stossel's Fire Video sight-unseen simply because it contained an interview of an environmentalist with whose scientific opinions Defendants disagreed.

100.    On information and belief, many would-be viewers of the Alarmism Video chose not to view it, after seeing that it had been labeled "Partly False" by Facebook.

**Defendants' False Statements Cause Irreparable Damage**

**to Stossel's Professional Reputation and Business**

101.    For the past four years, Stossel's business model has relied on reaching audiences through social media platforms, primarily through Facebook.

102.    Relying on its faulty conclusions about two of Stossel's video reports, Facebook has reduced *all* distribution of Stossel's video reporting, and has limited the number of individuals who will see his content on Facebook.

103.    Defendants' defamation has caused damage to Stossel, including in the form of reduced distribution of his reporting, reduced viewership, and reduced profits from advertising revenue from viewership.

104.    For example, while the Fire Video had nearly 1.2 million views when it was originally posted, it received almost no views following Defendants' defamation of the video in September 2020. This resulted in reduced advertising revenue on that content, which revenue Stossel would otherwise have received. Moreover, pursuant to Facebook's policy on flagged content, Stossel was essentially prohibited from re-posting the Fire Video (which he otherwise would have done, in line with his standard practice), which would have resulted in another approximately 1.2 million views and the associated ad revenue from those views.

105.    Further, immediately after Defendants affixed their false label on the Alarmism Video in April 2021, there was a dramatic drop in both views of that video and all Stossel's other videos, and of the associated advertising revenue, which reduced by nearly half, from approximately $10,000 a month to approximately $5,500 a month, and which Stossel otherwise would have received.

106.    In addition, Stossel's professional reputation has been significantly and irreparably damaged by the false labels and statements that Defendants affixed to his work.

//



19

Complaint                                                                                   Case No.

**Defendants Jointly Developed the Defamatory Statements**

107.    All Defendants jointly developed the defamatory content that is at issue in this case.

108.    As discussed above, Facebook contracts with the Feedback Defendants to "fact-check" content posted by Facebook users. Facebook was directly involved in developing the defamatory labels and content discussed herein, including by commissioning the Feedback Defendants to review, evaluate, and judge user content, and by affixing the labels directly to user content.

109.    The Feedback Defendants acted as Facebook's agents for the purpose of the "fact-checking" work they perform. The defamatory statements made about Stossel by the Feedback Defendants were made as part of the actual or ostensible agency relationship between the Feedback Defendants and Facebook. Facebook ratified the Feedback Defendants' defamation of Stossel.

**Defendants Conspired to Publish the Defamatory Statements**

110.    Defendants' false labeling of and false statements about Stossel's videos was performed as a result of Defendants' cooperation and agreement with one another.

111.    Facebook contracts with the Feedback Defendants for "fact-checking" services, and then adopts their conclusions as the basis for labels Facebook affixes to users' speech.

112.    The Feedback Defendants falsely attributed to Stossel a claim that he did not make in connection with the Fire Video. Based on these conclusions, Facebook affixed "missing context" and "misleading" labels to the Fire Video, and cross-referenced Climate Feedback's Response Page as support for the label.

113.    The Feedback Defendants announced that Stossel's Alarmism Video was "partly false," despite no factual inaccuracies. Based on these conclusions, Facebook affixed a "partly false" label to the Alarmism Video and stated that fact-checkers found factual inaccuracies, and cross-referenced Climate Feedback's "Fact-Check" Page.

114.    Defendants were aware of, and agreed with, the plan to publish the false labels and statements about Stossel's content, and intended that the false labels and statements about Stossel be published. Defendants each took acts to publish the false labels and statements, both on Facebook's platform and on Feedback Defendants' website. When they were repeatedly made aware of the falsity of the labels and statements about Stossel, Defendants intentionally left the defamatory content online.

Complaint                                                                                          Case No.

**FIRST CAUSE OF ACTION**
**Defamation (Libel *Per Se*)**
**(Cal. Civ. Code §§ 44 *et seq.*)**

115.     Plaintiff incorporates every allegation contained in each and every one of the above paragraphs, as though set forth fully herein.

116.     On or about September 22, 2020, Defendants stated by implication that in Stossel's Fire Video, Stossel made a claim ("forest fires are caused by poor management. Not by climate change") that he did not make (the "False Attribution"). Defendants affixed a "misleading/ missing context" label to the Fire Video, which routed viewers directly to the False Attribution about Stossel and his reporting.

117.     The False Attribution was published on the Internet and was not privileged.

118.     A reasonable reader of the False Attribution, viewing Defendants statements in context, would and did understand it to mean that Stossel had claimed that climate change is not a cause of forest fires.

119.     The False Attribution is provably false. Stossel did not make the claim Defendants attributed to him. By stark contrast, his Fire Video expressly acknowledged that climate change was one cause of forest fires.

120.     No immunities apply to render Defendants' speech non-actionable. Plaintiff seeks to hold Facebook responsible for speech that (a) Facebook jointly develops, (b) was published on Facebook's behalf by Facebook's agents, and (c) was published pursuant to a conspiracy to defame Stossel.

121.     The False Attribution tends directly to injure Stossel in his profession and occupation, and exposed him to hatred, contempt, ridicule, and/or shame, and discouraged others from associating or dealing with him. The False Attribution has led Stossel's viewers to question his credibility, and by natural consequence, caused actual damage to Stossel, in the form of reduced distribution of his reporting, reduced viewership, and reduced profits from advertising revenue from viewership. In addition, the False Attribution has caused Stossel irreparable reputational harm, which is ongoing.

122.     Defendants acted with malice when they published the False Attribution. Defendants knew, or should have known, that Stossel had not made the claim attributed to him. Yet Defendants published the False Attribution with knowledge of its false implication, or with reckless disregard of its truth – indeed, Defendants apparently did not bother to review the Fire Video before they defamed it.

Further, Defendants continued to publish the False Attribution after Stossel repeatedly put Defendants on notice of its falsity. Defendants also failed to include any explanation or disclaimer adjacent to their False Attribution, which would have informed readers that Stossel's reporting did not contain the claim attributed to it.

123. In addition, by blindly adopting the Feedback Defendants' assessment of the Fire Video without conducting any independent review or vetting of that assessment, Facebook also acted with reckless disregard of the truth or falsity of the Fire Video when defaming it.

124. In addition to his compensatory and actual damages, Stossel is entitled to recover punitive damages sufficient to punish Defendants for making the defamatory statements with malice, fraud, and/or oppression.

125. On or about April 17, 2021, Defendants stated that Stossel's Alarmism Video had been subjected to a "fact-check" that had determined that the Alarmism Video contained "factual inaccuracies" and was "partly false" (the "False Statements").

126. These False Statements were published on the Internet and were not privileged.

127. A reasonable reader, viewing these False Statements in context, would and did understand them to mean that Stossel's reporting contained inaccurate facts, rendering it partly false.

128. The False Statements are provably false: the Alarmism Video contains no false facts.

129. No immunities apply to render Defendants' speech non-actionable. Plaintiff seeks to hold Facebook responsible for (a) speech that Facebook jointly develops, and which was published on Facebook's behalf by Facebook's agents, and which was published pursuant to a conspiracy to defame Stossel, and (b) speech that Facebook affirmatively publishes on its own platform. *See* FN 3 *supra* ("Fact-Checking on Facebook" page, stating "**We apply** a label to content that's been reviewed by fact-checking partners…" (emphasis added)).

130. The False Statements tend directly to injure Stossel in his profession and occupation, and exposed him to hatred, contempt, ridicule, and/or shame, and discouraged others from associating or dealing with him. The False Statements, by natural consequence, caused actual damage to Stossel, in the form of reduced distribution of his reporting, reduced viewership, and reduced profits from advertising revenue from viewership. In addition, the False Statements have caused Stossel irreparable



Complaint

Case No.

reputational harm, which is ongoing.

131.    Defendants acted with malice when they published the False Statements. Defendants knew, or should have known, that Stossel's reporting contained no false facts – only scientific opinions with which Defendants disagreed – yet Defendants publicly declared that the Alarmism Video had failed a "fact-check," contained "factual inaccuracies," and was "partly false." Further, Defendants continued to publish their False Statements after Stossel repeatedly put Defendants on notice of their falsity.

132.    In addition, by blindly adopting the Feedback Defendants' assessment of the Alarmism Video as "partly false" without conducting any independent review or vetting of that assessment, Facebook also acted with reckless disregard of the truth or falsity of the False Statements when making them.

133.    In addition to his compensatory and actual damages, Stossel is entitled to recover punitive damages sufficient to punish Defendants for making the defamatory statements with malice, fraud, and/or oppression.

//



Complaint                                                                                                    Case No.

## PRAYER FOR RELIEF

Wherefore, Plaintiff John Stossel respectfully prays for relief and judgment against Defendants Facebook, Science Feedback, and Climate Feedback as follows:

i.   For judgment in favor of Plaintiff and against Defendants;

ii.  For injunctive and declaratory relief requiring Defendants, their officers, agents, servants, employees, and all other persons acting in concert or participation with them, to remove all content found to be defamatory and refrain from re-posting such content;

iii. For general, special, and compensatory damages in a sum sufficient to make Plaintiff whole for his actual damages and reputational damages, in an amount according to proof at trial but estimated to exceed $1,000,000;

iv.  For exemplary and punitive damages in a sum sufficient to deter Defendants' conduct, but in an amount no less than $1,000,000;

v.   For costs of suit herein; and

vi.  For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date: September 22, 2021                    DHILLON LAW GROUP INC.

                                   By: /s/ Krista L. Baughman
                                        KRISTA L. BAUGHMAN (SBN: 264600)
                                        kbaughman@dhillonlaw.com
                                        DHILLON LAW GROUP INC.
                                        177 Post Street, Suite 700
                                        San Francisco, California 94108
                                        Telephone: (415) 433-1700
                                        Attorney for Plaintiff John Stossel

24

Complaint                                                                    Case No.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all claims in this action of all issues so triable.

Date: September 22, 2021                    DHILLON LAW GROUP INC.

                                   By: /s/ Krista L. Baughman
                                       KRISTA L. BAUGHMAN (SBN: 264600)
                                       kbaughman@dhillonlaw.com
                                       DHILLON LAW GROUP INC.
                                       177 Post Street, Suite 700
                                       San Francisco, California 94108
                                       Telephone: (415) 433-1700
                                       Attorney for Plaintiff John Stossel

Complaint                                                                   Case No.