SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

*Attorneys for Defendant*
META PLATFORMS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOHN STOSSEL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation; SCIENCE FEEDBACK, a French non-profit organization; and CLIMATE FEEDBACK, a French non-profit organization,<br><br>Defendants. | CASE NO.:  5:21-cv-07385<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND (1) MOTION TO DISMISS COMPLAINT, (2) SPECIAL MOTION TO STRIKE COMPLAINT UNDER CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Virginia K. DeMarchi<br>Courtroom 2 – 5th floor<br>Date: March 8, 2022<br>Time: 10:00 AM |

CASE NO.: 5:21-CV-07385-VKD

NOTICE OF MOT. AND (1) MOT. TO DISMISS,
(2) ANTI-SLAPP MOT.; MEM. ISO MOTS.

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................................I

TABLE OF AUTHORITIES ...............................................................................................III

NOTICE OF MOTION AND MOTION TO DISMISS ..........................................................1

STATEMENT OF REQUESTED RELIEF ...........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................1

BACKGROUND.....................................................................................................................3

     A.    Third-Party Fact-Checkers Identify Misinformation On The Facebook Platform.........................................................................................................3

     B.    Facebook Labeled Stossel's Videos Identified By Third-Party Fact-Checker Climate Feedback As Missing Context Or Containing False Information .............4

     C.    Stossel Files This Lawsuit ....................................................................................6

ARGUMENT ..........................................................................................................................7

I.     STOSSEL CANNOT STATE A VIABLE DEFAMATION CLAIM ...............................7

     A.    Section 230 Of The Communications Decency Act Bars Stossel's Claim ............7

          1.    Stossel's defamation claim impermissibly seeks to impose liability on Meta for statements created by Climate Feedback.................................8

          2.    Stossel cannot circumvent Section 230 immunity through various state-law theories..................................................................................9

     B.    Stossel Has Not Stated, And Cannot State, A Claim For Defamation Against Meta .......................................................................................................12

          1.    Stossel has not pled actual malice .........................................................12

          2.    Stossel has not pleaded that any action Meta took with regard to either video amounted to defamation .........................................................15

               a)    *No action Meta took with regard to the "Fire Video" amounted to defamation* .................................................15

               b)    *No action Meta is alleged to have taken with regard to the "Alarmism Video" amounted to defamation* ................................18

II.    THE COURT SHOULD STRIKE THE COMPLAINT UNDER CALIFORNIA'S ANTI-SLAPP STATUTE ..................................................................................19

     A.    Stossel's Defamation Claim Arises From Meta's First Amendment Protected Activity On A Matter Of Public Interest.................................................20

          1.    The Fact-Check Labels Are Protected Free Speech Activity....................20

2.      The Fact-Check Labels Are Speech In Connection With An Issue Of
Public Interest..............................................................................................21

B.      Stossel Has No Chance of Success On The Merits .................................................22

CONCLUSION ...............................................................................................................22

1

## TABLE OF AUTHORITIES

2

Page(s)

### CASES

3

4

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................ 7

5

*Barnes v. Yahoo!, Inc.*,
 570 F.3d 1096 (9th Cir. 2009) ............................................................... 7

6

7

*Barry v. Time, Inc.*,
 584 F. Supp. 1110 (N.D. Cal. 1984) .................................................... 13

8

*Bartholomew v. YouTube, LLC*,
 17 Cal. App. 5th 1217 (2017) .............................................................. 17

9

10

*Batzel v. Smith*,
 333 F.3d 1018 (9th Cir. 2003) .......................................................... 8, 11

11

12

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................. 12

13

*Ben Erza, Weinstein, & Co. v. America Online, Inc.*,
 206 F.3d 980 (10th Cir. 2000) ............................................................... 9

14

15

*Blumenthal v. Drudge*,
 992 F. Supp. 44 (D.D.C. 1998) .............................................................. 9

16

17

*Bonni v. St. Joseph Health System*,
 491 P.3d 1058 (Cal. 2021) ................................................................... 20

18

*Brown v. Kelly Broadcasting Co.*,
 771 P.2d 406 (Cal. 1989) ..................................................................... 16

19

20

*Caraccioli v. Facebook, Inc.*,
 167 F. Supp. 3d 1056 (N.D. Cal. 2016) ............................................... 12

21

22

*County of Santa Clara v. Astra USA, Inc.*,
 401 F. Supp. 2d 1022 (N.D. Cal. 2005) ............................................... 21

23

*Cross v. Facebook*,
 14 Cal. App. 5th 190 (2017) ................................................................ 22

24

25

*Daniels v. Alphabet, Inc.*,
 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) ...................................... 7

26

27

*Daniels-Hall v. National Education Association*,
 629 F.3d 992 (9th Cir. 2010) ............................................................... 21

28

-iii-

1
2
*Dyroff v. Ultimate Software Group, Inc.*,
 934 F.3d 1093 (9th Cir. 2019) .................................................................................... 7

3
*Equilon Enterprises v. Consumer Cause, Inc.*,
 52 P.3d 685 (Cal. 2002) ........................................................................................... 19

4
5
*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
 521 F.3d 1157 (9th Cir. 2008) .......................................................................... 2, 9, 12

6
*Fayer v. Vaughn*,
 649 F.3d 1061 (9th Cir. 2011) ................................................................................... 7

7
8
*Federal Agency of News LLC v. Facebook, Inc.*,
 432 F. Supp. 3d 1107 (N.D. Cal. 2020) .................................................................... 8

9
10
*Fields v. Twitter, Inc.*,
 217 F. Supp. 3d 1116 (N.D. Cal. 2016) .................................................................. 12

11
*Gentry v. eBay, Inc.*,
 99 Cal. App. 4th 816 (2002) ...................................................................................... 9

12
13
*Gertz v. Robert Welch, Inc.*,
 418 U.S. 323 (1974) ........................................................................................... 12, 13

14
15
*Gonzalez v. Planned Parenthood of Los Angeles*,
 759 F.3d 1112 (9th Cir. 2014) ................................................................................... 7

16
*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*,
 742 F.3d 414 (9th Cir. 2014) ................................................................................... 20

17
18
*Harte-Hanks Communications, Inc. v. Connaughton*,
 491 U.S. 657 (1989) ................................................................................................. 13

19
20
*Hayes v. Facebook*,
 2019 WL 5088805 (N.D. Cal. Aug. 15, 2019) ....................................................... 17

21
*Herring Networks, Inc. v. Maddow*,
 8 F.4th 1148 (9th Cir. 2021) .................................................................................... 19

22
23
*Hilton v. Hallmark Cards*,
 599 F.3d 894 (9th Cir. 2010) .............................................................................. 19, 20

24
25
*In re Gilead Sciences Securities Litigation*,
 536 F.3d 1049 (9th Cir. 2008) ............................................................................. 7, 10

26
*J.B. v. G6 Hospitality, LLC*,
 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ....................................................... 11

27
28
*John Doe 2 v. Superior Court of Los Angeles County*,
 1 Cal. App. 5th 1300 (2016) .................................................................................... 17

*Jones v. Dirty World Entertainment Recordings LLC*,
  755 F.3d 398 (6th Cir. 2014) ................................................................ 8

*Jones v. Twitter, Inc.*,
  2020 WL 6263412 (D. Md. Oct. 23, 2020) ......................................... 11

*Jordan-Benel v. Universal City Studios, Inc.*,
  859 F.3d 1184 (9th Cir. 2017) ............................................................ 20

*Kieu Hoang v. Phong Minh Tran*,
  60 Cal. App. 5th 513 (2021) ................................................................ 21

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) .................................................... 8, 9, 12

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .............................................................. 3

*Kreiser v. Asset Management Group, Inc.*,
  2021 WL 3579414 (C.D. Cal. Apr. 23, 2021) ..................................... 10

*La'Tiejira v. Facebook, Inc.*,
  272 F. Supp. 3d 981 (S.D. Tex. 2017) ................................................... 2

*Marshall's Locksmith Service, Inc. v. Google, LLC*,
  925 F.3d 1263 (D.C. Cir. 2019) ............................................................ 8

*Masson v. New Yorker Magazine, Inc.*,
  960 F.2d 896 (9th Cir. 1992) .............................................................. 15

*Mavrix Photographs, LLC v. LiveJournal, Inc.*,
  873 F.3d 1045 (9th Cir. 2017) ............................................................ 10

*Meeks v. Buffalo Wild Wings, Inc.*,
  2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) .................................... 10

*Moore v. Liu*,
  69 Cal. App. 4th 745 (1999) ................................................................ 22

*Murray v. Bailey*,
  613 F. Supp. 1276 (N.D. Cal. 1985) ................................................... 13

*Navellier v. Sletten*,
  52 P.3d 703 (Cal. 2002) ................................................................ 19, 20

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ................................................................ 8

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ............................................................................ 13

*Niantic, Inc. v. Global++,*
    2020 WL 1548465 (N.D. Cal. Jan. 30, 2020) ................................................................. 22

*Partington v. Bugliosi,*
    56 F.3d 1147 (9th Cir. 1995) .......................................................................................... 16

*Phantom Touring, Inc. v. Affiliated Publications,*
    953 F.2d 724 (1st Cir. 1992) .......................................................................................... 16

*Philadelphia Newspapers, Inc. v. Hepps,*
    475 U.S. 767 (1986) ....................................................................................................... 16

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress,*
    890 F.3d 828 (9th Cir. 2018) .......................................................................................... 22

*Polygram Records, Inc. v. Superior Court of NAPA County,*
    170 Cal. App. 3d 543 (1985) .......................................................................................... 17

*Reader's Digest Association v. Superior Court,*
    690 P.2d 610 (Cal. 1984) ......................................................................................... 13, 14

*Reed v. Gallagher,*
    248 Cal. App. 4th 841 (2016) ......................................................................................... 13

*Resolute Forest Products, Inc. v. Greenpeace International,*
    2019 WL 281370 (N.D. Cal. Jan. 22, 2019) ............................................................ 11, 13

*Resolute Forest Products, Inc. v. Greenpeace International,*
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ................................................................. *passim*

*RLI Insurance Co. v. Langan Engineering, Environmental, Surveying and*
    *Landscape Architecture,* 834 Fed. App'x 362 (9th Cir. 2021) ......................................... 8

*Standing Committee on Discipline of the United States District Court for the*
    *Central District of California v. Yagman,* 55 F.3d 1430 (9th Cir. 1995) .................... 16, 18

*Stackla, Inc. v. Facebook, Inc.,*
    2019 WL 4738288 (N.D. Cal. Sept. 27, 2019) ............................................................... 21

*Stolz v. KSFM 102 FM,*
    30 Cal. App. 4th 195 (1994) ............................................................................... 12, 13, 16

*United Energy Trading, LLC v. Pacific Gas & Electric Co.,*
    146 F. Supp. 3d 1122 (N.D. Cal. 2015) ......................................................................... 10

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) .................................................................................. 19, 22

*Wilson v. Cable News Network, Inc.,*
    444 P.3d 706 (Cal. 2019) ............................................................................................... 20

*Winter v. Bassett*,
  2003 WL 27382038 (M.D.N.C. Aug. 22, 2003) ............................................................... 11

*Wynn v. Chanos*,
  75 F. Supp. 3d 1228 (N. D. Cal. 2014) ........................................................................... 14

*Wong v. Jing*,
  189 Cal. App. 4th 1354 (2010) ....................................................................................... 22

## STATUTES, RULES, REGULATIONS

Cal. Civ. Code
  § 45 ................................................................................................................................. 17

Cal. Civ. Proc. Code
  § 425.16 ............................................................................................................................. 1
  § 425.16(a) ................................................................................................................... 2, 19
  § 425.16(b)(1) ............................................................................................................. 19, 21
  § 425.16(c) ....................................................................................................................... 22
  § 425.16(e)(3) ................................................................................................................... 21
  § 425.16(e)(4) ................................................................................................................... 21

Fed. R. Civ. P.
  12(b)(6) .................................................................................................................... 1, 7, 22

47 U.S.C.
  § 230(c)(1) ............................................................................................................... *passim*

## OTHER AUTHORITIES

Press Release, House Committee on Energy and Commerce, *E&C Committee
  Announces Hearing With Tech CEOs On The Misinformation Plaguing
  Online Platforms* (Feb. 18, 2021), https://energycommerce.house.gov/
  newsroom/press-releases/ec-committee-announces-hearing-with-tech-ceos-
  on-the-misinformation-and............................................................................................... 21

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT, on March 8, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the United States District Court for the Northern District of California, San Jose Division, this Motion to Dismiss will be heard.  Meta Platforms, Inc. ("Meta") moves (1) to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss"); and (2) to strike the claims asserted against Meta pursuant to California's anti-SLAPP statute, section 425.16 *et seq.* of the California Code of Civil Procedure (the "Anti-SLAPP Motion").[1]  Both the Motion to Dismiss and the Anti-SLAPP Motion are based on this Notice of Motion and the Memorandum of Points and Authorities.

## STATEMENT OF REQUESTED RELIEF

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Meta requests that the Court dismiss the Complaint with prejudice.  In addition, pursuant to California's anti-SLAPP statute, section 425.16 *et seq.* of the California Code of Civil Procedure, Meta requests that the Court strike the Complaint and award Meta its attorneys' fees for work associated with this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

Meta relies on independent third-party fact-checkers to identify, rate, and analyze potential misinformation on the Facebook platform.  The independence of the fact checkers is a deliberate feature of Meta's fact-checking program, designed to ensure that Meta does not become the arbiter of truth on its platforms.  Though Meta identifies potential misinformation for fact-checkers to review and rate, it leaves the ultimate determination whether information is false or misleading to the fact-checkers.  And though Meta has designed its platforms so that fact-checker ratings appear next to content that the fact-checkers have reviewed and rated, it does not contribute to the substance of those ratings.

Stossel ignores this reality and instead simply claims that undifferentiated "Defendants" (two fact-checking entities and Meta itself) defamed him.  But the distinction between defendants is critical here, not in the least because Section 230 of the Communications Decency Act protects

---

[1] Defendant Facebook, Inc. recently changed its name to Meta Platforms, Inc.

Meta from liability for material posted to the Facebook platform by third parties. Stossel accordingly must show that Meta somehow contributed to the defamatory nature of the content at issue. He has not and cannot do so.

Beyond this threshold Section 230 problem, the complaint also fails to state a claim for defamation. For one, Stossel fails to plead facts establishing that Meta acted with actual malice—which, as a public figure, he must. For another, Stossel's claims focus on the fact-check articles written by Climate Feedback, not the labels affixed through the Facebook platform. The labels themselves are neither false nor defamatory; to the contrary, they constitute protected opinion. And even if Stossel could attribute Climate Feedback's separate webpages to Meta, the challenged statements on those pages are likewise neither false nor defamatory. Any of these failures would doom Stossel's complaint, but the combination makes any amendment futile.

Finally, the claim runs afoul of California's anti-SLAPP statute, which the Ninth Circuit has held applies to state-law claims brought in federal court. California enacted its anti-SLAPP law to reduce the proliferation of "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech." Cal. Civ. Proc. Code § 425.16(a). Stossel's defamation claim takes direct aim at Meta's First Amendment rights by challenging its editorial decision to publish fact-checks. As numerous courts have recognized, "Facebook [has a] First Amendment right to decide what to publish and what not to publish on its platform." *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017). And for the reasons explained above, Stossel cannot show a reasonable probability of prevailing on his defamation claim, as the anti-SLAPP law requires.

None of these defects can be cured by further amendment. Prior to filing this motion, Meta identified each defect in a letter urging Stossel to drop this lawsuit or, if he believes these defects could somehow be cured, to come forward with proposed amendments that would address them. *See* Jennings Decl. Ex. 1. Rather than add any allegations to attempt to cure those problems, Stossel chose to stand on his original complaint. Given that choice, and because Section 230 is meant to protect defendants against "protracted legal battles," *Fair Housing Council v.*

*Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008), dismissal should be with prejudice, and Meta should be awarded attorneys' fees associated with this motion.

## BACKGROUND

### A.     Third-Party Fact-Checkers Identify Misinformation On The Facebook Platform

Meta operates the Facebook platform, an online social network service with 2.8 billion users worldwide.   Compl. ¶ 24.   As part of its "commit[ment] to fighting the spread of misinformation," Meta has developed a fact-checking program to help identify false or misleading information on Facebook.   Compl. ¶ 29; *see also* Jennings Decl. Ex. 2, at 1.[2]   Meta relies on "independent, third-party fact-checking organizations" to "review content, check its facts, and rate its accuracy."   Compl. ¶ 32; Jennings Decl. Ex. 2, at 1-2.   This process "happens independently from Facebook, and may include calling sources, consulting public data, authenticating videos and images, and more."   Jennings Decl. Ex. 2, at 2.   These independent, third-party fact-checkers "are certified through the non-partisan International Fact-Checking Network (IFCN)."   *Id.* at 1.

One of these independent fact-checkers is Climate Feedback, which has a team of scientists dedicated to "sorting fact from fiction in climate change media coverage."   Compl. ¶ 26; *see also* Jennings Decl. Ex. 3, at 1 (listing latest claim reviews including one on Facebook).[3]   Climate Feedback, in turn, allegedly operates under Science Feedback, "a worldwide network of scientists sorting fact from fiction in science based on media coverage."   Compl. ¶¶ 25, 26.

Facebook provides the third-party fact-checkers with a fact-checking system that permits them to independently rate and review posts identified as potentially containing misinformation. Compl. ¶¶ 34-35; Jennings Decl. Exs. 2, 4.[4]   A fact-checker can, for example, tag a piece of content

---

[2] The Complaint incorporates the webpage titled "Fact-Checking on Facebook" by reference. That webpage can be considered in deciding the Motion to Dismiss and the Anti-SLAPP Motion. *See* Compl. n.3; *Knievel v. ESPN*, 393 F.3d 1068, 1076-1077 (9th Cir. 2005) (considering website under "'incorporation by reference' doctrine").

[3] The Complaint (at footnote 1) incorporates this webpage by reference.   *See supra* n.1.

[4] The Complaint (at footnote 4) incorporates this webpage by reference.   *See supra* n.1.

as "Altered," "Missing Context," "False," or "Partly False."  Jennings Decl. Ex. 4, at 1-2.  If a fact-checker determines that content is altered, missing context, false, or partly false, Facebook then applies a label to the content so that other users can read additional details about the fact-check.  Compl. ¶ 34; Jennings Decl. Ex. 2, at 2.  The label is placed on top of the flagged content and states the independent fact-checker's rating, for example, "Missing Context" or "Partly False."  Compl. ¶¶ 45, 83.  The label also contains a button stating, "See Why."  Compl. ¶¶ 45, 83.  Clicking on the "See Why" button brings up a text box that shows (1) the caption of the fact-checker's review, (2) a summary of the fact-checker's rating, and (3) a link to a webpage describing Facebook's fact-checking process.  Compl. ¶¶ 46, 84.  If a user further clicks on the text box, they are directed to the third-party fact-checker's website for more details about the fact-checker's review and ultimate rating of the content.  Compl. ¶¶ 47, 85.

### B.   Facebook Labeled Stossel's Videos Identified By Third-Party Fact-Checker Climate Feedback As Missing Context Or Containing False Information

Stossel "publishes short weekly news videos on social media, primarily on Facebook, where he has over one million followers."  Compl. ¶ 23.  At issue are two videos he made and posted to his Facebook page.

The first video, which Stossel calls the "Fire Video," is titled "Government Fueled Fires."  Jennings Decl. Ex. 5.[5]  The video contained clips from an interview Stossel conducted of author Michael Shellenberger to promote Shellenberger's book titled "Apocalypse Never:   Why Environmental Alarmism Hurts Us All."  *Id.*  Stossel's video stitched his own commentary with different video clips, including those from the Shellenberger interview.  *Id.*  For example, the video contained the following statements from Shellenberger, cut together with commentary from Stossel:

> Shellenberger: Climate change is . . . not the end of the world. It's not our most serious environmental problem—
>
> Stossel: *And* it's not the main cause of the California fires.

---

[5] The Complaint (at footnote 5) incorporates this video by reference.  *See supra* n.1.

1  …

2  Stossel: If not climate change, what is to blame?

3  [Cartoon clip of Smokey the Bear]

4  Stossel: Foolish policies. . . .

5  …

6  Stossel (in a voice over): Climate has made things worse. California has warmed 3 degrees

7  over 50 years. *But—*

8  Shellenberger: You could have had this amount of warming and not had these fires. . . .

9  *Id.* at 2:17-21, 3:10-14, 3:25-4:4 (emphasis added).

10  Climate Feedback rated the "Fire Video" as "missing context." Compl. ¶¶ 46-47.

11  Accordingly, Meta affixed a label to the video stating, "Missing Context:  Independent fact-

12  checkers say this information could mislead people." Compl. ¶ 45.  The label contains a "See

13  Why" button, which, when clicked, generates a text box reiterating that "[i]ndependent fact-

14  checkers say this information is missing context and could mislead people." Compl. ¶ 46.  The

15  text box contains the title of Climate Feedback's fact-check review ("Climate change, forest

16  management and several other causes contribute to wildfire severity and total area burned in the

17  western United States."), Compl. ¶ 46, as well as a link to the page on Climate Feedback's website

18  that contains Climate Feedback's full review, Compl. ¶ 47.  The full review explains why the claim

19  that "[f]orest fires are caused by poor management[,] [n]ot by climate change" is misleading.

20  Compl. ¶ 47; Jennings Decl. Ex. 6, at 1.[6]

21  The second video, which Stossel calls the "Alarmism Video," is titled "Are We Doomed?"

22  Jennings Decl. Ex. 7.[7]  This video relies heavily on clips from a panel Stossel moderated at the

23  Heartland Institute.  Compl. ¶ 47.  Although Stossel set up the event as a "debate," "many

24  individuals invited as counterpoints … refused to attend," leaving the discussion one-sided.

25  Compl. ¶ 80.  The panelists expressed skepticism that hurricanes are getting stronger and "pointed

26  

27  [6] The Complaint (at footnote 6) incorporates this webpage by reference.  *See supra* n.1.

28  [7] The Complaint (at footnote 9) incorporates this video by reference.  *See supra* n.1.

1   out that even if the planet warms by five degrees, humans can adjust."  Jennings Decl. Ex. 7, at

2   4:25-5:1.  Stossel used clips from this one-sided panel to debunk various "myths," including that

3   "government action today can save us" and "carbon dioxide is carbon pollution, that just does

4   harm and threatens food supply."  *Id.* at 6:6-7; 6:19-21.  At the end of the video, he says, "I wish

5   there were a real debate. Why won't the other side debate?"  *Id.* at 7:22-23.

6        Climate Feedback reviewed the Alarmism Video and rated it as "partly false."  Compl.

7   ¶¶ 83-84.  Meta accordingly affixed a "Partly False Information" label to the video.  Compl. ¶ 83.

8   Like the Fire Video label, the Alarmism Video label contains a "See Why button," which, if

9   clicked, brings up a text box that says "[i]ndependent fact-checkers say this information has some

10  factual inaccuracies" and includes a link to Climate Feedback's website.  Compl. ¶ 84.  The text

11  box similarly contains the title of Climate Feedback's fact-check review and is further linked to

12  Climate Feedback's website.  Compl. ¶ 84.  The linked page on Climate Feedback's website, titled

13  "Video promoted by John Stossel for Earth Day relies on incorrect and misleading claims about

14  climate change," then explains that "speakers in the video rely on several inaccurate claims and

15  use imprecise language that misleads viewers about the scientific understanding of climate

16  change."  Compl. ¶ 85; Jennings Decl. Ex. 8, at 2.[8]

17       **C.      Stossel Files This Lawsuit**

18       In response to the fact-checks of his two videos, Stossel filed a single-count complaint

19  against Meta, Science Feedback, and Climate Feedback, contending that "Defendants"—in the

20  aggregate—defamed him.  *See, e.g.*, Compl. ¶¶ 116, 122, 124, 131.  In particular, Stossel alleges

21  that two statements are defamatory.  First, he challenges what he calls the "False Attribution"—

22  that is, "Defendant[s'] state[ment] by implication that in Stossel's Fire Video, Stossel" claimed

23  that "'forest fires are caused by poor management.  Not by climate change'"—a statement that

24  Stossel alleges "he did not make."  Compl. ¶ 116.  Second, Stossel challenges the statement that

25  the Alarmism Video "had been subjected to a 'fact-check' that had determined that the Alarmism

26  Video contained 'factual inaccuracies' and was 'partly false.'"  Compl. ¶ 125.

27  _____

28       [8] The Complaint (at footnote 10) incorporates this webpage by reference.  *See supra* n.1.

**ARGUMENT**

**I.     STOSSEL CANNOT STATE A VIABLE DEFAMATION CLAIM**

To survive a motion under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, Plaintiffs must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation omitted). Nor should the Court accept allegations that contradict documents attached to the Complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**A.     Section 230 Of The Communications Decency Act Bars Stossel's Claim**

Defamation claims against online service providers like Meta fall within the heartland of Section 230's broad protection. Section 230 was enacted in large part to respond to a state court decision which held an internet service provider liable for defamation. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009). Accordingly, defamation is "[t]he cause of action most frequently associated with … section 230." *Id.*

Stossel's defamation claim is no exception. Subsection 230(c)(1)—which this court has described as "quite robust," *Daniels v. Alphabet, Inc.*, 2021 WL 1222166, at *12 (N.D. Cal. Mar. 31, 2021)—bars any claim that would treat a "provider" of an "interactive computer service" as the "publisher" of content "provided by another information content provider." 47 U.S.C. § 230(c)(1); *see also Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). Because Stossel's claim seeks to impose liability on Meta for making available content created by third parties (i.e., the fact-checks performed by Climate Feedback), Section 230(c)(1) bars it.

1. <u>Stossel's defamation claim impermissibly seeks to impose liability on Meta for statements created by Climate Feedback</u>

Stossel's defamation claim satisfies the prerequisites for triggering Section 230's protection.

At the outset, Meta is undisputedly a "provider" of "an interactive computer service"—the Facebook platform.  *See, e.g.*, *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020).

And, Stossel's defamation claim seeks to treat Meta as the publisher of Climate Feedback's fact checks by holding Meta liable for the content of Climate Feedback's fact-checks, as well as the labels they triggered on the Facebook platform.   Compl. ¶¶ 116-117, 125-126, 122, 131. Binding Ninth Circuit precedent draws a "crucial distinction between, on the one hand, taking actions (traditional to publishers) that are necessary to the display of unwelcome and actionable content and, on the other hand, responsibility for what makes the displayed content illegal or actionable."  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 n.4 (9th Cir. 2016); *see also Jones v. Dirty World Ent. Recs. LLC*, 755 F.3d 398, 413-414 (6th Cir. 2014); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257-258 (4th Cir. 2009).  This is because "the exercise of a publisher's traditional editorial functions … do not transform an individual into a 'content provider' within the meaning of § 230."  *Batzel v. Smith*, 333 F.3d 1018, 1031 n.18 (9th Cir. 2003), *superseded by statute as stated in RLI Ins. Co. v. Langan Eng'g, Envtl., Surveying & Landscape Architecture, D.P.C.*, 834 Fed. App'x 362 (9th Cir. 2021) (citation omitted).  Here, "responsibility for what makes the displayed content [allegedly] illegal or actionable," *Kimzey*, 836 F.3d at 1269 n.4, rests squarely with Climate Feedback, not Meta, because it is Climate Feedback—not Meta— who allegedly determined whether Stossel's videos were missing context or partly false.

Meta's alleged involvement in the fact-checking process, by contrast, consisted of restating Climate Feedback's ratings as labels and providing links to explanations that Climate Feedback authored.  This type of automated display of content created by third parties—i.e., the combination of a "neutral means" with an "automated editorial act"—does not make Meta the creator of the third-party fact checkers' content.  *Marshall's Locksmith Service, Inc. v. Google, LLC*, 925 F.3d

1263, 1271 (D.C. Cir. 2019) (use of "automated algorithms" to convert "third party indicia of location into pictorial form" did not make Google the partial creator of resulting "map pinpoints"). It is instead analogous to Yelp's translation of user ratings into its proprietary star-rating system, which the Ninth Circuit has held does "not amount to content development." *Kimzey*, 836 F.3d at 1270 (quoting *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157, 1172 (9th Cir. 2008)). There, as here, Yelp's stars do "'absolutely nothing to enhance the defamatory sting of the message beyond the words offered by the user." *Id.* To take another example, eBay's development of its "safety program," through which eBay buyers can rate sales transactions on the platform, did not "place eBay outside the immunity for service providers," because eBay "did not create or develop the underlying misinformation." *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 833-834 (2002). As with Yelp and eBay, all Meta has done here is provide a rating tool that fact-checkers like Climate Feedback used. Holding Meta liable for the resulting labels and fact-checks would impermissibly impose liability for publishing content created by third parties.

> ### 2. Stossel cannot circumvent Section 230 immunity through various state-law theories

Stossel attempts to bypass Section 230 under various sparsely pleaded state-law theories. *See* Compl. ¶ 108 (contractual relationship), ¶ 109 (agency and ratification), ¶¶ 110-114 (conspiracy). None have merit.

*First*, Stossel alleges that Meta should be liable for the statements at issue because Facebook "contracts with [Climate Feedback and Science Feedback] 'to fact-check' content posted by Facebook users." Compl. ¶ 108. Not so. Merely paying someone to create content does not strip an interactive service provider of Section 230's protection. *See Blumenthal v. Drudge*, 992 F. Supp. 44, 51-52 (D.D.C. 1998) (AOL not liable for an allegedly defamatory story authored by someone else even though AOL had contracted with the author to provide the specific "kind of material"); *Ben Erza, Weinstein, & Co. v. Am. Online*, 206 F.3d 980 (10th Cir. 2000) (AOL not liable for allegedly false stock information even though AOL had contracted with two entities for the information). And Stossel does not allege anything more than that—he does not, for example, allege that Meta contracted with Climate Feedback or Science Feedback specifically to defame

Stossel.  As Stossel himself concedes, Meta has developed the fact-checking program for the Facebook platform "to fight[] the spread of misinformation" and relies on "independent, third-party fact-checking organizations" to "review content, check its facts, and rate its accuracy," Compl. ¶¶ 29, 32, not to defame Stossel.

*Second*, Stossel asserts that Climate Feedback and Science Feedback acted as Meta's agents.  Compl. ¶ 109.  This bare legal conclusion is insufficient to survive a motion to dismiss, *In re Gilead*, 536 F.3d at 1055, and the complaint is devoid of any factual allegations to support any required element of an agency relationship.  Courts routinely dismiss claims based on such scanty allegations.  For example, "conclusory allegations [that] fail to demonstrate the necessary understanding between [defendants]" or to "establish how [the alleged principal] was in control" are insufficient. *United Energy Trading, LLC v. Pacific Gas & Electric Co.*, 146 F. Supp. 3d 1122, 1141 (N.D. Cal. 2015).  So too are allegations that "[do] not proffer any factual basis to suggest that authority, either actual or apparent, existed." *Kreiser v. Asset Mgmt. Grp., Inc.*, 2021 WL 3579414, at *3-4 (C.D. Cal. Apr. 23, 2021).

Even worse, the factual allegations that Stossel *does* offer contradict any assertion that an agency relationship existed.  For an agency relationship to exist between Meta and Climate Feedback or Science Feedback, Meta must have either actually assented to the Feedback entities acting on its behalf or have held them out as authorized to act on Meta's behalf. *See Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017).  Meta's public identification of the fact-checkers, including Climate Feedback and Science Feedback, as "independent," *see* Compl. ¶¶ 29, 45-46, 83-84, without more, defeats any inference that Meta assented to either Feedback entity acting on its behalf, *see In Gilead*, 536 F.3d at 1055.  Those same statements contradict any conclusion that Meta held the Feedback entities out as authorized to act on its behalf.  The Court therefore need not credit this conclusory theory (and indeed, should dismiss it with prejudice). *See Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *6 (N.D.

1   Cal. Mar. 28, 2018) (denying plaintiff's request seeking leave to amend the complaint where

2   complaint alleged facts that directly contradicted an agency relationship).[9]

3         *Last*, Stossel's conspiracy theory also fails. Courts across the country routinely reject

4   plaintiffs' attempts to use conspiracy liability to hold online service providers liable for third-party

5   content posted to their platforms, because doing so would improperly circumvent Section 230's

6   protections. For example, in *J.B. v. G6 Hospitality*, another court in this district dismissed with

7   prejudice a conspiracy claim that sought to hold Craigslist liable for sex-trafficking related posts

8   to its platform. 2020 WL 4901196, at *4 (N.D. Cal. Aug. 20, 2020). That claim, like Stossel's,

9   "point[ed] directly to [the defendant's] role as a publisher of the advertisements," and thus fell

10  within Section 230(c)(1). *Id.* Similarly, in *Winter v. Bassett*, the Middle District of North Carolina

11  rejected a conspiracy claim against Yahoo for including websites that criticized the plaintiff as

12  results in its search engine, reasoning that "[a]ny action against Yahoo for civil conspiracy …

13  would hold Yahoo liable for its editorial decisions involving the content of third parties." 2003

14  WL 27382038, at *7 (M.D.N.C. Aug. 22, 2003); *see also, e.g., Jones v. Twitter, Inc.*, 2020 WL

15  6263412, at *3-4 (D. Md. Oct. 23, 2020) (section 230 immunity extended to conspiracy claims

16  that "clearly seek to hold Twitter liable as a publisher of third-party content"). Because Stossel's

17  conspiracy theory similarly seeks nothing more than to hold Meta liable for publishing content

18  created by Climate Feedback, it should be rejected.

19        In any event, the complaint does not plausibly allege that Meta conspired with either

20  Climate Feedback or Science Feedback to publish the allegedly defamatory statements. To survive

21  a motion to dismiss with a claim predicated on conspiracy liability, a plaintiff must allege that the

22  defendant "agreed to an *unlawful* plan"—that is, that the conspiring defendant had "actual

23  knowledge that a tort is planned and concur[red] in the tortious scheme with knowledge of its

24  unlawful purpose." *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 2019 WL 281370, at *15

25  (N.D. Cal. Jan. 22, 2019) (citation omitted). Stossel has not so pleaded. The complaint claims

26

27        [9] To the extent Stossel separately attempts to plead a ratification theory, *see* Compl. ¶ 109,
    that theory would fail for the same reasons at the agency theory. Ratification is only effective if
28  an agency relationship exists. *Batzel*, 333 F.3d at 1036 & n.23 (citing California law).

only that Meta engaged Climate Feedback to "fact-check" content posted by Facebook users, and that Meta knew or should have known that the specific content at issue was false or defamatory. Compl. ¶¶ 114, 122, 130.  It therefore does not contain "enough fact to raise a reasonable expectation that discovery will reveal evidence of *illegal* agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasis added).

Section 230 protects defendants not merely from ultimate liability, but also from "protracted legal battles." *Roommates.com*, 521 F.3d at 1175.  And courts have repeatedly cautioned against allowing "creative" pleading to circumvent Section 230's broad protection. *See Kimzey*, 836 F.3d at 1266; *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1126 (N.D. Cal. 2016). Accordingly, where Section 230 applies, it requires not only dismissal, but dismissal with prejudice. *See, e.g., Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1067 (N.D. Cal. 2016) (dismissing with prejudice claims "barred as a matter of law by § 230(c)").  Dismissal with prejudice is appropriate here.

**B.     Stossel Has Not Stated, And Cannot State, A Claim For Defamation Against Meta**

Stossel's defamation claim also fails on its own terms as Stossel has failed to state a defamation claim against Meta.

**1.     Stossel has not pled actual malice**

Stossel is a public figure.  "[A] plaintiff [may] be deemed an all-purpose public figure," where there is "'clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society." *Stolz v. KSFM 102 FM*, 30 Cal. App. 4th 195, 203 (1994) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974)).  Stossel admits that he meets this test. *See* Compl. ¶ 23 (touting Stossel's achievements and fame).  Accordingly, Stossel bears the burden to prove, by clear and convincing evidence, that any allegedly defamatory statement was made with "actual malice"—that is, "with knowledge that it was false or with reckless disregard

of whether it was false or not." *Reader's Digest Ass'n v. Superior Court*, 690 P.2d 610, 613 (Cal. 1984) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964)).[10]

The actual-malice requirement exists to encourage heartland First Amendment activity, like Facebook's editorial decisions to append third-party facts check to posts on its platform. *See infra* pp. 20-21. This rule "is not simply premised on common-law tradition, but on the unique character of the interest protected by the actual-malice standard." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 685-686 (1989). "Our profound national commitment to the free exchange of ideas, as enshrined in the First Amendment, demands that the law of libel carve out an area of 'breathing space' so that protected speech is not discouraged." *Id.* at 686 (quoting *Gertz*, 418 U.S. at 342). Accordingly, a defamation claim must be dismissed when the complaint fails to plead actual malice with the requisite specificity. *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018-1019 (N.D. Cal. 2017); *see also Barry v. Time, Inc.*, 584 F. Supp. 1110, 1113 (N.D. Cal. 1984).

In light of the important purposes it serves, the standard to show actual malice is high: the public-figure plaintiff must "sho[w] that the allegedly false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Reed v. Gallagher*, 248 Cal. App. 4th 841, 861 (2016). At minimum, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication . . . . The evidence must be so clear as to leave no substantial doubt." *Id.* Moreover, Stossel must allege "that ***each*** defendant had actual malice when it published, or had responsibility for the publication of, a defamatory statement." *Resolute Forest Prods.*, 2019 WL 281370, at *8 (emphasis added); *see also Murray v. Bailey*, 613 F. Supp. 1276, 1281 (N.D. Cal. 1985). It is not

---

[10] At minimum, Stossel is a "limited purpose" public figure to whom the actual malice standard applies—i.e., an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Stolz*, 30 Cal. App. 4th at 203 (quoting *Gertz*, 418 U.S. at 352). The Complaint establishes that Stossel has injected himself into the ongoing public debate surrounding climate change. *See* Compl. ¶¶ 37-44, 78-81.

enough to allege actual malice generally, on behalf of all Defendants—rather, Stossel must plead that Meta itself acted with actual malice.

Stossel falls far short of satisfying this demanding requirement for either of the allegedly defamatory statements. To begin, "[w]hen there are multiple actors involved in an organizational defendant's publication of a defamatory statement, the plaintiff must identify the individual responsible for the publication of a statement, and it is that individual the plaintiff must prove acted with actual malice." *Resolute Forest Prods.*, 302 F. Supp. 3d at 1019 (internal quotation marks omitted). All Stossel has done is baldly attribute actual malice to Meta generally; he has made no attempt to identify any specific actor at Meta who knew or should have known the claimed defamatory statements were false. (Indeed, given that the fact-check labels are applied to content automatically once content is rated by a fact-checker, without intervention by individual actors at Meta, it is hard to imagine that Stossel could identify any such person.) That alone compels dismissal of the defamation claim against Meta. *Id.*

Even if generally pleading that Meta acted with actual malice (without identifying any individual at Meta who was responsible for the publication of the alleged defamatory statements) could suffice, Stossel has not done so. The complaint simply states that Meta (as one of the "Defendants") "knew, or should have known" that the two allegedly defamatory statements were false. Compl. ¶¶ 122, 131. Again, that is insufficient. "[C]ourts have found that general allegations that a defendant should have known or should have investigated the truth of his or her statements do not adequately plead actual malice." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N. D. Cal. 2014). And Stossel does not provide "any specific allegations that would support a finding that [Meta] harbored serious subjective doubts as to the validity of his assertions." *Id.*

These threadbare allegations are particularly unavailing in light of Stossel's allegation that Meta relied on Climate Feedback's review and rating of the two videos it allegedly defamed. That, too, precludes a finding of actual malice, because "[a] publisher does not have to investigate personally, but may rely on the investigation and conclusion of reputable sources." *Reader's Digest Ass'n*, 690 P.2d at 619. So, for example, the Ninth Circuit has held that a book publisher who republished a *New Yorker* story later claimed to be libelous lacked actual malice; the publisher

"was entitled to rely on the investigation of the matter previously conducted by The New Yorker," particularly given "[t]he magazine's sterling reputation for accuracy." *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 902 (9th Cir. 1992). Meta's alleged reliance on independent, certified non-partisan third-party fact-checkers like Climate Feedback therefore confirms that Stossel has not, and cannot, plead actual malice.

Finally, to the extent Stossel intends to attribute Climate Feedback's alleged actual malice to Stossel through an agency theory, that also fails because he has not alleged that Climate Feedback acted as Meta's agent. *See supra* pp. 10-11.

As a matter of law, the complaint does not contain sufficient facts to permit the court to infer that Meta acted with actual malice. *See Resolute Forest Prods.*, 302 F. Supp. 3d at 1027-1028. The complaint fails on this independent basis.

> ### 2. <u>Stossel has not pleaded that any action Meta took with regard to either video amounted to defamation</u>

Even beyond Stossel's failure to plead actual malice, his defamation theories fail on other grounds. He identifies two purportedly defamatory statements: (1) the allegedly "false attribution" to him of certain statements from the Fire Video and (2) the allegedly inaccurate statement that the Alarmism Video had been subjected to a fact-check that determined that the Alarmism Video contained factual inaccuracies and was partly false. Neither claim identifies defamatory activity by either Meta or Climate Feedback.

> #### a) *No action Meta took with regard to the "Fire Video" amounted to defamation*

With regard to the "Fire Video," Stossel claims to have been injured by the allegedly false attribution to him, "by implication," of the statement that "forest fires are caused by poor management. Not by climate change." Compl. ¶ 116. That "implication" is entirely the result of Climate Feedback's fact-check—which is not attributable to Meta. *See supra* pp. 9-12. The only action Meta is alleged to have taken is restating Climate Feedback's rating as a label and affixing that label to the Fire Video. Stossel does not challenge the content of that label as defamatory. It

is not.  And, even if Climate Feedback's separate article could be attributed to Meta, the "implication" Stossel complains of is neither false nor defamatory.

*First*, Meta is alleged only to have superimposed a fact-check label on the Fire Video, describing Climate Feedback's conclusion that the video was "missing context."  Stossel does not claim that label is actionably false—presumably because it is protected opinion.  The conclusion that the video was "missing context" is necessarily a judgment call, one that is "not capable of verification or refutation by means of objective proof."  *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 n.7 (1st Cir. 1992).  And it is undisputed that Meta shared the basis for the "missing context" label alongside the rating by linking to Climate Feedback's fact check.  "A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning."  *Standing Committee on Discipline of U.S. Dist. Ct. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995).  For example, where an author describes general events and offers a personal perspective about ambiguities or disputed facts associated with those events, that opinion is protected under the First Amendment.  *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).  So too here:  Meta provided a link to a detailed description of the basis for the "missing context" label (i.e., Climate Feedback's webpage).

*Second*, the Fire Video itself makes clear that the "implication" Stossel complains of is not false.  "A 'public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation.'"  *Stolz*, 30 Cal. App. 4th at 202 (quoting *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986)); *Brown v. Kelly Broadcasting Co.*, 771 P.2d 406, 433 n.37 (Cal. 1989)).  Stossel claims that Climate Feedback's description of the Fire Video is false because it attributed to him a claim that "climate change doesn't cause forest fires."  Compl. ¶¶ 48-53.  But that does not accurately describe Climate Feedback's description of the video.  All Climate Feedback's webpage says is that "[t]he claim that the forest fires currently burning in the western United States are caused by poor forest management and not climate change appeared in multiple Facebook posts published in September 2020," and "[w]hile forest management practices, specifically fire suppression, have increased the fuel load, scientific evidence also links climate change to hotter and drier conditions."  Jennings Decl. Ex. 6, at 2.  It does not specifically attribute

that claim to Stossel, as opposed to the people he interviewed in his video.  Indeed, Stossel's video *did* include a claim by Shellenberger that California's recent wildfires were caused by forest management.  Jennings Decl. Ex. 5, at 3:10-13; 4:3-4 ("Stossel: 'If not climate change, what is to blame?  Foolish policy.' … Shellenberger: 'You could have had this amount of warming and not had these fires.'").  There was therefore nothing false about the statement on Climate Feedback's webpage.

  *Third*, the challenged implication is not defamatory.  Defamatory words are those which "expose[] any person to hatred, contempt, ridicule, or … which cause[] [the speaker] to be shunned or avoided."  Cal. Civ. Code § 45;  *see also Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217, 1233 (2017) (holding statements not defamatory because they did not subject the plaintiff to "hatred, contempt, ridicule, or obloquy, or cause her to be shunned or avoided" or tend to "injure her in occupation" (quotation marks omitted)); *Hayes v. Facebook*, 2019 WL 5088805, at *7 (N.D. Cal. Aug. 15, 2019) (Facebook notice identifying an internet link as malicious "is not defamatory").  Science Feedback's description of Stossel's video as including a claim that California wildfires were caused by forest management does not question *Stossel's* honesty, credibility, or reputation.  Indeed, its description did not mention Stossel at all.  That description therefore cannot support a defamation claim.  For instance, in *Polygram Records, Inc. v. Superior Court*, the court held that a false statement indicating that plaintiff's business goods "were of inferior quality" did not "accuse plaintiff of dishonesty, lack of integrity or incompetence" and therefore was not defamatory.  170 Cal. App. 3d 543, 550 (1985).  Similarly, in *Hayes*, "statements [that plaintiff's website link was malicious] were at most a commentary on an internet link" and "[n]o reasonable person would interpret those statements as being about [plaintiff] personally."  2019 WL 5088805, at *7 (dismissed with prejudice).  For similar reasons, statements about Stossel's *videos* do not rise to the level of defamation.[11]

---

[11] Climate Feedback's comments on the Fire Video did not even mention Stossel by name. "The [allegedly] defamatory statement must specifically refer to, or be 'of and concerning,' the plaintiff." *John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1312 (2016).  That requirement also is not met here.  *See Hayes*, 2019 WL 5088805, at *7 (Facebook's notice identifying an internet link as malicious "is not about [plaintiff] personally").

1
2

*b)*       *No action Meta is alleged to have taken with regard to the*
                    *"Alarmism Video" amounted to defamation*

3       Stossel's claims related to the Alarmism Video are similarly flawed.  The only assertedly

4    defamatory statement he identifies is the statement "that Stossel's Alarmism Video had been

5    subjected to a 'fact-check' that had determined that the Alarmism Video contained 'factual

6    inaccuracies' and was 'partly false.'"  Compl. ¶ 125.  Again, Stossel is, at bottom, complaining

7    about Climate Feedback's fact-check—not Meta's derivative label.  And, in any event, Stossel has

8    not pleaded that Climate Feedback's fact-check was either false or defamatory.

9       As with the Fire Video, the only action Meta is alleged to have taken with regard to the

10   Alarmism Video is superimposing a label on the video that directed users to Climate Feedback's

11   assessment of the video.  This time, the label stated that a third-party fact-checker had reviewed

12   the video and determined that it contained "factual inaccuracies" and was "partly false." Compl.

13   ¶ 12.  Again, Stossel cannot show that this label itself was inaccurate.  The Complaint establishes

14   that Climate Feedback did indeed review the Alarmism Video and determine that the challenged

15   label applies.  Compl. ¶¶ 82-87.

16       Nor can Stossel show that the underlying fact-check article concerning the Alarmism Video

17   was either false or defamatory.  As to falsity, Stossel claims that Climate Feedback falsely stated

18   that the "Video promoted by John Stossel for Earth Day relies on incorrect and misleading claims

19   about climate change." Compl. ¶ 85. But Stossel's complaint does not establish that the

20   complained-of conclusion is false.  Stossel provides just one example of a statement from the video

21   that he claims was true and makes no effort to explain why the rest of Climate Feedback's

22   comments do not support the general comment that his video "relies on incorrect and misleading

23   claims." Compl. ¶ 85.

24       Moreover, Climate Feedback shared its conclusion along with a voluminous explanation

25   for it.  As explained, where a statement of opinion is "based on fully disclosed facts," it is

26   actionably false only if the "stated facts are themselves false and demeaning."  *Standing*

27   *Committee*, 55 F.3d at 1439; *see supra* p.16.  Climate Feedback disclosed the factual basis for its

28

1    opinion, and there is no allegation that the facts Climate Feedback relied on to determine that the

2    Alarmism Video was partly false were themselves inaccurate.

3         Finally, as with Climate Feedback's review and rating of the Fire Video, Climate

4    Feedback's statements about the Alarmism Video are not defamatory.  Climate Feedback's

5    comments about the Alarmism Video are about the contents of the video, not Stossel himself.  *See*

6    *supra* pp. 16-17.

7    **II.    THE COURT SHOULD STRIKE THE COMPLAINT UNDER CALIFORNIA'S**

8    **ANTI-SLAPP STATUTE**

9         California's anti-SLAPP statute "provides for early dismissal" of "strategic lawsuits

10   against public participation."  *Navellier v. Sletten*, 52 P.3d 702, 706 (Cal. 2002) (internal quotation

11   marks omitted).  It mandates that any "cause of action against a person arising from any act of that

12   person in furtherance of the person's right of petition or free speech under the U.S. or California

13   Constitution in connection with a public issue shall be subject to a special motion to strike," unless

14   the plaintiff establishes a probability that it will prevail on the claim.  Cal. Civ. Proc. Code.

15   § 425.16(b)(1); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 902-903 (9th Cir. 2010).  The

16   anti-SLAPP statute applies to state-law claims brought in federal court under diversity jurisdiction.

17   *Id.* at 900 n.2.

18        To determine whether to grant an anti-SLAPP motion, the court performs a two-part

19   inquiry.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003).  First, the court

20   must assess whether the defendant has made a prima facie showing that "the plaintiff's suit arises

21   from an act in furtherance of the defendant's rights of petition or free speech" in connection with

22   a public issue.  *Id.*; *see also Equilon Enterprises v. Consumer Cause, Inc.*, 52 P.3d 685, 693-694

23   (Cal. 2002).  If the defendant makes this showing, then "the burden shifts to the plaintiff to

24   demonstrate a probability of prevailing on the challenged claims."  *Vess*, 317 F.3d at 1110 (internal

25   quotation marks omitted).  Courts "'construe[] the anti-SLAPP statute broadly'" to fully effectuate

26   the statute's purpose:  preventing litigants from abusing the judicial process to chill the exercise

27   of First Amendment rights.  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021)

28   (quoting Cal. Civ. Proc. Code. § 425.16(a)).

Stossel's defamation claim satisfies both prongs of the anti-SLAPP statute and should be struck.

### A.    Stossel's Defamation Claim Arises From Meta's First Amendment Protected Activity On A Matter Of Public Interest

At the first step of the anti-SLAPP analysis, "the critical consideration is whether the [plaintiff's] cause of action is based on the defendant's protected free speech or petitioning activity" or on any action taken in furtherance of those rights. *Navellier*, 52 P.3d at 709 (emphasis omitted). "[A] court focuses its anti-SLAPP analysis on the specific conduct that the claim is challenging." *Jordan-Benel v. Universal City Studios, Inc.*, 859 F. 3d 1184, 1190 (9th Cir. 2017); *see Bonni v. St. Joseph Health Sys.*, 491 P.3d 1058, 1065–1066 (Cal. 2021) ("[C]ourts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'").  Once the court determines that a cause of action is based on protected activity, the court must then determine whether that activity occurred "in connection with a public issue." *Hilton*, 599 F.3d at 904-905 (quotation marks omitted).  Both requirements are satisfied here.

### 1.    The Fact-Check Labels Are Protected Free Speech Activity

Stossel challenges Meta's decision to affix fact-check labels to two videos on his Facebook page.  Compl. ¶¶ 116, 125; *see also* Compl. ¶¶ 45-47, 83-85.  That decision indisputably represents constitutionally protected speech, squarely in the heartland of the anti-SLAPP statute's concern.

As the Ninth Circuit has explained, "where … an action directly targets the way a content provider chooses to deliver, present, or publish news content on matters of public interest, that action is based on conduct in furtherance of free speech rights and must withstand scrutiny under California's anti-SLAPP statute." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 424-425 (9th Cir. 2014).  Just as courts have applied this type of reasoning to strike claims arising from news organizations' exercise of editorial control and judgment in print or on air, *see Wilson v. Cable News Network, Inc.*, 444 P.3d 706, 721–723 (Cal. 2019), so too have they done so for content providers in the Internet context, *see Greater L.A. Agency on Deafness*, at 422-425 (concerning news organization's editorial decision to not use closed captioning for

videos on its website).  As in those cases, Meta's decisions to place fact-check labels on two of Stossel's videos represent protected activity.

2.   The Fact-Check Labels Are Speech In Connection With An Issue Of Public Interest

Meta's labels are also speech "in connection with a public issue."  Cal. Civ. Proc. Code § 425.16(b)(1); *see id.* § 425.16, (e)(3), (e)(4).  "An issue of public interest is any issue in which the public is interested."  *Kieu Hoang v. Phong Minh Tran*, 60 Cal. App. 5th 513, 528 (2021) (quotations marks and emphasis omitted).  "Like the SLAPP statute itself, the question whether something is an issue of public interest must be construed broadly."  *Id.* (quotation marks omitted).

As a general matter, the public undoubtedly has a stake in Meta's content moderation decisions.  Given the billions of people who use Facebook, Compl. ¶ 24, "[Meta]'s ability to decisively police the integrity of its platform is without question a pressing public interest." *Stackla, Inc. v. Facebook, Inc.*, 2019 WL 4738288, at *6 (N.D. Cal. Sept. 27, 2019).  Meta's fact-checking is even a matter of Congressional concern.  *E&C Committee Announces Hearing With Tech CEOs On The Misinformation Plaguing Online Platforms*, House Committee on Energy and Commerce, Feb. 18, 2021, https://tinyurl.com/36vfrbz5.[12]  Given the intense public interest in Meta's steps to identify and flag potential viral misinformation, the anti-SLAPP's public interest requirement is satisfied.

Moreover, Stossel essentially concedes that the fact-check labels at issue in this case satisfy the requirement.  As he explains, "the Fire Video had nearly 1.2 million views," Compl. ¶ 104, and that video involved "a complex topic of scientific debate" on the effect of climate change on forest fires, Compl. ¶ 52.  The Alarmism Video similarly contained "a debate of opposing hypotheses regarding the effects of climate change."  Compl. ¶ 80.  Climate change indisputably represents a topic of national and global significance: "California courts have acknowledged that

---

[12] The Court may take judicial notice of this official government website.  *See Daniels–Hall v. Nat'l Educ. Assoc.*, 629 F.3d 992, 998-999 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because they were government entities); *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (taking judicial notice of information posted on a Department of Health and Human Services website).

environmental harm is a matter of public interest for the purposes of anti-SLAPP." *Resolute Forest Prods.,* 302 F. Supp. 3d at 1026; *see also Wong v. Jing*, 189 Cal. App. 4th 1354, 1366 (2010) (matters that "can affect many people [are] generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute").  Prominent online discourse on the topic—here, publicly accessible web videos that reached millions of viewers and concerned the environmental impact of rising temperatures and sea levels—therefore qualifies as a quintessential matter of public interest. *See Cross v. Facebook*, 14 Cal. App. 5th 190, 200 (2017) (topic with "millions of results" on Google is matter of public concern).

### B.    Stossel Has No Chance of Success On The Merits

Under the second prong of the anti-SLAPP statute, a plaintiff must "demonstrate a probability of prevailing on the challenged claims." *Vess,* 317 F.3d at 1110.  Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).  In other words, if Stossel "cannot plead a plausible action under the FRCP 12(b)(6) standard, then [he] cannot as a matter of law cannot meet the probability of success on the merits standard." *Resolute Forest Prods.*, 302 F. Supp. 3d at 1026; *see also Niantic, Inc. v. Global++*, 2020 WL 1548465, at *7-8 (N.D. Cal. Jan. 30, 2020).

For the reasons explained above, Stossel cannot satisfy the Rule 12(b)(6) standard.  His defamation claim should be struck, and Meta should be awarded its fees and costs associated with litigating this motion.  Cal. Civ. Proc. Code § 425.16(c); *see Moore v. Liu*, 69 Cal. App. 4th 745, 752 (1999) ("Persons who threaten the exercise of another's constitutional rights to speak freely . . . should be adjudicated to have done so, not permitted to avoid the consequences of their actions by dismissal of the SLAPP suit when a defendant challenges it.").

### CONCLUSION

The Complaint should be dismissed with prejudice.

1

Respectfully submitted,

2

3   Dated: November 29, 2021

WILMER CUTLER PICKERING, HALE
AND DORR LLP

4

By:   */s Sonal N. Mehta*
           SONAL N. MEHTA

5

6

*Attorney for Defendant Meta Platforms, Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                                    **<u>CERTIFICATE OF SERVICE</u>**

3              I hereby certify that on November 29, 2021, I electronically filed the above document

4      with the Clerk of the Court using CM/ECF which will send electronic notification of such filing

5      to all registered counsel.

6

7      Dated: November 29, 2021                    By:    */s Sonal N. Mehta*
                                                          Sonal N. Mehta
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28