THOMAS R. BURKE (State Bar No. 141930)
    thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111-6533
Telephone:(415) 276-6500
Facsimile:(415) 276-6599

SELINA MACLAREN (State Bar No. 300001)
    selinamaclaren@dwt.com
ABIGAIL ZEITLIN (State Bar No. 311711)
    abigailzeitlin@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

*Attorneys for Defendant*
SCIENCE FEEDBACK
(erroneously sued as "Science Feedback
and Climate Feedback")

## IN THE UNITED STATES DISTRICT COURT

## THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| JOHN STOSSEL, an individual, | Case No. 5:21-cv-07385 |
| Plaintiff, | Assigned to the Hon. Virginia K. DeMarchi |
| v. | **DEFENDANT SCIENCE FEEDBACK'S NOTICE OF MOTION AND (1) MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6), AND (2) MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE, CODE CIV. PROC. § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| FACEBOOK, INC., a Delaware corporation; SCIENCE FEEDBACK, a French non-profit organization; and CLIMATE FEEDBACK, a French non-profit organization, | |
| Defendants. | [Supporting Declaration and Exhibits Thereto, and Request for Judicial Notice Filed Concurrently] |
| | Date:      April 12, 2022 |
| | Time:      10:00 AM |
| | Courtroom: 2 |
| | Action Filed:  September 22, 2021 |

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on April 12, 2022 at 10:00 am in the courtroom of Judge

4   Virginia K. DeMarchi of the above-entitled United States District Court, located at San Jose

5   Courthouse, Courtroom 2 – 5th Floor, Defendant Science Feedback[1] will move this Court for an

6   order striking the claims asserted against Science Feedback pursuant to California's anti-SLAPP

7   statute, section 425.16 *et seq.* of the California Code of Civil Procedure, and Federal Rule of

8   Civil Procedure 12(b)(6) (the "Motion"), and for an order granting Science Feedback its

9   attorneys' fees[2] pursuant to California Code of Civil Procedure section 425.16(c).

10      As set forth in more detail in the attached memorandum of points and authorities, the

11   Court should strike the Complaint in its entirety under California's anti-SLAPP statute,

12   California Civil Code § 425.16.  Plaintiff's claim against Science Feedback is subject to

13   dismissal under California Code of Civil Procedure Section 425.16(e)(3) and (e)(4).

14   Memorandum ("Mem") Section IV.A.  Plaintiff's claim indisputably arises from Science

15   Feedback's "writing made in a place open to the public or a public forum in connection with an

16   issue of public interest," and its conduct "in furtherance of the exercise of . . . the constitutional

17   right of free speech in connection with a public issue or an issue of public interest."  Cal. Civ.

18   Code § 425.16(e)(3)-(e)(4).  Websites accessible to the public are "public forums" for the

19   purposes of the anti-SLAPP statute, and statements regarding climate change involve an issue of

20   public interest.  *See* Mem. Section IV.A.  Because the anti-SLAPP statute applies to the allegedly

21   defamatory statements, Plaintiff must establish a probability that he will prevail as to each claim

22   or the claim will be stricken.  Cal. Civ. Code § 425.16(b)(1).  Because Science Feedback

23   challenges the legal sufficiency of Plaintiff's claims, Plaintiff must show he has alleged

24   sufficient facts to raise a right to relief above the speculative level.  *See Planned Parenthood*

25

26

_____

27   [1] Plaintiff has erroneously sued Science Feedback as "Science Feedback and Climate Feedback."
     Climate Feedback is not a separate legal entity, but rather a website run by Science Feedback.

28   [2] Science Feedback will file separately, a motion for fees and costs after its Motion is granted.

1  *Fed'n of Am., Inc. v. Cntr. For Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018); *Ashcroft v.*

2  *Iqbal*, 556 U.S. 662, 668 (2009).  Plaintiff cannot meet his burden for the following reasons:

3      1.      The Complaint identifies only nonactionable statements by Science Feedback.

4  First, the statements—such as calling a video "misleading" or "missing context"—are not

5  capable of a defamatory meaning.  Second, the statements concerning the veracity or credibility

6  of claims made in Plaintiff's videos are informed statements of scientific views based on

7  disclosed facts, and therefore constitutionally-protected speech.  Finally, when it published the

8  challenged statements, Science Feedback disclosed the truthful scientific facts and literature it

9  relied on, and Plaintiff does not and cannot allege that these facts are materially false.  Thus, the

10  "gist" and "sting" of the articles—*i.e.*, that Plaintiff's videos feature misleading claims—are true.

11  Mem. Section IV.B.1.

12      2.      Plaintiff's claim also arises from statements that are nonactionable because they

13  are not "of and concerning" him.  To the contrary, the statements Plaintiff identifies critique

14  claims made by entirely different people—namely, subjects Plaintiff interviewed in his videos.

15  Mem. Section IV.B.2.

16      3.      Plaintiff also fails to allege defamation per se.  As a result, he must plead that he

17  suffered special damages with particularity, which he does not.  Cal. Civ. Code § 45a, 48a. Mem.

18  Section IV.B.3.

19      4.      Plaintiff's claim is independently barred by California's correction  statute, which

20  limits a plaintiff's recovery to special damages where, as here, the plaintiff did not make a timely

21  correction demand to Science Feedback.  Plaintiff has not pled special damages, nor can he.  Cal.

22  Civ. Code § 48a. Mem. Section IV.B.4.

23      5.      The defamation claim also fails because, as Plaintiff concedes, he is a public

24  figure.  Even accepting all of Plaintiff's facts as true, the Complaint nevertheless fails to

25  sufficiently plead any facts that Science Feedback published the challenged statements with

26  actual malice—*i.e.*, with knowledge that the statements were false or published with reckless

27  disregard as to whether they were true—much less facts that could satisfy the "clear and

28

NOTICE OF MOTION
Case No. 5:21-cv-07385

1  convincing" standard applicable, as a matter of law, to defamation actions brought by public

2  figures.  Mem. Section IV.B.5.

3         Accordingly, this Court should grant Science Feedback's motion and dismiss Plaintiff's

4  claims, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) and California Code

5  of Civil Procedure § 425.16 (b)(1).  Science Feedback also requests that it be awarded its

6  attorney's fees and costs incurred in defending this meritless lawsuit, pursuant to Cal. Civ. Proc.

7  Code § 425.16(c), in an amount to be determined by subsequent motion.

8         This Motion is based on this Notice of Motion, the Memorandum of Points and

9  Authorities, the concurrently-filed Request for Judicial Notice and Declaration of Thomas R.

10 Burke ("Burke Decl.") with Exhibits 1-10, any other matters of which this Court may take

11 judicial notice; all pleadings, files, and records in this action; and such other argument as this

12 Court may receive at the hearing on this Motion.

13 DATED: January 31, 2022                    DAVIS WRIGHT TREMAINE LLP
                                            THOMAS R. BURKE
14                                          SELINA MACLAREN
                                            ABIGAIL ZEITLIN
15

16
                                            By:  */s/ Thomas R. Burke*
17                                               Thomas R. Burke

18                                          Attorneys for Defendant
                                            SCIENCE FEEDBACK (erroneously sued as
19                                          "Science Feedback and Climate Feedback")

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2
**Page**

3
I.      INTRODUCTION ............................................................................................... 1

4
II.     COMPLAINT'S ALLEGATIONS ................................................................... 3

5
        A.      The Parties and Relevant Individuals. ....................................................... 3

6
        B.      Climate Feedback's Process. ...................................................................... 4

7
        C.      The Fire Video Claim. ................................................................................. 5

8
        D.      The Alarmism Video Claim. ....................................................................... 6

9
        E.      Plaintiff Does Not Demand A Correction, Despite Notice. ........................ 9

10
        F.      The Identified Statements. ......................................................................... 10

11
III.    LEGAL STANDARD ...................................................................................... 10

12
IV.     ARGUMENT .................................................................................................... 11

13
        A.      The Anti-SLAPP Statute Applies to Plaintiff's Complaint. ...................... 11

14
        B.      Plaintiff Cannot Show a Probability of Prevailing on His Claims. ........... 12

15
                1.      The Statements At Issue Are Not Actionable. .............................. 13

16
                2.      The Identified Statements Are Not "Of and Concerning" Plaintiff.
17                              ....................................................................................................... 18

18
                3.      Plaintiff Does Not Allege Libel Per Se, or Plead Special Damages.
                                ....................................................................................................... 20

19
                4.      The Complaint Should Be Stricken Because Plaintiff's Claim Is
20                              Barred By The Correction Statute. ................................................ 21

21
                5.      Plaintiff Fails to Allege Actual Malice. ........................................ 23

22
V.      CONCLUSION ................................................................................................ 25

23

24

25

26

27

28

_____
MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4
*Anderson v. Hearst Publ'g Co.*,
  120 F. Supp. 850 (S.D. Cal. 1954) ................................................................. 21

5

6
*Annette F. v. Sharon S.*,
  119 Cal. App. 4th 1146 (2004) ...................................................................... 12

7
*Anschutz Ent. Grp., Inc. v. Snepp*,
  171 Cal. App. 4th 598 (2009) ................................................................. 21, 23

8

9
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 11

10

11
*Barrett v. Rosenthal*,
  40 Cal. 4th 33 (2006) .................................................................................... 12

12
*Blatty v. N.Y. Times Co.*,
  42 Cal. 3d 1033 (1986) ............................................................................ 18, 20

13

14
*Braun v. Chronicle Publ'g Co.*,
  52 Cal. App. 4th 1036 (1997) ....................................................................... 11

15

16
*Cnty. Of Tuolumne v. Sonora Cmty. Hosp.*,
  1 F. App'x 653 (9th Cir. 2001) ..................................................................... 15

17
*Cochran v. NYP Holdings, Inc.*,
  58 F. Supp. 2d 1113 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000) ................. 15, 16

18

19
*ComputerXpress, Inc. v. Jackson*,
  93 Cal. App. 4th 993 (2001) ......................................................................... 12

20

21
*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ........................................................................ 21

22
*Freedom Newsapers, Inc.. v. Super. Ct.*,
  4 Cal. 4th 652 (1992) .................................................................................... 22

23

24
*Gang v. Hughes*,
  111 F. Supp. 27 (C.D. Cal. 1953) ................................................................. 13

25
*GOLO, LLC v. Higher Health Network*,
  LLC, No. 3:18-cv-2434, 2019 WL 446251 (S.D. Cal. Feb. 5, 2019) .................................. 21

26

27
*Gregory v. McDonnell Douglas Corp.*,
  17 Cal. 3d 596 ............................................................................................. 17

28

ii

*Herring Networks, Inc. v. Maddow*,
   445 F. Supp. 3d 1042 (S.D. Cal. 2020), *aff'd*, 8 F.4th 1148 (9th Cir. 2021) .......................... 14

*Heuer v. Kee*,
   15 Cal. App. 2d 710 (1936) ................................................................................................. 17

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ............................................................................................... 11

*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
   129 Cal. App. 4th 1228 (2005) ........................................................................................... 12

*John Doe 2 v. Super. Ct.*,
   1 Cal. App. 5th 1300 (2016) ............................................................................................... 18

*Kieu Hoang v. Phong Minh Tran*,
   60 Cal. App. 5th 513 (2021) ............................................................................................... 23

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................................................. 13

*Koch v. Goldway*,
   817 F.2d 507 (9th Cir. 1987) ............................................................................................... 14

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ............................................................................................. 12

*Manzari v. Associated Newspapers Ltd.*,
   830 F.3d 881 (9th Cir. 2016) ............................................................................................... 21

*Masson v. New Yorker Mag., Inc.*,
   501 U.S. 496 (1991) ............................................................................................................ 17

*McGarry v. Univ. of San Diego*,
   154 Cal. App. 4th 97 (2007) ......................................................................................... 23, 25

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ................................................................................................................ 14

*Mindys Cosms., Inc. v. Dakar*,
   611 F.3d 590 (9th Cir. 2010) ............................................................................................... 11

*Moldea v. New York Times Co.*,
   22 F.3d 310 (D.C. Cir. 1994) (*Moldea II*) .......................................................................... 15

*Moore v. Navarro*,
   No. C 00-03213, 2004 WL 783104 (N.D. Cal. Mar. 31, 2004) ............................................ 4

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ............................................................................................................ 23

iii

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) .................................................................................................. 11

*Newton v. Nat'l Broad. Co.*,
    930 F.2d 662 (9th Cir. 1990) ........................................................................................ 19

*Nygard, Inc. v. Uusi-Kettula*,
    159 Cal. App. 4th 1027 (2008) ..................................................................................... 12

*O'Grady v. Superior Court*,
    139 Cal. App. 4th 1423 (2006) ..................................................................................... 22

*Owens v. Lead Stories, LLC*,
    No. CV S20C-10-016 CAK, 2021 WL 3076686
    (Del. Super. Ct. July 20, 2021) .................................................................................... 16

*Palm Springs Tennis Club v. Rangel*,
    73 Cal. App. 4th 1 (1999) ............................................................................................ 20

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ......................................................................... 14, 15, 16

*Planned Parenthood Fed'n of Am., Inc. v. Cntr. For Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ........................................................................................ 11

*Pollard v. Lyon*,
    91 U.S. 225 (1875) ....................................................................................................... 21

*Price v. Stossel*,
    620 F.3d 992 (9th Cir. 2010) ........................................................................................ 21

*Reader's Dig. Ass'n v. Super. Ct.*,
    37 Cal. 3d 244 (1984) ............................................................................................ 23, 24

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ....................................................................... 24

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    No. 17-CV-02824, 2019 WL 281370 (N.D. Cal. Jan. 22, 2019) .................................. 12

*Shoen v. Shoen*,
    5 F.3d 1289 (9th Cir. 1993) .......................................................................................... 22

*Sipple v. Found. for Nat'l Progress*,
    71 Cal. App. 4th 226 (1999) ......................................................................................... 23

*Song fi Inc. v. Google, Inc.*,
    108 F. Supp. 3d 876 (N.D. Cal. 2015) ......................................................................... 20

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ..................................................................................................... 25

iv

*Standing Comm. on Discipline v. Yagman,*
    55 F.3d 1430 (9th Cir. 1995) ............................................................................ 16

*Taus v. Loftus,*
    40 Cal. 4th 683 (2007) ..................................................................................... 12

*Taylor v. Yee,*
    780 F.3d 928 (9th Cir. 2015) ............................................................................ 11

*Underwager v. Salter,*
    22 F.3d 730 (7th Cir. 1994) .............................................................................. 24

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) .............................................................................. 4

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) .......................................................................... 11

*Wynn v. Chanos,*
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ............................................................. 14

*ZL Techs., Inc. v. Gartner, Inc.,*
    709 F. Supp. 2d 789 (N.D. Cal. 2010), *aff'd sub nom. ZL Techs., Inc. v.*
    *Gartner Grp., Inc.,* 433 F. App'x 547 (9th Cir. 2011) ....................................... 14

**Statutes**

California Civil Code
    § 45 ........................................................................................................... 13, 14
    § 45a ................................................................................................................ 20
    § 45a, 48a .............................................................................................. 20, 21, 22
    § 48(d)(2) ........................................................................................................ 20
    § 48a ................................................................................................................ 22
    § 48a(d)(5) ...................................................................................................... 22
    § 425.16 ........................................................................................................ 2, 23
    § 425.16(b)(1), (c) .......................................................................................... 11
    § 425.16(e) ...................................................................................................... 11
    § 425.16(e)(3) .................................................................................................. 12
    § 425.16(e)(3)–(e)(4) ...................................................................................... 11
    § 425.16(e)(3)-(e)(4) ........................................................................................ 2

**Rules**

Federal Rules of Civil Procedure
    9(g) ................................................................................................................. 21
    12(b)(6) ........................................................................................................... 11

**Other Authorities**

*Responding to Stossel TV video on our rating process*, Climate Feedback,
   https://climatefeedback.org/responding-to-stossel-tv-video-on-our-rating-
   process/ (last visited Jan. 27, 2022)...........................................................................9

Restatement (Second) of Torts § 566 (Am. L. Inst. Oct. 2021 update) .......................................16

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

# I.    INTRODUCTION

This case presents an increasingly common scenario that the California anti-SLAPP statute squarely addresses: a peddler of sensationalist news content on the internet seeks to punish a nonprofit, scientific fact-checking organization and its volunteer scientists for critiquing his posts.  As social media platforms and fact-checking organizations attempt to address the growing problem of viral misinformation online, it is vital that the legal system safeguard robust and open debate on scientific issues, including, critically, scientifically-sound fact-checks like those at issue here.  Plaintiff's efforts to silence Science Feedback's accurate and constitutionally-protected free speech should be swiftly and resoundingly rejected.

Plaintiff, who frequently posts controversial videos on social media,[3] brings a single count of defamation against Science Feedback, a French nonprofit organization, because two videos he posted to his Facebook account were flagged by Facebook's fact-checking process.  These videos—which featured speakers making controversial claims titled "Government Fueled Fires" and "Are We Doomed?"—were not removed from the platform; indeed, Plaintiff's "speech" remains fully accessible to the public to this day.  Rather, they were affixed with Facebook's labels: "Missing Context" and "Partly False," respectively.  The labels also contained a "See Why" button that brought the viewer to scientific review articles (hereinafter, the "Articles") hosted on a different website, climatefeedback.org (hereinafter, "Climate Feedback").[4]  These Articles described scientific facts that called into question the claims featured within Plaintiff's videos, and scientists' opinions on those claims.

Critically, Plaintiff does not *deny* the truthfulness of the Articles; indeed, he *admits* the scientific conclusions therein are true.  Compl. ¶ 52 (saying his conclusions and those in the Articles "vary only by degree").  Instead, Plaintiff apparently takes issue with *being affiliated*

---

[3] *See*, *e.g.*, Ex. 3 (screenshot of Plaintiff's recent Facebook posts, which are incorporated by reference into the Complaint).

[4] Plaintiff has erroneously sued Science Feedback as "Science Feedback and Climate Feedback." Climate Feedback is not a separate legal entity, but rather a website run by Science Feedback. Facebook (now Meta) contracts with SciVerify, a company registered in France, which is wholly owned by Science Feedback.  SciVerify exercises no control over the editorial content on the website Climate Feedback, and Science Feedback has no direct business relationship with Facebook.

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

with the controversial and misleading claims—the very claims he gave airtime to and shared with over one million followers.  Compl. ¶ 23.

Plaintiff's claim against Science Feedback arises from these Articles, which are protected under California's anti-SLAPP statute.  Cal. Civ. Code § 425.16.  Because the lawsuit targets the exercise of free speech in a public forum involving matters of indisputable public concern and public interest—namely, climate change—Plaintiff must show a reasonable probability of prevailing on the merits of his claim.  Cal. Civ. Code § 425.16(e)(3)-(e)(4).  He cannot do so.

*First*, Plaintiff fails to state a claim for defamation against Science Feedback because the identified statements are nonactionable.  Calling a video "misleading" or "missing context" does not rise to the level of defamation, especially where, as here, the individual posting the video is already known for his controversial social media posts.  In addition, the statements are not false assertions of fact.  The articles expressly state that the conclusions are based on third-party expert viewpoints, and provide full context for the editor's evaluation, including by citing to data and studies.  The legal doctrine of "opinion based on disclosed facts" exists to protect  these kinds of informed viewpoints.  Finally, because Plaintiff concedes, as he must, that the scientific conclusions in the article are accurate, he cannot meet his burden of demonstrating that the "gist" of the statements at issue are materially false.  Mem. Section IV.B.1.  *Second*, the Articles' statements identified in the Complaint are not "of and concerning" Plaintiff; rather, they concern the veracity of the claims *his interviewees* make in the videos.  Mem. Section IV.B.2.  *Third*, because Plaintiff does not allege defamation per se, nor appropriately comply with California's correction statute, he must allege and prove that he suffered special damages as a direct result of the challenged statements, which his generalized allegations fail to do.  Mem. Sections IV.B.3-4.  *Finally*, Plaintiff, as a self-described public figure with access to the media, must allege that when Science Feedback published the challenged statements about him, it acted with "clear and convincing" evidence of "actual malice," which he fails to do.  Mem. Section IV.B.5.

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

1    For these reasons, Science Feedback respectfully asks that the Court dismiss this lawsuit

2    with prejudice.[5]

3                        II.      COMPLAINT'S ALLEGATIONS[6]

4    A.      The Parties and Relevant Individuals.

5    Plaintiff "publishes short weekly news videos on social media," including on Facebook,

6    "where he has over one million followers."  Compl. ¶ 23.  Plaintiff has a history of posting

7    videos on controversial topics.  *See* Compl. n.5, n.9 (citing Plaintiff's Facebook page); Burke

8    Decl. Ex. 3 (screenshot of Plaintiff's Facebook page, which contains videos reporting on Critical

9    Race Theory in American Schools, toxic victimhood, vaccine mandates, trans women in sports,

10   among others).[7]

11   Defendant Science Feedback is a French not-for-profit organization that verifies the

12   credibility of influential claims online that purport to be scientific.  Compl. ¶¶ 27-36.[8]  Science

13   Feedback's mission is to improve the credibility of science-related information online and on

14   social media.  *Id.*  Science Feedback runs a website specifically regarding climate science

15   entitled Climate Feedback.  Compl. ¶ 25 (Climate Feedback is not a separate legal entity, it is

16   merely a website); Dkt. 43 (Defendant's Corporate Disclosure Statement).

17   Meta Platforms, Inc. ("Meta")[9] operates Facebook, a social networking platform

18   (hereinafter, "Facebook").  Compl. ¶ 23-24.  Meta contracts with third parties, such as Science

19   Feedback's wholly-owned subsidiary SciVerify, to fact-check certain content posted by users on

20   its site.  Compl. ¶¶ 107-08.  Based on the fact-checkers' review of certain posts and

21   recommendations regarding the appropriate label, Facebook publishes these public-facing labels

22   to the content on its platform.  Compl. ¶¶ 33-36.  The available labels in Meta's rating system

23

24   _____

25   [5] Science Feedback intends to separately move for attorneys' fees, as provided for under the California anti-SLAPP statute.

26   [6] Science Feedback assumes the truth of the allegations in the Complaint for the purposes of this motion only.

27   [7] *Accord, infra*, note 10.

28   [8] Science Feedback has a subsidiary, SciVerify, that engages in contracts and paid partnerships with social media companies to review information published on their platforms for credibility.
     [9] *See* Meta Platforms, Inc. Mot. to Dismiss, Dkt. 27.

_____

consist of the following: False, Altered, Partly False, Missing Context, Satire, and True.  Compl.

¶¶ 33-36, n.4; Burke Decl. Ex. 4.

**B.      Climate Feedback's Process.**

As part of its fact-checking procedure, Climate Feedback editors select certain broad

claims that are gaining traction on social media and subsequently turn to their network of outside

experts and scientists in the field of climate science.  *See* Burke Decl. Ex. 6.[10]  These outside

experts are invited to review and comment on the article "to indicate whether the facts

underlying the reasoning are consistent with up-to-date scientific knowledge."  *Id.*  These

scientists then provide an overall credibility rating.  *Id.*  After the review is complete, a Climate

Feedback editor summarizes the findings and publishes the findings in an article on the Climate

Feedback website.  *Id.*

It is important to note that these articles are not custom-made for every individual post

generated on social media, but rather, an article is published in response to a claim that is broadly

appearing on the internet in various forms.  The published articles are then used as source

material to determine whether particular posts containing certain claims are credible.  Compl. ¶

69, n.8 (citing to Climate Feedback's response, which states in part: "This is a misunderstanding

of how fact-checking partners operate on Facebook. Given that many pieces of content posted on

Facebook can separately make the same claim, it is not necessary to create a separate claim

review article for each post we rate. It is, of course, necessary that the claim we reviewed is

representative of the claim in each post we rate, which is true in this case."); Burke Decl. Ex. 5.

---

[10] The Court evaluates the pleadings and may consider documents to which the complaint refers extensively or that form the basis of the plaintiff's claim.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *see also Moore v. Navarro*, No. C 00-03213, 2004 WL 783104, at *2 (N.D. Cal. Mar. 31, 2004) (Chesney, J.) ("Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered.").  Here, Plaintiff refers extensively to Climate Feedback's website and cites the statements on the website as being allegedly defamatory.  *See* Compl. ¶ 47, n.6; ¶ 69, n.8; ¶ 74; ¶ 85, n.10; ¶¶ 87 –88.  As a result, Climate Feedback's website is incorporated by reference in the Complaint and the Court may consider it in deciding this motion.

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

**C.      The Fire Video Claim.**

On September 22, 2020, in response to the wildfires that were raging in California, Plaintiff published a video on his Facebook page entitled "Government Fueled Fires," which is referred to as the "Fire Video" in the Complaint.  Compl. ¶ 37, n.5.  As part of this video, Plaintiff interviewed an individual, Michael Shellenberger, whom Plaintiff introduced as an "environmentalist."  *See* Ex. 8 at 1 (transcript of Fire Video).  In the Fire Video, Mr. Shellenberger advanced the theory that "while climate change undoubtedly contributes to forest fires, it was not the primary cause of the 2020 California fires."  Comp. ¶¶ 42-43.  Plaintiff narrated: "[Michael Shellenberger] says it's silly to blame the fires on climate change," and later stated, "If not climate change, what is to blame? Foolish policies."  *See* Ex. 8 at 1.  "California has warmed three degrees over 50 years, *but*—" Plaintiff says in the Fire Video, followed by a clip of Mr. Shellenberger stating, "You could have had this warming and not had these fires."  *See id.* at 2 (emphasis added).  Plaintiff concludes the Fire Video by stating: "Bad policies were the biggest cause of this year's fires, not the slightly warmer climate."  *See id.* at 3.

On September 9, 2020, *two weeks before* Plaintiff posted his Fire Video, Climate Feedback published its findings about the already-viral claim that "Forest fires are caused by poor management.  Not by climate change."  Compl. ¶ 47, n.6; Burke Decl. Ex. 1 (hereinafter, "Fire Article").  In the Fire Article, Climate Feedback published its verdict that this claim was "Misleading."  *Id.*  Climate Feedback then provided further explanation that this claim "misrepresents a complex reality" because the "causes and behaviors of wildfires in the western US are influenced by a variety of factors, including weather conditions, climate change, past fire suppression practices, and an increase in the number of people living near wildlands."  *Id.*  Climate Feedback also wrote: "Scientific studies demonstrate clear links between climate change, hotter and drier conditions, and an increase in dry vegetative fuel load, drastically increasing the amount of forest fire area in the western US."  *Id.*

The Fire Article then continues on to provide citations to scientific data underlying its statements and comments from three different scientists who all evaluated the claim.  Those scientists relied on scientific literature including:

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

- Abatzoglou, et al., *Impact of anthropogenic climate change on wildfire across western US forests*, Proceedings of the National Academy of Sciences of the United States of America ("PNAS") (2016);
- Intergovernmental Panel on Climate Change ("IPCC"), *Climate Change 2014: Summary for Policymakers*, Contribution of Working Groups I, II and III to the Fifth Assessment Report of the Intergovernmental Panel on Climate Change (2014);
- National Academies of Sciences, Engineering, and Medicine, *Attribution of extreme whether events in the context of climate change*, The National Academies Press (2016);
- Noah S. Diffenbaugh, *Verification of extreme event attribution: Using out-of-sample observation to assess changes in probabilities of unprecedented events*, Science Advances (2020);
- Swain, et al., *Attributing extreme events to climate change: A new frontier in a warming world*, One Earth (2020);
- Dong, et al., *Mechanisms for an amplified precipitation seasonal cycle in the U.S. west coast under global warming*, Journal of Climate (2019);
- Westerling, *Increasing western US forest wildfire activity: sensitivity to changes in the timing of spring*, Philosophical Transactions of the Royal Society B (2016);
- Jolly, et al., *Climate-induced variations in global wildfire danger from 1979 to 2013*, Nature Communications (2015);
- Goss, et al., *Climate change is increasing the risk of extreme autumn wildfire conditions across California*, Environmental Research Letters (2020).

Plaintiff's later posting of the Fire Video triggered Facebook's fact-checking procedure as the video became viral. An editor of Science Feedback watched the video and identified that it contained a claim equivalent to the one reviewed in the Fire Article. Science Feedback's editor flagged the post using the appropriate label from Facebook's rating system: "Missing context," which is defined within Facebook's rating system as, e.g., "Content that presents a conclusion not supported by the underlying facts," or "Claims stated as fact that are plausible but unproven." Burke Decl. Ex. 4. Facebook consequently placed a label on Plaintiff's Fire Video, stating, "Missing Context. Independent fact-checkers say this information could mislead people," with a link to the Climate Feedback previously-published Fire Article. Compl. ¶¶ 45–46.

**D.      The Alarmism Video Claim.**

On April 17, 2021, Plaintiff posted another video on his Facebook page entitled "Are we doomed?" which the Complaint refers to as the "Alarmism Video." Compl. ¶ 78, n.9. In his post, Plaintiff wrote, "In order to get you ready for other scary 'facts' you will hear on #EarthDay, 3 scientists address some climate myths." *See* Ex. 10 (screenshot of Alarmism

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

Video post).  In the Alarmism Video, Plaintiff says, "Climate alarmists never agree to debate . . . I invited Al Gore on my show often but he would never come."  *See* Ex. 9 at 2.

This video also triggered Facebook's fact-checking procedure.  As a result, on April 21, 2021, Climate Feedback published an article on its website entitled "Video promoted by John Stossel for Earth Day relies on incorrect and misleading claims about climate change" in which it analyzed the video (hereinafter, "Alarmism Article," together with the Fire Article, the "Articles").  Compl. ¶ 85, n.10; Burke Decl. Ex. 2.

In the Alarmism Article, seven scientists evaluated the credibility of the Alarmism Video and rated the scientific credibility as "very low" with a majority of reviewers tagging the article as "flawed reasoning," "inaccurate," and "misleading."  *Id.*  The Article states the Alarmism Video "comments on statements made about climate change by environmental activists and politicians that can be misleading.  However, speakers in the video rely on several inaccurate claims and use imprecise language that misleads viewers about the scientific understanding of climate change, according to scientists who reviewed the video."  *Id.*  Some of the examples of debunked claims include the following statements made by individuals featured in Plaintiff's video:

> "[T]he claim that sea levels have been rising for 20,000 years [and probably will continue], *made by David Legates*, a Professor and former assistant secretary of commerce for NOAA nominated by the Trump administration, is imprecise and misleading, as it implies sea levels have continued rising since then and current sea level rise is just a continuation of past natural fluctuations. But the causes of the global warming event that explains sea level rise at the end of the last ice age 20,000 years ago are different from those that explain sea level rise now. . . .
>
> In the video, *Patrick Michaels*, a former professor of environmental sciences at the University of Virginia, claims that "hurricanes and other storms" are not "getting worse" and that "there is no relationship between hurricane activity and the surface temperature of the planet". But what does science tell us about how global warming might affect hurricanes? Research shows that climate scientists don't necessarily expect an increase in the frequency of all hurricanes with global warming, but instead an increase in hurricane risk. Specifically, scientists expect that "sea level rise accompanying the warming will lead to higher storm inundation levels" and that the global proportion of hurricanes that reach very intense (category 4–5) levels will increase . . . . Scientists also expect increased precipitation rates in hurricanes."

*Id.* (emphasis added).

7

1       The Article also addresses other claims.  In the Alarmism Video, the claim is made that

2   carbon dioxide "helps feed the world."  *See* Ex. 9 at 3.  This claim is addressed in the Article by,

3   *inter alia*, Professor G. Philip Robertson at Michigan State University, who explains that any

4   historic positive effect of carbon dioxide on crop growth is generally considered to be "a

5   fraction" of other historic causes like genetics, nitrogen, and other inputs, and any positive effect

6   on crop growth "will almost certainly be offset by yield declines associated with the temperature

7   increases caused by elevated $CO_2$, which are well known."  *Id*. (quoting Professor Philip

8   Robertson).

9       The Article includes a summary and commentary from seven scientists with citations to

10  the scientific data they relied on in their assessment.  *Id.*  Examples of citations include:

- Lambeck, et al. *Sea level and global ice volumes from the Last Glacial Maximum to the Holocene*, PNAS (2014);
- Knutson, et al., *Tropical Cyclones and Climate Change Assessment: Part II: Projected Response to Anthropogenic Warming*, Bulletin of the American Meteorological Society (2020);
- Kossin, et al., *Global increase in major tropical cyclone exceedance probability over the past four decades*, PNAS (2020);
- Liu, et al., *Causes of large projected increases in hurricane precipitation rates with global warming*, npj Climate and Atmospheric Science (2019);
- Moore, et al., *New science of climate change impacts on agriculture implies higher social cost of carbon*, Nature (2017);
- Terrier, et al., *Nitrogen and phosphorus constrain the $CO_2$ fertilization of global plant biomass*, Nature Climate Change (2019);
- Shukla, et al., *Technical Summary, 2019 in* Climate Change and Land: an IPCC special report on climate change, desertification, land degradation, sustainable land management, food security, and greenhouse gas fluxes in terrestrial ecosystems, IPCC report (2019);
- Oppenheimer, et al., *Sea Level Rise and Implications for Low-Lying Islands, Coasts and Communities in* IPCC Special Report on the Ocean and Cryosphere in a Changing Climate (2019).

23      In the Complaint, Plaintiff himself relies on this same scientific data and facts used to

24  analyze his video.  Compl. ¶ 88 (stating Climate Feedback cited to data in the Article and

25  including a chart used by the scientists to evaluate the claims).

26      Evaluating the veracity of both Plaintiff's claims and the claims made by others in the

27  Alarmism Video, Science Feedback's editor flagged the Alarmism Video using the appropriate

28  label from Facebook's rating system, "Partly False," which is defined within Facebook's rating

8

1   system as: "Content [that] has some factual inaccuracies" or "a video that contains many key

2   claims, some true, some false." *See* Ex. 4.  Facebook subsequently published a label on

3   Plaintiff's video stating "Partly False Information. Checked by independent fact-checkers" with a

4   link to the Alarmism Article.  Compl. ¶ 83.

5   **E.      Plaintiff Does Not Demand A Correction, Despite Notice.**

6            Clearly aware of the labels and articles on Climate Feedback as soon as they were

7   published, *see, e.g.*, Compl. ¶ 55 ("On September 25, 2020, Mr. Stossel received a notification

8   from Facebook regarding the Fire Video . . .), Plaintiff nevertheless failed to send a timely

9   correction demand for either of the challenged Articles.  Instead, after Facebook affixed the label

10  to the Fire Video, Plaintiff contacted the Climate Feedback editor and the three scientists who

11  were involved in publishing the Fire Article, asking to interview them.  Compl. ¶¶ 59–64.

12  Plaintiff edited interviews with two of these scientists in a misleading manner and published

13  these heavily edited clips in a YouTube video on October 6, 2020.  Compl. ¶ 62, n.7.  Plaintiff

14  also sent an email to the Fire Article's editor, again seeking comment; Plaintiff did not speak to

15  the third scientist.  Compl. ¶¶  59–60.

16           In response to Plaintiff's October 6th video, on October 8, 2020, Climate Feedback

17  posted a response on its website.  Compl. ¶ 71 (citing *Responding to Stossel TV video on our*

18  *rating process*, Climate Feedback, https://climatefeedback.org/responding-to-stossel-tv-video-

19  on-our-rating-process/ (last visited Jan. 27, 2022)).  In its response, Climate Feedback noted that

20  Plaintiff's video "publicly misrepresents our actions—and seeks to present scientists who

21  contributed to our review as disagreeing with our actions."  *Id.*  Climate Feedback explained that

22  Plaintiff fundamentally misunderstood how the fact-checking process works and that "[i]t is not

23  necessary to create a separate claim review article for each post," but rather that Climate

24  Feedback had reviewed a "specific formulation of a claim" that was "frequently appearing

25  amidst record-setting wildfires on the US West Coast."  *Id.*  In other words, the Fire Article was

26  not written about Plaintiff's Fire Video specifically, but about the broader claim regarding the

27  forest fires' causation, which Plaintiff's Fire Video subsequently happened to contain.

28

9

In June 2021, Plaintiff posted a "response video" to the Alarmism Article that displayed out-of-context clips from an interview with a scientist who had volunteered with Climate Feedback.  Compl. ¶ 92, n.11.  (As explained above, Science Feedback's editors—not the volunteer scientists—are responsible for flagging content and applying appropriate labels.  *See* Section II.B, *supra*.)  Plaintiff posted a written response as well.  Compl. ¶ 97, n.12.  Plaintiff did not otherwise demand a correction from Science Feedback.  Instead, Plaintiff filed this lawsuit on September 22, 2021.  Dkt. 1.

**F.     The Identified Statements.**

The Complaint identifies the following statements as purportedly defamatory:

- the labeling of the Fire Video as "missing context" and "misleading", Compl. ¶ 112;

- the "implication" that Plaintiff made the claim "forest fires are caused by poor management[, n]ot by climate change," Compl. ¶ 116;

- the labeling of the Alarmism Video as "partly false," Compl. ¶ 113; and

- the statement that the Alarmism Video contained "factual inaccuracies" and was "partly false", Compl. ¶ 125.[11]

The only identified statements published on the Climate Feedback webpage are (1) the broad claim that forest fires are not caused by climate change but by poor management is "misleading" and (2) the Alarmism Article states that a majority of its reviewers tagged the Alarmism Video as "Flawed reasoning, Inaccurate, Misleading."  Neither of these statements is actionable, nor can the "Missing Context" and "Partly False" labels give rise to a claim for defamation, for the independent reasons below.

## III.    LEGAL STANDARD

The Court should strike Plaintiff's claims under California's anti-SLAPP statute.  Federal courts sitting in diversity jurisdiction must apply California's anti-SLAPP statute to state-law claims, and must follow "the California Legislature's direction that the anti-SLAPP statute be

---

[11] To be precise, the only mention of falsity in the Alarmism Article states: "A majority of reviewers tagged the article as: Flawed reasoning, Inaccurate, Misleading."

1    'construed broadly.'"  *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010).  *See*

2    *also Hilton v. Hallmark Cards*, 599 F.3d 894, 905 (9th Cir. 2010).

3          This statute facilitates the quick dismissal of meritless claims that target free speech and

4    uses a two-step process.  *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997).

5    "First, the court decides whether the defendant has made a threshold showing that the challenged

6    cause of action is one arising from protected activity," by showing the alleged conduct

7    "underlying the plaintiff's cause fits one of the categories spelled out" in California Civil Code

8    Section 425.16(e).  *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).  It "must then determine

9    whether the plaintiff has demonstrated a probability of prevailing."  *Id.*  In federal court, where

10   no discovery has occurred, this test requires the plaintiff to satisfy the pleading standards under

11   Rule 12(b)(6).  *Planned Parenthood Fed'n of Am., Inc. v. Cntr. For Med. Progress*, 890 F.3d

12   828, 834 (9th Cir. 2018).  If the plaintiff does not, the Court must strike the claim and award

13   attorneys' fees.  *Id.*; Cal. Civ. Code § 425.16(b)(1), (c).

14         Dismissal under Rule 12(b)(6) is proper when the complaint "fail[s] to state a claim upon

15   which relief can be granted"—in other words, if it lacks a cognizable legal theory or does not

16   include sufficient facts to support a plausible claim.  *See Taylor v. Yee*, 780 F.3d 928, 935 (9th

17   Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

18   the court to draw the reasonable inference that the defendant is liable for the misconduct

19   alleged."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Ashcroft*

20   *v. Iqbal*, 556 U.S. 662, 678 (2009)).  This is a "context-specific task that requires the reviewing

21   court to draw on its judicial experience and common sense" and look for "more than the mere

22   possibility of misconduct."  *Iqbal*, 556 U.S. at 679.

23                                **IV.    ARGUMENT**

24   **A.    The Anti-SLAPP Statute Applies to Plaintiff's Complaint.**

25         California's anti-SLAPP statute applies here.  The anti-SLAPP statute applies to

26   statements made "in a place open to the public or a public forum in connection with an issue of

27   public interest" and "any other conduct in furtherance of the exercise of . . . the constitutional

28   right of free speech in connection with a public issue or an issue of public interest."  Cal. Civ.

1   Code § 425.16(e)(3)–(e)(4).  The Complaint's defamation claim against Science Feedback arises

2   from Science Feedback's (and others') free speech made in a "public forum"—

3   climatefeedback.org's website and on Facebook.com—concerning an "issue of public interest,"

4   namely, climate change.

5       Courts interpret "public issue" and "public interest" broadly to include "any issue in

6   which the public is interested." *Nygard, Inc. v. Uusi-Kettula*, 159 Cal. App. 4th 1027, 1042

7   (2008).  "Commenting on a matter of public concern is a classic form of speech that lies at the

8   heart of the First Amendment." *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty*

9   *USA, Inc.*, 129 Cal. App. 4th 1228, 1246 (2005) (quoting *Annette F. v. Sharon S.*, 119 Cal. App.

10  4th 1146, 1162 (2004)).  As this court has already recognized, climate change and environmental

11  issues are at the heart of public debate and controversy, and as such, are issues of undisputed

12  public concern.  *See Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-CV-02824, 2019

13  WL 281370, at *18 (N.D. Cal. Jan. 22, 2019) (environmental sustainability is an important

14  public matter).

15      Public-facing websites, like Facebook's global platform and climatefeedback.org, are

16  public forums triggering protection under subsection (e)(3) of the anti-SLAPP statute.  *See*

17  *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009, n.3 (9th Cir. 2017) (posting photographs to a

18  website accessible to the public is a public forum for purposes of the anti-SLAPP statute);

19  *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1007–08 (2001) (a site where "members

20  of the public may read the reviews and information posted, and post on the site their own

21  opinions" is a public forum); *Nygard*, 159 Cal. App. 4th at 1039 ("Web sites accessible to the

22  public . . . are 'public forums' for purposes of the anti-SLAPP statute.") (quoting *Barrett v.*

23  *Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006)).

24  **B.     Plaintiff Cannot Show a Probability of Prevailing on His Claims.**

25      Plaintiff fails to state a claim for defamation.  As a result, he does not show a probability

26  of prevailing on his defamation claim against Science Feedback and his Complaint must be

27  dismissed.  Specifically, Plaintiff must demonstrate that his claims are "supported by a prima

28  facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff

is credited." *Taus v. Loftus*, 40 Cal. 4th 683, 713–14 (2007) (citations omitted).  For each of the independent reasons stated below, Plaintiff cannot meet his burden of pleading a probability of prevailing against Science Feedback.

### 1.     The Statements At Issue Are Not Actionable.

Plaintiff's Complaint fails to satisfy the most basic component of a libel claim: they are not materially false statements of fact.  Plaintiff's complaint identifies only two allegedly defamatory statements attributable to Climate Feedback: (1) that it is "misleading," as a general matter, to claim that forest fires are not caused by climate change but by poor forest management by the government; and (2) that a majority of Climate Feedback's scientist reviewers tagged the Alarmism Video as "Flawed reasoning, Inaccurate, Misleading."

The context of these statements—which must be considered in determining actionability—clearly demonstrate to the reasonable reader that Science Feedback's editor and volunteer scientists were issuing their opinions based on disclosed facts.  Moreover, to the extent the Science Feedback articles contain any facts, those are not materially false.  Plaintiff concedes as much in attempting to distance himself from the statements made by his interviewees.  Compl. ¶¶ 118-119 ("Stossel did not make the claim . . . his Fire Video expressly acknowledged that climate change was one cause of forest fires.").

### a.     The Statements Are Not Capable Of A Defamatory Meaning

To be actionable, a statement must be false and must also "disgrace and degrade" a person, causing him "to be shunned and avoided."  *Gang v. Hughes*, 111 F. Supp. 27, 29 (C.D. Cal. 1953); *see also* Cal. Civ. Code § 45 (under California libel law, in order to be defamatory, a statement must "expose a person to hatred, contempt, ridicule, or obloquy," "cause him to be shunned or avoided," or "injure him in his occupation").  If a statement is not "capable of a defamatory meaning," the libel claim is subject to early dismissal.  *Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir. 2005).

Merely stating a video posted to social media is "misleading" or "missing context" is not reasonably capable of a defamatory meaning.  Plaintiff cannot show that the "missing context" or "partly false" labels—as opposed to the underlying videos themselves—have caused any damage

---

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

1  to his reputation, let alone the "hatred, contempt, ridicule, or obloquy" he is required to show

2  under California law.  Cal. Civ. Code § 45.  Evidence-based evaluations that his videos are

3  "missing context" or "partly false" clearly cannot support a claim for defamation, particularly in

4  light of Plaintiff's pre-existing notoriety for posting controversial subject matter.  *See, e.g.*, Ex. 3

5  (Plaintiff's Facebook page posts, including posts on trans women in sports, race-based

6  admissions, among others).

7  **b.    Criticism Based On Disclosed Facts Is Nonactionable**

8  Plaintiff's claims fail because all the statements he identifies are scientific viewpoints

9  based on disclosed data.  "[W]hen an author outlines the facts available to him, thus making it

10  clear that the challenged statements represent his own interpretation of those facts and leaving

11  the reader free to draw his own conclusions, those statements are generally protected by the First

12  Amendment."  *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995); *see also Wynn v.

13  Chanos*, 75 F. Supp. 3d 1228, 1237-38 (N.D. Cal. 2014) (suggestion that plaintiff acted

14  unlawfully protected because defendant disclosed the basis for his opinion); *ZL Techs., Inc. v.

15  Gartner, Inc.*, 709 F. Supp. 2d 789, 795 (N.D. Cal. 2010) ("An expression of pure opinion is

16  protected by the First Amendment and may not form the basis for a civil lawsuit."), *aff'd sub

17  nom. ZL Techs., Inc. v. Gartner Grp., Inc.*, 433 F. App'x 547 (9th Cir. 2011).  These

18  interpretations of disclosed data are protected speech.

19  In evaluating whether a statement is protected criticism or "opinion,"[12] courts consider

20  the "'totality of the circumstances' in which the statement was made," including "the general

21  tenor of the entire work, . . . the extent of figurative or hyperbolic language used," and whether

22  the statement is "susceptible of being proved true or false."  *Herring Networks, Inc. v. Maddow*,

23  445 F. Supp. 3d 1042, 1049 (S.D. Cal. 2020), *aff'd*, 8 F.4th 1148 (9th Cir. 2021).  *See also

24  Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 24 (1990).  Context is key.  *Koch v. Goldway*, 817

25  F.2d 507, 509 (9th Cir. 1987) ("Context can be determinative that a statement is opinion and not

26  _____

27  [12] "Opinion" as used herein refers to the legal term of art for statements that, while technically factual, convey personal viewpoints about disclosed facts.  Science Feedback emphasizes that the statements within its fact-checking Articles are not "opinion" in the colloquial sense; instead, the

28  Articles contain data-informed viewpoints reflecting the broad scientific understanding of the topic.

1   fact, for the context of a statement may control whether words were understood in a defamatory

2   sense."); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123 (C.D. Cal. 1998)

3   (statements were protected opinion in light of context, where they appeared in a newspaper

4   opinion column that "create[d] a setting denoting opinion as opposed to fact"), *aff'd*, 210 F.3d

5   1036 (9th Cir. 2000).

6          For instance, in *Partington*, 56 F.3d at 1154—arising from a book by Vincent Bugliosi

7   about a murder case—the Ninth Circuit considered claims that Bugliosi painted his opposing

8   counsel in the trial as incompetent, thereby defaming him. The court disagreed, and held the

9   statements, *though technically factual*, were non-actionable opinion.  The court noted that "[t]he

10  purpose of the book is to offer the personal viewpoint of the author concerning the trials," and,

11  "[b]ecause the book outlines Bugliosi's own version of what took place, a reader would expect

12  him to set forth his personal theories about the facts of the trials and the conduct of those

13  involved in them." *Partington*, 56 F.3d at 1153.

14         Similarly, in *Moldea v. New York Times Co.*, 22 F.3d 310 (D.C. Cir. 1994) (*Moldea II*),

15  the D.C. Circuit held that criticisms of a journalist's "sloppy journalism" and unprofessional

16  techniques were not actionable because "[r]easonable minds can and do differ as to how to

17  interpret a literary work." *Id.* at 316.  *Partington* cited this decision and stated:

18         Authors should have "breathing space" in order to criticize and interpret the
19         actions and decisions of those involved in a public controversy.  If they are not
        granted leeway in interpreting ambiguous events and actions, the public dialogue
20        that is so important to the survival of our democracy will be stifled. We must not
        force writers to confine themselves to dry, factual recitations or to abstract
21        expressions of opinion wholly divorced from real events.

22  *Id.* at 1159.

23         It is exactly this "breathing space" that Plaintiff seeks to eliminate here, but context

24  makes clear that the Articles—and the Facebook labels—are protected speech.  The labels

25  "misleading," "missing context," or "partly false" reflect the kind of "feeling[], belief[], and

26  concern[]" that courts repeatedly have found nonactionable.  *See Cnty. of Tuolumne v. Sonora*

27  *Cmty. Hosp.*, 1 F. App'x 653, 654 (9th Cir. 2001) ("People's feelings, beliefs, and concerns

28  about [doctor's] competence are non-actionable opinion.").  Whether content is "misleading"

1   involves an evaluation of the likely effect the content will have on the average Facebook user—

2   namely, whether the average user will be misled into believing false information.

3          Two weeks *before* Plaintiff's Fire Video was published, Science Feedback's volunteer

4   scientists, based on truthful and disclosed data, determined that the claim "Forest fires are caused

5   by poor management. Not by climate change" is "Misleading." Compl. ¶ 47.  It was also their

6   view that the Alarmism Video was "misleading" because "speakers in the video rely on several

7   inaccurate claims and use imprecise language that misleads viewers about the scientific

8   understanding of climate change." Compl. ¶ 87.  Such observations are not false assertions of

9   fact.  *See Partington*, 56 F.3d at 1153 ("Bugliosi's observation about Partington's trial strategies,

10  and the implications that Partington contends arise from them, represent statements of personal

11  viewpoint, not assertion of objective fact."); *see also Owens v. Lead Stories, LLC*, No. CV S20C-

12  10-016 CAK, 2021 WL 3076686, at *14 (Del. Super. Ct. July 20, 2021) (finding plaintiff did not

13  adequately allege Facebook fact-checker's statement that plaintiff's post was "false" was capable

14  of a defamatory meaning).  All statements in the Articles are part and parcel of the scientists'

15  personal reviews of the claims made in Plaintiff's videos.

16         Moreover, Climate Feedback discloses the facts it relies on and provides copious

17  citations to scientific data and reports.  Where, as here, "the factual referent is disclosed, 'readers

18  will understand they are getting the author's interpretation of the facts presented," and the

19  statements are nonactionable.  *Cochran*, 58 F. Supp. 2d at 1123 (citation omitted); *see also*

20  *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) ("A statement of

21  opinion based on fully disclosed facts can be punished only if the stated facts are themselves

22  false and demeaning. . . . [This is because readers are] unlikely to construe the statement as

23  insinuating the existence of additional, undisclosed facts."); Restatement (Second) of Torts § 566

24  (Am. L. Inst. Oct. 2021 update) (a statement in the form of an opinion is only actionable if "it

25  implies the allegation of undisclosed defamatory facts as the basis for the opinion").  Readers of

26  Facebook's labels and Climate Feedback's Articles are free to form their own thoughts and

27  opinions based on the undisputed scientific facts disclosed by the Articles.  *See, infra,* Sections

28  II.C-D (listing facts and articles cited by the scientists).

---

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

### c.      The Statements at Issue are Substantially True.

Plaintiff also does not adequately allege material falsity, another necessary element of a defamation claim. *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 600(1976).  It is well-established that "so long as 'the substance, the gist, the sting, of the libelous charge can be justified,'" there can be no claim for defamation. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991) (citing *Heuer v. Kee*, 15 Cal. App. 2d 710, 714 (1936)).

Plaintiff does not argue that any of the statements addressed by the Articles were not made in the videos or were misquoted.  He does not claim that the Articles lied about the scientists' conclusions.  Nor does he argue that any of the underlying scientific facts cited in the Articles are false (nor can he, for they are taken directly from verified scientific data).[13]  To the contrary, he alleges that the "conclusions" of Climate Feedback's Fire Article and his own Fire Video are "substantively identical," Compl. ¶ 51, and "vary only by degree," Compl. ¶ 52.  He also alleges that the Alarmism Article evaluates his "reasoning" and "overall scientific credibility," Compl. ¶ 87—clearly protected opinion (*see supra* Section IV.B.1.a)—but does not identify a single *statement of fact* within the Articles that is materially false.

In an apparent effort to overcome this fatal blow to his suit, Plaintiff misconstrues what Climate Feedback's Articles actually say.  To take one example, Plaintiff alleges that Climate Feedback attributed to him the undisputedly false claim that "climate change doesn't cause forest fires." Compl. ¶¶ 48-53.  But that misconstrues the Fire Article, which states: "[t]he claim that the forest fires currently burning in the western United States are caused by poor forest management and not climate change appeared in multiple Facebook posts published in September 2020," and "[w]hile forest management practices, specifically fire suppression, have

---

[13] *See, e.g.*, Alarmism Article, Annotations and References Sections, rebuking the Alarmism Video's claim that water has been rising consistently for the last 20 years by providing citations and graphs from the "Sea Level Rise and Implications for Low-Lying Islands, Coasts and Communities," from the Special Report on the Ocean and Cryosphere in a Changing Climate by The Intergovernmental Panel on Climate Change; Fire Article, stating "A 2016 study showed that climate change is responsible for over half the increase in fuel aridity (drier fuel load), and has double the cumulative forest area burned" and citing a research article entitled "Impact of anthropogenic climate change on wildfire across western US forests" published in the Proceedings of the National Academy of Sciences of the United States of America ("PNAS"); Sections II.C-D.

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

1   increased the fuel load, scientific evidence also links climate change to hotter and drier

2   conditions."  Burke Decl. Ex. 1.[14]  Nowhere does the Article mention Plaintiff, let alone attribute

3   the false claim to him.[15]  Critically, Plaintiff does not and cannot dispute that these statements in

4   the Article are true and accurate.

5           **2.      The Identified Statements Are Not "Of and Concerning" Plaintiff.**

6           Under California law, an actionable statement for defamation must be "of and

7   concerning" plaintiff.  *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1042 (1986); *see also John Doe*

8   *2 v. Super. Ct.*, 1 Cal. App. 5th 1300, 1312 (2016) ("The [allegedly] defamatory statement must

9   specifically refer to, or be 'of and concerning,' the plaintiff.").  Plaintiff's Complaint identifies

10  two allegedly defamatory statements attributable to Science Feedback: (1) the false attribution of

11  the claim that "forest fires are caused by poor management.  Not to climate change" to Plaintiff

12  in the Fire Article and (2) Climate Feedback's Alarmism Article states that a majority of its

13  reviewers tagged the Alarmism Video as "Flawed reasoning, Inaccurate, Misleading."  *See*

14  *supra,* Section II.F.; Compl. ¶¶ 123-25.  Neither of these allegedly defamatory statements,

15  however, specifically concern Plaintiff.  In addition, labeling the videos as "misleading" or

16  "partly false" speaks to the veracity of the claims featured within the videos, and not necessarily

17  claims made by Plaintiff himself.

18          As discussed above, the Fire Article was published two weeks *before* Plaintiff's Fire

19  Video and nowhere in the Article does it mention Plaintiff's name or his video.  *See* Section

20  II.C., *supra*.  The Fire Article addressed the general viral claim on the internet that climate

21  change was not a cause of wildfires and analyzed the potential for this claim to be misleading.

22  Burke Decl. Ex. 1.  The Fire Article does not attribute these claims to Plaintiff nor make any

---

[14] As pointed out in Meta's Motion to Dismiss, even if the Fire Article **had** attributed this claim to Plaintiff —which it did not—the gist of the Fire Article still would have been substantially true.  *See* Dkt. 27 at 17 ("Stossel's video *did* include a claim by Shellenberger that California's recent wildfires were caused by forest management. Jennings Decl. Ex. 5, at 3:10-13; 4:3-4 ('Stossel: "If not climate change, what is to blame? Foolish policy." … Shellenberger: "You could have had this amount of warming and not had these fires."').  Burke Decl. Ex. 8.

[15] In any event, even if the Article attributed this claim to Plaintiff—which it does not—the *gist* of the Article would be true.  In the Fire Video, Plaintiff clearly conveys that his opinion is that the effect of climate change on forest fires is overstated, and that "foolish policies" are to blame instead.  *See, e.g*., Ex. 8 at 3 (Plaintiff narrating: "Bad policies were the biggest cause of this year's fires, not the slightly warmer climate.").

statements about Plaintiff.  In any event, the majority of the claims regarding wildfires and climate change in the Fire Video are made by Plaintiff's interviewee Mr. Shellenberger, not Plaintiff.  *See Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 683 (9th Cir. 1990) (holding that the credibility of a journalist's source is a separate inquiry from the credibility of the journalist himself).  Any criticism of the Fire Video would be understood by the reasonable viewer to be a criticism of Mr. Shellenberger's claims, and not necessarily Plaintiff's overall credibility.

In the Alarmism Article, the headline of the Article makes clear that Plaintiff's video "*relies on* incorrect and misleading claims about climate change" (emphasis added), once again emphasizing that inaccuracies in the video stem primarily from sources in Plaintiff's video.  *See* Burke Decl. Ex. 2.  The Alarmism Article goes on to say that the video contains "statements made about climate change *by environmental activists and politicians* that can be misleading.  However, *speakers in the video* rely on several inaccurate claims and use imprecise language that misleads viewers about the scientific understanding of climate change."  *Id.* (emphasis added).  Once again, these statements focus on claims made by individuals other than Plaintiff.

The Alarmism Article also identifies Plaintiff's sources and properly attributes false claims when rebutting or critiquing those claims.  For instance, the Alarmism Article identifies a statement made by Professor David Legates that sea levels have been rising for 20,000 years and probably will continue, and responds that this is "imprecise and misleading, as it implies sea levels have continued rising since then and current sea level rise is just a continuation of past natural fluctuations."  *See id.*  Similarly, the Alarmism Article mentions statements made by Patrick Michaels, a former professor of environmental sciences at the University of Virginia, that "hurricanes and other storms" are not "getting worse" and that "there is no relationship between hurricane activity and the surface temperature of the planet."  *See id.*  The Alarmism Article labels these statements as misleading because Michaels — not Plaintiff — is "cherry-picking a single measure of hurricane activity and ignoring the broader corpus of scientific research."  *Id.*  These statements—and many others in the Articles—are not "of and concerning" Plaintiff.  *See Blatty*, 42 Cal. 3d at 1044 ("To allow a plaintiff who is not identified, either expressly or by clear implication, to institute such an action poses an unjustifiable threat to society.").

19

### 3. Plaintiff Does Not Allege Libel Per Se, or Plead Special Damages.

Although he *styles* his claim as one for "defamation per se," it is not this type of libel claim. Because Plaintiff does not adequately plead the necessary facts for defamation per se, he is limited under California law to special damages. Cal. Civ. Code § 45a, 48a. Special damages are "damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation … and no other." Cal. Civ. Code § 48(d)(2). Plaintiff has not pleaded the required special damages here and he cannot.

Under California law, to allege defamation per se, a statement must contain a defamatory meaning that "appears from the language itself without the necessity of explanation or the pleading of extrinsic facts." *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 888 (N.D. Cal. 2015) (citing Cal. Civ. Code § 45a). *Song fi* is instructive. There, YouTube removed a video and posted a notice stating that the video "has been removed because its content violated YouTube's Terms of Service." *Id.* at 885. The court found that these allegations did not state a claim for libel per se under California law, and at most, stated a claim for libel *per quod*. *Id.* at 888. This was because YouTube's Terms of Service was not a matter of common knowledge and the "average viewer" would not associate the notice with reference to a particular violation of the Terms of Service, namely, pornography. *Id.* at 888–89. A viewer would have to have "some knowledge of specific facts and/or circumstances, not discernable from the face of the publication," making it impossible to be libel per se. *Id.* at 888 (citing *Palm Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1, 5 (1999)).

Similarly, here, Plaintiff's allegations require several jumps and leaps to attribute certain statements of his sources to himself and to therefore infer that Climate Feedback is implying he lied in his video. This is not defamation per se. Indeed, Plaintiff ultimately concedes as much in alleging that Defendants "stated *by implication*" the statements at issue. Compl. ¶ 116 (emphasis added); *see also* Compl. ¶ 122 (referring to "false implication" of statement at issue).[16] As

---

[16] Plaintiff refers to defamation-by-implication but does not adequately allege this type of libel, either. In order to allege defamation-by-implication, plaintiff must allege that the published statement must "reasonably be understood as implying the alleged defamatory content." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 889 (9th Cir. 2016) (quoting *Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010)). It is not a reasonable conclusion that sourced

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

1   Plaintiff has not alleged a claim for defamation per se, plaintiff is limited to special damages.

2   Cal. Civ. Code § 45a, 48a.

3           Special damages must be alleged with particularity and proof must be

4   provided.  *Anschutz Ent. Grp., Inc. v. Snepp*, 171 Cal. App. 4th 598, 643 (2009).  Here, Plaintiff

5   claims he has lost advertising revenue from approximately $10,000 a month to approximately

6   $5,500 a month.  Compl. ¶ 105.  Plaintiff, however, does not allege any facts, as he must, tying

7   this alleged loss to the challenged statements published by Science Feedback.  Special damages

8   must be specific to the actual challenged language.  *See Anderson v. Hearst Publ'g Co.*, 120 F.

9   Supp. 850, 852 (S.D. Cal. 1954) ("When special damage is claimed, the nature of the special loss

10  or injury must be particularly set forth" and include allegations which "set forth precisely in what

11  way the special damage resulted.") (quoting *Pollard v. Lyon*, 91 U.S. 225, 237 (1875)); *Downing*

12  *v. Abercrombie & Fitch*, 265 F.3d 994, 1010 (9th Cir. 2001) (a plaintiff "must allege and prove

13  that they suffered special damages as *a proximate result* of the" allegedly libelous statements

14  (emphasis added)); *GOLO, LLC v. Higher Health Network*, LLC, No. 3:18-cv-2434, 2019 WL

15  446251, at *11 (S.D. Cal. Feb. 5, 2019) (under Fed. R. Civ. P. 9(g), adequate pleading of special

16  damages in libel cases requires facts showing that a business loss "[was] the natural and probable

17  result of" the statement at issue (citation omitted)).  Plaintiff's generalized allegations do not

18  show how any statements in either Article are the proximate cause of a loss to him.

19          **4.      The Complaint Should Be Stricken Because Plaintiff's Claim Is Barred By**

20                  **The Correction Statute.**

21          California's correction statute imposes a threshold burden on libel plaintiffs: they must

22  serve a request for retraction within twenty days, or else they are limited to special damages.

23  Cal. Civ. Code § 45a, 48a.  Indisputably, Plaintiff failed this threshold burden, which provides a

24  second, independent basis for limiting Plaintiff to special damages.

25          It is clear the correction statute applies here.  In 2015, the Legislature amended Section

26  48a in response to cases that had narrowly applied the law only to daily newspapers and

27  _____

28  quotes provided in a published article or piece of news would be attributed to the journalist who
    wrote the article.  None of the identified statements imply anything about Plaintiff, his
    profession, or his reporting abilities.

_____

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

traditional broadcast media, expanding it to cover any "publication, either in print or electronic form, that contains news on matters of public concern and that publishes at least once a week." Civ. Code § 48a(d)(5); Burke Decl. Ex 7.  The legislative history shows that the purpose was to broaden Section 48a so it does not hinge on the identity of the defendant, but whether it is "engaged in the immediate dissemination of news."  Burke Decl. Ex. 7.

The Legislature intended to bring Section 48a in line with case law interpreting the journalist's Shield Law, specifically *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423 (2006). *See* Burke Decl. Ex. 7, Assembly Judiciary Comm. Analysis at 4.  *O'Grady* rejected the argument that the Shield Law only protects "legitimate journalism" in "traditional" publications, and applied it to a technology blog based on its *conduct*, i.e., gathering and disseminating "a particular kind of information to an interested readership."  139 Cal. App. 4th at 1457–58; *accord Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir. 1993) ("[w]hat makes journalism . . . is not its format but its content").

As a website, Climate Feedback functions similarly to a technology blog as in *O'Grady* in that it gathers "a particular kind of information," namely popular claims on the internet purporting to be legitimate claims about climate change, and disseminates it through articles regularly posted to its website. And, for the purposes of the statute, a website is considered a periodical even if it is not updated at "regular intervals," but rather, when "individual articles are added as and when they become ready for publication."  *O'Grady*, 139 Cal. App. 4th at 1465-66.

Because the statute applies here, Plaintiff was required to serve a timely "written notice specifying the statements claimed to be libelous and demanding that the same be corrected." *Freedom Newsapers, Inc.. v. Super. Ct.*, 4 Cal. 4th 652, 659-60 (1992).  However, Plaintiff did not send a correction demand to Science Feedback about the Articles within 20 days after knowledge of the publications.

Where, as here, Plaintiff failed to comply with the correction statute, and does not adequately plead and prove special damages (*see supra* Section IV.B.3), as a matter of law, the claims must be stricken under Section 425.16.  *See Snepp*, 171 Cal. App. 4th at 643 (striking

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385

claims under the SLAPP statute where plaintiff sent inadequate retraction demand and "presented no proof of special damages").

### 5.  Plaintiff Fails to Allege Actual Malice.

Plaintiff also fails to state a claim for defamation for the independent reason that the Complaint fails to plead facts that would satisfy the "clear and convincing" standard applicable to any libel action brought by a public figure.  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964); *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 247 (1999); *Reader's Dig. Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 256 (1984) ("If the person defamed is a public figure, he cannot recover unless he proves, by clear and convincing evidence, that the libelous statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (citation omitted) (quoting *Sullivan*, 376 U.S. at 279–80); *Kieu Hoang v. Phong Minh Tran*, 60 Cal. App. 5th 513, 537 (2021) (finding insufficient evidence of actual malice where reporter had no reason to believe source was untrustworthy and where evidence presented by alleged victim of defamation did not show "obvious reasons to doubt the veracity of [the source] or the accuracy of [the] reports." (quoting *Reader's Digest*, 37 Cal. 3d at 257)); *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 117 (2007) (university football coach, a public figure defamation plaintiff, could not show a likelihood of success on libel claim where he failed to show actual malice by clear and convincing evidence).

Plaintiff concedes he is a public figure with ready access to the media.  Compl. ¶ 23 ("Plaintiff John Stossel is a well-respected, award-winning career journalist and reporter. . . . Mr. Stossel has received nineteen Emmy Awards, five Awards from the National Press Club . . . Currently, he publishes short weekly news videos on social media, primarily on Facebook, where he has over one million followers.").  Thus, he carries the heavy burden of satisfying the "clear and convincing" actual malice standard, which, as a matter of law, he cannot do.  Plaintiff's only allegations with regard to malice are that Science Feedback "knew, or should have known, that Plaintiff's reporting contained no false facts—only scientific opinion with which Defendants disagreed" and that Defendants published their statements about the Fire Video before even reviewing it.  Compl. ¶¶ 122, 130.  Plaintiff concedes that this is, at most, a

1   disagreement about "a complex topic of scientific debate."  Compl. ¶ 52.  "[T]he academy, and

2   not the courthouse, is the appropriate place to resolve scientific disagreements of this kind."

3   *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1021 (N.D. Cal. 2017).

4   Even taking Plaintiff's allegations as true, his claim fails because "disagree[ing]" on "scientific

5   opinion" cannot establish actual malice.  Compl. ¶¶ 122, 130; *see Underwager v. Salter*, 22 F.3d

6   730, 736 (7th Cir. 1994) (cited by *Resolute Forest Prod., Inc.*, 302 F. Supp. 3d at 1021).

7          Climate Feedback's meticulous and rigorous process in recommending Facebook's labels

8   was anything *but* reckless.  Climate Feedback went through great lengths to painstakingly walk

9   through its review process in its response article.  Burke Decl. Ex 5.  That article described that

10  once the Fire Video was flagged by the fact-checking process, Climate Feedback "relied on

11  comments supplied by three scientists" in determining the Fire Video was "Missing Context"

12  because "viewers did not receive an accurate explanation of the scientific research in the role of

13  climate change in US wildfires."  Burke Decl. Ex 5.  In other words, Climate Feedback

14  confirmed that the Fire Video contained the very claims that were rigorously analyzed in the

15  earlier-written Fire Article.  Similarly, the Alarmism Video was labeled "partly false," defined as

16  "content that has some factual inaccuracies" or "a video that contains many key claims, some

17  true, some false," only after seven scientists analyzed the video.  Burke Decl. Ex. 2.

18         The absence of actual malice is further demonstrated by the Articles themselves, which

19  cited multiple well-respected scientific sources for their conclusions.  *Reader's Digest*, 37 Cal.

20  3d at 259 ("A publisher does not have to investigate personally, but may rely on the investigation

21  and conclusions of reputable sources.").  The Alarmism Article cites to the Bulletin of the

22  American Meteorological Society, PNAS articles, the IPCC reports, and others; the Fire Article

23  cites to PNAS, IPCC reports, National Academies Press articles, Scientific Advances articles,

24  and others.  *See supra* Sections II.C-D.

25         For these reasons, Plaintiff fails to adequately plead Science Feedback acted with "actual

26  malice" when it published the two challenged statements at issue.  *McGarry*, 154 Cal. App. 4th

27  at 114 (actual malice standard requires showing by plaintiff of "evidence of actual knowledge of

28  the falsity or reckless disregard for its falsity must be of such character as to command the

                                              24

unhesitating assent of every reasonable mind" (citation and question marks omitted)); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) ("[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."). Plaintiff cannot remotely satisfy this constitutional requirement.

## V.    CONCLUSION

For these reasons, Science Feedback respectfully asks the Court to dismiss Plaintiff's lawsuit with prejudice and award Science Feedback its attorneys' fees and costs under California's anti-SLAPP statute.

DATED: January 31, 2022

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
SELINA MACLAREN
ABIGAIL ZEITLIN

By:    */s/ Thomas R. Burke*
Thomas R. Burke
Attorneys for Defendant
SCIENCE FEEDBACK

MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385