SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000

*Attorneys for Defendant*
META PLATFORMS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOHN STOSSEL, an individual,<br><br>                     Plaintiff,<br><br>          v.<br><br>META PLATFORMS, INC., a Delaware corporation; SCIENCE FEEDBACK, a French non-profit organization; and CLIMATE FEEDBACK, a French non-profit organization,<br><br>                     Defendants. | CASE NO.: 5:21-cv-07385-VKD<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF ITS (1) MOTION TO DISMISS COMPLAINT AND (2) SPECIAL MOTION TO STRIKE COMPLAINT UNDER CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Virginia K. DeMarchi<br>Courtroom 2 – 5th floor<br>Date: April 12, 2022<br>Time: 10:00 AM |

1

## TABLE OF CONTENTS

2   TABLE OF CONTENTS..................................................................................................i

3   TABLE OF AUTHORITIES...........................................................................................ii

4   I.    THE COMMUNICATIONS DECENCY ACT BARS STOSSEL'S CLAIM..................2

5         A.    Meta Is Not An "Information Content Provider" Of The Fact-Checks..................3

6         B.    Stossel Cannot Circumvent Section 230 Immunity Through Agency Theory.......5

7   II.   STOSSEL'S DEFAMATION CLAIM FAILS...............................................................7

8         A.    Stossel Has Not Pled Actual Malice......................................................................7

9         B.    Stossel Has Not Identified A Defamatory Statement............................................9

10        C.    The Fact Checks Are Constitutionally Protected.................................................10

11  III.  THE COMPLAINT SHOULD BE STRUCK .............................................................12

12        A.    Stossel's Defamation Claim Falls Within The Anti-SLAPP Statute..................12

13        B.    Stossel Has Not Demonstrated Any Chance of Success on the Merits...............14

14  IV.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE..........................14

15  CONCLUSION...........................................................................................................15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003)................................................................7, 14

*Black v. Google Inc.*,
  2010 WL 3222147 (N.D. Cal. Aug. 13, 2010), *aff'd*, 457 Fed. App'x 622
  (9th Cir. 2011) ......................................................................................4

*Clifford v. Trump*,
  339 F. Supp. 3d 915 (C.D. Cal. 2018), *aff'd*, 818 F. App'x 746 (9th Cir.
  2020), *cert. denied*, 141 S. Ct. 1374 (2021) .................................................15

*Costabile v. Natus Med. Inc.*,
  293 F. Supp. 3d 994 (N.D. Cal. 2018)........................................................5

*Cross v. Facebook, Inc.*,
  14 Cal. App. 5th 190 (2017) ..............................................................13, 14

*Demetriades v. Yelp, Inc.*,
  228 Cal. App. 4th 294 (2014)............................................................13, 14

*Dyroff v. Ultimate Software Group, Inc.*,
  934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020)...........................4, 5

*Eastwood v. National Enquirer*,
  123 F.3d 1249 (9th Cir. 1997).............................................................9

*Fair Housing Counsel of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008)......................................................3, 5, 6, 15

*Fields v. Twitter*,
  217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) ...................3

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)......................................................................11

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) ....................................................4, 5

*Gomez v. Campbell-Ewald Co.*,
  768 F.3d 871 (9th Cir. 2014)..............................................................6

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021) ...............................................................3

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
  742 F.3d 414 (9th Cir. 2014)..............................................................12

*Hayes v. Facebook*,
    2019 WL 5088805 (N.D. Cal. Aug. 15, 2019) ............................................................ 10

*Igbonwa v. Facebook, Inc.*,
    2018 WL 4907632 (N.D. Cal. Oct. 8, 2018), *aff'd*, 786 Fed. App'x 104 (9th
    Cir. 2019), *cert. denied*, 141 S. Ct. 913 (2020).................................................... 15

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016).............................................................*passim*

*Kreiser v. Asset Management Group, Inc.*,
    2021 WL 3579414 (C.D. Cal. Apr. 23, 2021) ............................................. 6

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) ....................................................... 12

*MacKinnon v. Logitech Inc.*,
    2016 WL 2897661 (N.D. Cal. My 18, 2016)................................................ 8

*Masson v. New Yorker Magazine, Inc.*,
    960 F.2d 896 (9th Cir. 1992)...............................................................8, 9

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) ...................................................................... 8

*Mavrix Photographs v. Livejournal, Inc.*,
    873 F.3d 1045 (9th Cir. 2017)............................................................6, 7

*Meeks v. Buffalo Wild Wings, Inc.*,
    2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)........................................... 6

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)......................................................................... 10

*Mori Seiki USA, Inc. v. M.V. Alligator Triumph*,
    990 F.2d 444 (9th Cir. 1993).............................................................. 7

*Muddy Waters, LLC v. Superior Court*,
    62 Cal. App. 5th 905 (2021) ............................................................ 13

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ....................................................................7, 8

*New.Net, Inc. v. Lavasoft*,
    356 F. Supp. 2d 1090 (C.D. Cal. 2004).................................................. 13

*O'Handley v. Padilla*,
    2022 WL 93625 (N.D. Cal. Jan. 10, 2022), *appeal docketed sub nom.*
    *O'Handley v. Bonta*, No. 22-15071 (9th Cir. Jan. 18, 2022)...................... 12

*Obado v. Magedson,*
    612 F. App'x 90 (3d Cir. May 11, 2015) ..................................................... 15

*Pascal v. Agentra, LLC,*
    2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ............................................ 6

*Polygram Records, Inc. v. Superior Court,*
    170 Cal. App. 3d 543 (1985) ..................................................................... 10

*Price v. Operating Engineers Local Union No. 3,*
    195 Cal. App. 4th 962 (2011) ..................................................................... 9

*Reader's Digest Association v. Superior Court,*
    690 P.2d 610 (Cal. 1984)............................................................................ 8

*Reddy v. Litton Indus., Inc.,*
    912 F.2d 291 (9th Cir. 1990)..................................................................... 15

*Resolute Forest Products, Inc. v. Greenpeace International,*
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ..............................................8, 14

*Sikhs for Justice v. Facebook,*
    144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 Fed. App'x 526 (9th Cir.
    2017)....................................................................................................... 14

*Simpson Strong-Tie Co., Inc. v. Gore,*
    230 P.3d 1117 (Cal. 2010) ........................................................................ 13

*Standing Committee on Discipline of U.S. District Court for Central District of
    California v. Yagman,*
    55 F.3d 1430 (9th Cir. 1995)..............................................................10, 11

*Stewart v. Rolling Stone LLC,*
    181 Cal. App. 4th 664 (2010)................................................................... 14

*Williby v. Hearst Corp.,*
    2017 WL 1210036 (N.D. Cal. Mar. 31, 2017)............................................ 7

**STATUTES, RULES, REGULATIONS**

47 U.S.C. § 230 ...............................................................................................*passim*

Cal. Civ. Code § 45 ................................................................................................ 10

Cal. Code Civ. Proc. § 425.17 ...........................................................................12, 13

**OTHER AUTHORITIES**

1 Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* (5th
    ed. 2017)..................................................................................................... 8

Through this litigation, Stossel seeks to transform Meta's editorial decision to host two fact-checks authored and posted by third-party fact checker Science Feedback into liability for the content of those fact-checks. In the first, Science Feedback concluded that a video that Stossel calls the "Fire Video" was "missing context" because it contained the claim that climate change did not cause forest fires. In the second, Science Feedback concluded that the "Alarmism Video" was "partly false" because it contained debunked information about climate change.

Stossel's Opposition identifies no facts or legal principles that would permit him to hold Meta liable for statements authored by someone else. There is no dispute that Science Feedback alone created the challenged fact-checks and selected ratings to apply to Stossel's videos. And Stossel nowhere claims that Meta required Science Feedback to apply a particular rating to Stossel's posts, or otherwise instructed Science Feedback to include any particular information in its fact-check articles. Stossel instead vaguely gestures that Meta "worked with" fact-checkers or "commissioned" their work—but none of those unsupported assertions amounts to an allegation that Meta materially contributed to the allegedly defamatory nature of the fact-checks. His claim therefore runs headlong into Section 230 of the Communications Decency Act, which prohibits imposing liability on an online service provider like Meta for publishing information created by a third party. Stossel's alternative attempt to end-run Section 230 by importing state-law agency principles into the federal statute is unsupported by precedent. Nor has he pleaded the facts necessary to plausibly allege that Science Feedback acted as Meta's agent.

Apart from Section 230, Stossel also has not pleaded a viable defamation claim against Meta. For one, defamation law requires him to show actual malice as to each defendant, yet he has made no attempt to show that anyone at Meta possessed the necessary state of mind—either in the Complaint or in his Opposition. And, the Complaint does not show that any of the challenged statements were either false or defamatory. Each is a conclusion based on disclosed facts, the likes of which are subject to full First Amendment protection. And each addressed Stossel's videos, not Stossel himself.

For these reasons, the Court should not entertain any request by Stossel to amend the complaint. Section 230 requires dismissal with prejudice as a matter of law. There is no

amendment that could allow Meta to be held liable for Science Feedback's fact-checks.  But even beyond that, any amendment would be futile:  As Stossel's opposition makes clear, he cannot offer any new facts to cure his deficient complaint.

Those same defects warrant granting Meta relief under California's anti-SLAPP statute. While Stossel claims that Meta cannot take advantage of the anti-SLAPP statute unless it adopts Science Feedback's "speech" as its own, that argument entirely ignores that Meta has its own First Amendment right to exercise editorial judgment over what third-party content to disseminate, including the right to decide whether to pair a fact-check authored by Science Feedback with a video posted by Stossel.  There can be no question that Stossel's claim challenges (and therefore arises from) Meta's exercise of that First Amendment right and so falls within the scope of the anti-SLAPP statute.  And, because his claim lacks even minimal merit, the anti-SLAPP statute compels both its dismissal and that Meta be awarded its fees and costs.

Having failed to sustain his claim on the merits, Stossel resorts to accusing Meta of contradicting itself, but his attempts betray his own misunderstanding.  Stossel is wrong that Meta's invocation of the "protected opinion" doctrine somehow contradicts its prior statements about fact checks.  Meta has always recognized that fact checks are complex determinations; that in no way means those fact checks are not based on facts.  To the contrary, as Meta explained, the First Amendment protects the fact checks precisely because they are conclusions based on disclosed facts.  And far from conflicting, Meta's Section 230 and anti-SLAPP arguments are two birds of a feather:  Both recognize that Meta's editorial decision to enlist third parties to review material posted to the Facebook platform cannot form the basis of this suit—because both Section 230 and California's anti-SLAPP statute protect such editorial judgments.  Stossel's complaint should be dismissed with prejudice.

## I.  THE COMMUNICATIONS DECENCY ACT BARS STOSSEL'S CLAIM

Stossel's defamation claim is barred at the threshold by Section 230 of the Communications Decency Act.  Stossel tries to plead around this defect by pointing to various actions Meta took to make Science Feedback's fact checks available, but such publishing conduct is precisely what Section 230 protects.  Stossel also attempts to attribute Science Feedback's speech to Meta via an

agency theory.  But agency concepts cannot defeat Section 230.  And in any event, Stossel has not alleged facts establishing an agency relationship.

### A.   Meta Is Not An "Information Content Provider" Of The Fact-Checks

Stossel's own arguments make clear that Meta satisfies all three of the prerequisites for Section 230's protections.

First, Stossel does not dispute that Meta is a "provider" of "an interactive computer service"—the Facebook platform.  *See* Opp. 5.  Second, Stossel does not dispute that his defamation claim seeks to treat Meta as a publisher of Science Feedback's fact-checks.  *See* Compl. ¶¶ 1, 117, 126; Opp. 6 ("Meta is alleged … to have directly posted a portion of the offending content.").  As courts routinely recognized, "[t]he prototypical cause of action seeking to treat an interactive computer service provider as a publisher or speaker is defamation." *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018).

That leaves only the third Section 230 prerequisite:  whether the allegedly defamatory material was developed by another content provider.  Though Stossel disputes this requirement by calling Meta a "contributing author" of the fact checks, *see* Opp. 6, labels alone cannot defeat Section 230 immunity.  It is not enough for Stossel to say that Meta "merely … augment[ed] the content generally"; rather, he must allege that Meta "materially contribut[ed] to its alleged unlawfulness."  *Gonzalez v. Google LLC*, 2 F.4th 871, 892 (9th Cir. 2021) (citing *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008)). He has not done so.

To start, Stossel is wrong that Meta can be held liable for the allegedly defamatory portion of the fact-checks because it "commission[ed] the fact-checking."  Opp. 5.  Stossel cites no authority holding that payment transforms a platform into the creator of a third-party's content, much less anything to rebut the cases Meta cited that reject that argument.  *See* Mot. 9.

Stossel likewise errs in arguing that Meta became the creator of allegedly defamatory fact-checks because it "identif[ied] misleading content, work[ed] with [Science Feedback] to create and develop defamatory speech, then adopt[ed] and endors[ed] the speech as its own."  Opp. 7.  That argument is foreclosed by the Ninth Circuit's decision in *Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th

Cir. 2016).  The plaintiff in *Kimzey* "cryptically alleged that Yelp in effect created and developed [the allegedly defamatory review]" by "causing a review from another site to appear on its page [and] providing a star-rating function that transforms user reviews into Yelp's own content." 836 F.3d at 1265-66.  The Ninth Circuit recognized that as an attempt "to plead around the CDA to advance the same basic argument that the statute plainly bars: that Yelp published user-generated speech that was harmful to [the plaintiff]." *Id.* at 1265-67.  Same here: Stossel is arguing that Meta somehow became a developer or creator of the fact-checks through endorsing the content and designing the labeling system.  *See* Opp. 5-6.  As the Ninth Circuit has recognized, however, such characterizations "extend the concept of an 'information content provider' too far" and thereby "render the CDA's immunity provisions meaningless." *Kimzey*, 836 F.3d at 1269; *see also Black v. Google Inc.*, 2010 WL 3222147, at *3 (N.D. Cal. Aug. 13, 2010), *aff'd*, 457 Fed. App'x 622 (9th Cir. 2011) ("Plaintiffs' attempt to depict Defendant as a sponsor or endorser of the comment is, in effect, an end-around the prohibition on treating it as the publisher or speaker of it.  Such a ploy, if countenanced, would eviscerate the immunity granted under § 230.").

It makes no difference that Stossel claims that Meta "identified" potentially misleading content for Science Feedback to review.[1]  As documents incorporated by reference into Stossel's own complaint establish, fact-checkers have the option to rate content as "true" if, after their independent review, the content "contains no inaccurate or misleading information." *See* Mot. Ex. 4 at 3; *see also* Mot. 3 n.4 (the Complaint incorporates Mot. Ex. 4 by reference).[2]  That Meta allegedly "identified" posts and added them to the fact-checking queue does not establish that Meta provided anything other than "content neutral functions." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1100 (9th Cir. 2019), *cert. denied*, 140 S.Ct. 2761 (2020); *see also Kimzey*, 836 F.3d at 1270 (same).  "[E]ven if a particular tool 'facilitates the expression of information,' it

---

[1] Since Meta filed its motion to dismiss, Science Feedback has appeared and explained that "Climate Feedback" is not a separate entity, but instead a website that Science Feedback operates.  ECF No. 43.  Meta accordingly refers solely to "Science Feedback" in this brief.

[2] Stossel does not contest the authenticity of the materials Meta submitted with its motion, or that they were incorporated by reference into the complaint.

generally will be considered 'neutral' so long as users ultimately determine what content to post, such that the tool merely provides 'a framework that could be utilized for proper or improper purposes.'" *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197-98 (N.D. Cal. 2009) (internal alterations and citations omitted).

This case is therefore distinguishable from *Roommates.com*, the only case cited by Stossel where a Section 230(c)(1) defense was partially rejected. 521 F.3d at 1157 (cited at Opp. 5). The website in *Roommates.com* was considered "the developer of the discriminatory content at issue" displayed on users' profile pages only because the website "affirmatively *required* users to disclose information related to protected classes through discriminatory questions and answer choices" and "designed its search function to guide users through the *required* discriminatory criteria." *Dyroff*, 934 F.3d at 1098-99 (citing *Roommates.com,* 521 F.3d at 1170) (emphasis added). This "narrow exception" does not apply here—Stossel does not, and cannot, claim that Meta *required* Science Feedback to post the allegedly defamatory content at issue. *Goddard*, 640 F. Supp. 2d at 1198-99.

At bottom, Stossel advances "the same basic argument that the statute plainly bars"—that Meta published third-party-generated content that was allegedly harmful to Stossel. *Kimzey*, 836 F.3d at 1266. His claim is therefore barred by Section 230.

**B.      Stossel Cannot Circumvent Section 230 Immunity Through Agency Theory**

Perhaps recognizing that his claim against Meta is foreclosed by binding caselaw interpreting Section 230, Stossel instead asks this Court to import state-law agency principles into the federal statute. He contends that, under those principles, Meta should be considered the creator of Science Feedback's fact-checks and accordingly held liable for their content.[3]  Not so.

Stossel offers no basis for grafting common-law agency principles into Section 230.  Not one of the cases cited in his opposition relied on agency principles to end-run Section 230.  Stossel

---

[3] Stossel's Complaint appeared to assert several state-law theories, including contractual relationship (Compl. ¶ 108), agency and ratification (Compl. ¶ 109), and conspiracy (Compl. ¶ 110-114), but his Opposition defends only the agency theory. *Compare* Mot. 9-12 *with* Opp. 7-9.  Stossel thus "has abandoned" his contract and conspiracy "theor[ies] by failing to respond to Defendants' arguments regarding [them] in his opposition to the motion to dismiss." *Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1014 (N.D. Cal. 2018).

cites *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), but that case discussed the Telephone Consumer Protection Act.  His other case, *Mavrix Photographs v. Livejournal, Inc.*, 873 F.3d 1045 (9th Cir. 2017), related to the Digital Millennium Copyright Act.  Neither case applied an agency theory to avoid application of Section 230.  And doing so would render irrelevant the substantial body of law the Ninth Circuit has developed to determine whether an online service provider is, in fact, the "developer" of the content at issue.  *See, e.g.*, *Roommates.com*, 521 F.3d at 1157; *Kimzey*, 836 F.3d at 1263.  That body of law is necessarily distinct from common-law agency principles, which, if incorporated wholesale into Section 230, would permit plaintiffs to avoid through artful pleading Section 230's square prohibition on treating any "provider ... of an interactive computer service … as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).

In any event, agency principles do not help Stossel here.  Contrary to Stossel's assertion (Opp. 7-8), this Court can (and should) dismiss claims dependent on an agency theory at the Rule 12 stage where the plaintiff fails to offer "sufficient facts … to support a reasonable inference that an agency relationship existed."  *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *3 (N.D. Cal. Oct. 16, 2019) (internal citation omitted); *see also Kreiser v. Asset Mgmt. Grp., Inc.*, 2021 WL 3579414, at *3 (C.D. Cal. Apr. 23, 2021) (cited at Opp. 8).  To plead an agency relationship, Stossel must allege Meta's manifestation of either actual or apparent authority.  *See Pascal*, 2019 WL 5212961, at *3-4.  Stossel falls far short. He does not allege that Meta "manifest[ed] assent to [Science Feedback] that [it] shall act on [Meta's] behalf and subject to [Meta's] control," as required for actual authority, or that Meta "create[d] in [Science Feedback] a reputation of authority." *Id.* at *3-4.  Indeed, as Meta explained (Mot. 10-11), the manifestation element is directly contradicted by Stossel's allegation that Meta publicly identifies the fact-checkers, including Science Feedback, as "independent."  Compl. ¶¶ 29, 45-46, 83-84.  That alone merits dismissing the complaint with prejudice.  *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *6 (N.D. Cal. Mar. 28, 2018).

Stossel ignores this entirely.  Instead, he focuses on the "control" element.  But the Complaint contains no allegations of control, instead simply alleging that "Facebook commissions the fact-checking and applies content, labels, and other information developed by the fact-checking

1    to the speech of its users." Compl. ¶ 27.  The cases Stossel cited (Opp. 7-8) contained far more

2    specific allegations.  In *Mori Seiki USA, Inc. v. M.V. Alligator Triumph*, the district court's factual

3    findings of "control" were supported by the principal's majority ownership of the agent.  990 F.2d

4    444, 450-51 (9th Cir. 1993).  *Mavrix Photographs* involved not distinct entities but a team of

5    individual moderators over whom the  defendant exercised "significant control" by providing

6    "substantive supervision," "select[ing] and remov[ing] moderators," and "exercis[ing] control over

7    the moderators' work schedule" akin to employees.  873 F.3d at 1055-56.  Nor does Stossel's

8    allegation that Meta paid Science Feedback amount to "control"; "[s]ponsorship alone is

9    insufficient to render the sponsor the guarantor of the truth of all statements made in a publication."

10   *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003).  Without similar allegations of "any kind of

11   special control over" Science Feedback, Stossel's claim should be dismissed "as having been

12   brought against an improper party."  *Williby v. Hearst Corp.*, 2017 WL 1210036, at *4 (N.D. Cal.

13   Mar. 31, 2017) (rejecting agency theory and therefore dismissing defamation claims).

14   **II.    STOSSEL'S DEFAMATION CLAIM FAILS**

15           Although Section 230 itself compels dismissal with prejudice, Stossel's claim should be

16   rejected for the independent reason that Stossel cannot adequately allege that Meta made a false

17   and defamatory statement with actual malice.  *First*, his actual malice allegations all center on what

18   Science Feedback—not Meta—knew or believed, ignoring the requirement that he establish actual

19   malice as to each defendant.  *Second*, he has not alleged that any of the challenged statements are

20   either false or defamatory.

21           **A.    Stossel Has Not Pled Actual Malice**

22           Although Stossel acknowledges that he must allege actual malice, Opp. 11, he badly

23   misstates the relevant standard.  According to Stossel, merely "lack[ing] reasonable grounds" for a

24   statement constitutes actual malice.[4]  *Id.*; *see also* Opp. 12.  Far from it.  As Meta explained (Mot.

25   12-13), it is well-settled that actual malice requires "knowledge that [the statement] was false or …

26   reckless disregard of whether it was false or not."  *New York Times Co. v. Sullivan*, 376 U.S. 254,

27

28        [4] Of course, Stossel has not identified any support for the allegation that Meta lacked a
     reasonable basis to publish fact-checks and labels from its independent fact-checkers.

279-80 (1964). "[A] plaintiff must demonstrate that the author in fact entertained serious doubts as to the truth of his publication or acted with a high degree of awareness of … probable falsity." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991) (internal quotation marks and citations omitted). Stossel disregards this binding Supreme Court authority and instead relies (Opp. 11) on an isolated quote from *MacKinnon v. Logitech Inc.*, 2016 WL 2897661, *4 (N.D. Cal. May 18, 2016). But *MacKinnon* addressed a distinct concept (the "actual malice" required to defeat a qualified privilege under state common law—not the constitutional standard of care). *See* 1 Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 9:3:2 (5th ed. 2017) Stossel has not met the constitutional standard. To the extent *MacKinnon* implies a less demanding actual malice standard, that conflicts with binding Supreme Court precedent which has for decades made clear that "actual malice" requires either knowledge or reckless disregard of falsity. *See Sullivan*, 376 U.S. at 279-80.

Stossel cannot show that Meta knew of the fact-check's alleged falsity (or acted with reckless disregard towards that falsity) by relying entirely on conversations that he had with Science Feedback (which he does not allege that Meta was privy to). Opp. 11-12. That is not good enough. As Meta explained in its motion, actual malice must be alleged as to *each* defendant. Mot. 13 (citing cases). Stossel's allegations as to Science Feedback are thus irrelevant to his claim against Meta. And while Stossel claims (Opp. 12) that *Resolute Forest* supports denial of Meta's motion because "Stossel alleges specific facts" showing that Meta knew the fact checks were false and was informed of their falsity, he cannot muster a single citation to the Complaint. For good reason: The Complaint is bereft of any allegation as to *Meta*'s supposed knowledge.

Moreover, Meta was entitled to "rely on the investigation and conclusion of reputable sources." *Reader's Digest Ass'n v. Super. Ct.*, 690 P.2d 610, 619 (Cal. 1984); *see also Masson v. New Yorker Mag., Inc.*, 960 F.2d 896, 902 (9th Cir. 1992). As in *Masson*, Meta had every reason to rely on Science Feedback, which is "certified through the non-partisan International Fact-Checking Network." Mot. Ex. 2 at 1. Stossel's only response is that Science Feedback "does not enjoy a similar reputation" to the New Yorker. Opp. 12. But the fact-checks were published on the Climate Feedback website, which has been recognized as a "highly respected and influential

resource."  Dana Nuccitelli, *New Study Uncovers the 'Keystone Domino' Strategy of Climate Denial* (Nov. 29, 2017, 12:17 PM), https://tinyurl.com/2p8jxfur.  Stossel offers no reason to doubt Climate Feedback's status as a reputable source on climate science other than a bizarre suggestion that it is less credible because it is an online source and not a print publication.  Tell that to the numerous online news outlets that have given print media a run for its money (and readers).  *Cf. Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1254-55 (9th Cir. 1997) (crediting reliance on another publication even where plaintiffs alleged that publication was a "sensationalist tabloid").

In all events, Stossel's allegations focus on his informing Science Feedback of his disagreement and seeking retraction.  But it is well established that "the protestations of a source will not, standing alone, support an inference that the publisher 'entertained serious doubts' about, or even 'had obvious reasons to doubt,' the accuracy of" the challenged statements.  *Masson*, 960 F.2d at 900 (internal citation omitted).  And "a publisher who does not have information giving it 'obvious reasons to doubt' the accuracy of a story is not required to conduct an investigation that would cause it to develop such a doubt"—let alone retract its statement.  *Id.* at 903.

**B.    Stossel Has Not Identified A Defamatory Statement**

Stossel must support his defamation claim with allegations that Meta made a false and defamatory statement about him.  *Price v. Operating Eng'rs Loc. Union No. 3*, 195 Cal. App. 4th 962, 970 (2011); *see also* Mot. 16-18.  Stossel identified no such statement in his Complaint, and nothing in his Opposition suggests he could cure that fundamental defect.

*First*, Meta explained in its Motion that there are no allegations in the Complaint that allow even an inference that the allegedly defamatory statements here were actually false.  The Fire Video *did* contain the claim that forest fires are caused by poor forest management, not by climate change.  *See* Mot. 17.  There was nothing false about a fact-check label attributing the claim to that video.  And the Complaint nowhere explains why Science Feedback's conclusion that the Alarmism Video "relies on incorrect and misleading claims" was false, beyond a conclusory statement that Science Feedback was wrong to decide that it contained "factual inaccuracies."  *See* Opp. 15 (quoting Compl. ¶ 84).  Stossel offers no response to either point.

*Second*, Meta's statements did not defame Stossel.  Stossel does not respond to the cases

cited in Meta's Motion, *compare* Opp. 13 *with* Mot. 17 (citing *Polygram Recs., Inc. v. Super. Ct*, 170 Cal. App. 3d 543, 550 (1985)), instead arguing that the fact-checks are "quintessential defamation" because he received "negative feedback" on his videos, Opp. 13.   Stossel cites no authority for the proposition that negative feedback amounts to "hatred, contempt, [or] ridicule" or caused him "to be shunned or avoided," as is required for a statement to be defamatory under California law.  Cal. Civ. Code § 45.   In any event, the sole negative comment Stossel identifies criticizes him for being "right-sided" and "unfair," Opp. 13—claims that appear nowhere in, and cannot be attributed to, the fact checks.

For similar reasons, the statements were not "of and concerning" Stossel.  The fact checks do not even mention Stossel by name.  Stossel strains to distinguish *Hayes v. Facebook*, 2019 WL 5088805, at *7 (N.D. Cal. Aug. 15, 2019) (cited at Mot. 17).   But in *Hayes*, as here, the plaintiff asserted a defamation claim for action Meta took against the plaintiff's Facebook post.  The *Hayes* court held that "no reasonable person would interpret those statements as being about [plaintiff] personally." *Id.* at *7.  Stossel cites no case sanctioning a defamation claim in that circumstance.

## C.    The Fact Checks Are Constitutionally Protected

Stossel's defamation theory also runs afoul of the First Amendment.  As Meta explained, a conclusion "based on fully disclosed facts" is actionable only if the "stated facts are themselves false and demeaning." *Standing Committee on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995).  Stossel's responses all fall flat.

*First*, Stossel's fixation on the term "opinion" is misplaced.  As the Supreme Court has explained, "the fair meaning of … opinion" in this context is "idea." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990); *see also Standing Committee*, 55. F.3d at 1440 (using the word "view" in place of "opinion" in its discussion of this doctrine).  There is thus no tension whatsoever between Meta's position that fact-checks are verifications of facts and its recognition that those verifications are protected "ideas" under the First Amendment.

*Second*, Stossel's argument that Meta should be estopped from claiming the fact-check labels are "protected opinion" mixes up the fact-check with the facts being checked.  Meta's focus on fact checking "provably false claims" is in no way a concession that the resulting fact-check

will be provably false. *Contra* Opp. 15. To the contrary, a fact-check consists of determinations and judgment calls based on the underlying facts reviewed. Determinations and judgments that disclose their factual foundation (like the fact-checks here) are constitutionally protected speech. *See Standing Committee*, 55 F.3d at 1439; s*ee also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974) ("Under the First Amendment there is no such thing as a false idea.").

*Third*, Stossel is wrong to suggest that the fact-check labels are not based on disclosed, true facts. Opp. 15. His Complaint itself acknowledges that Meta's "missing context" label was accompanied by the fact—verified in the Complaint—that "[i]ndependent fact-checkers say this information could mislead people." Compl. ¶¶ 45, 47. Likewise, the Alarmism Video's "partly false" label noted the video had been "[c]hecked by independent fact checkers." *Id.* ¶ 83. The Complaint again verifies this statement. *Id.* ¶ 85. Stossel's retort that "Climate Feedback's [allegedly] inaccurate assertion[s]" disqualify Meta from constitutional protection is unresponsive. Opp. 15. The dispositive fact is that the fact-check labels contained the undeniably true statements that third-party fact checkers had reached the "missing context" and "partly false" conclusions.

And the fact-check labels were *also* accompanied by the Science Feedback explanations, which provided further factual basis for the conclusion expressed in the associated label. Mot. 16, 18. Stossel has not identified any false statements of fact in those explanations, instead electing, as he put it, to disagree with the "conclusions" reached in the articles. Compl. ¶¶ 52, 89. For instance, he disputes Science Feedback's statement "that the Alarmism Video contained 'factual inaccuracies.'" Opp. 15. But that disputes the *conclusion* reached by the article, not the facts on which the article relied to reach that conclusion. *Cf. Standing Committee*, 55 F.3d at 1439. As to the "missing context" label, Stossel claims this "was based on Climate Feedback's inaccurate assertion that Stossel had said something he did not." *Id.* But the Science Feedback explanation nowhere asserts that Stossel claimed anything. *See* Mot. 16-17. It simply lays out the climate-science facts on which it rested its conclusion that Stossel's video lacked context. Mot. Ex. 6. The conclusion that those facts refuted Stossel's video is just that—a conclusion, which is protected by the First Amendment. In any event, as noted above, the Fire Video *did* contain the claim that forest fires are caused by poor forest management. *See supra* p. 9; Mot. 17.

1    **III.     THE COMPLAINT SHOULD BE STRUCK**

2         Stossel's Complaint should be struck under California's anti-SLAPP statute, and Meta

3    should be awarded fees for briefing its Motion. Both prongs of the anti-SLAPP statute are satisfied:

4    Stossel's claim arises from Meta's protected speech, which is not subject to the commercial-speech

5    exemption. And for all the reasons above, Stossel's claim has no chance of success on the merits.

6         **A.     Stossel's Defamation Claim Falls Within The Anti-SLAPP Statute**

7         Stossel has no serious argument that his defamation claim does not arise from Meta's First

8    Amendment protected content and thereby falls within the scope of the California anti-SLAPP

9    statute. He first claims (Opp. 16-17) that Meta's publishing of third-party fact-checks alongside

10   certain user-generated posts is not "speech" and therefore is not protected under the anti-SLAPP

11   statute. But he cites no support for this crabbed view of the anti-SLAPP statute, much less any that

12   contradicts the multiple cases Meta cited holding that the First Amendment protects precisely this

13   type of editorial decision. Mot. 2, 20 (citing *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981,

14   991 (S.D. Tex. 2017) (collecting cases), and *Greater L.A. Agency on Deafness, Inc. v. Cable News

15   Network, Inc.*, 742 F.3d 414, 424-25 (9th Cir. 2014)). Indeed, it is indisputable that Meta has a

16   "First Amendment right to decide what to publish and what not to publish on its platform."

17   *La'Tiejira*, 272 F. Supp. 3d at 991. And as another court in this district recognized in a recent suit

18   involving a dispute over similar editorial decisions by a social media company, an online platform's

19   "decisions about what content to include, exclude, moderate, filter, label, restrict, or promote …

20   are protected by the First Amendment." *O'Handley v. Padilla*, 2022 WL 93625, *14 (N.D. Cal.

21   Jan. 10, 2022), *appeal docketed sub nom. O'Handley v. Bonta*, No. 22-15071 (9th Cir. Jan. 18,

22   2022); *see also id.* (collecting cases).

23        Stossel also argues (Opp. 17-18) that the fact-checks are "commercial speech" and therefore

24   exempt from the anti-SLAPP statute. *See* Cal. Code Civ. Proc. § 425.17(c). This conclusion, too,

25   is badly flawed. To begin, Stossel misstates the applicable standard, claiming that all he must show

26   is that the conduct took place "in the course of delivering the person's goods or services" and that

27   "the intended audience is an actual or potential buyer or customer" of the goods or services. Opp.

28   17. The California Supreme Court rejected that construction of the commercial-speech exemption

in *Simpson Strong-Tie Co., Inc. v. Gore*, and instead explained that the exemption has four requirements: (1) the cause of action must be "against a person primarily engaged in the business of selling or leasing goods or services"; (2) the cause of action must arise from "representations of fact about that person's or a business competitor's business operations, goods, or services"; (3) the conduct at issue must have been "made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services"; and (4) the intended audience for the conduct must be an actual or potential customer of the person, or a person likely to influence an actual or potential customer. 230 P.3d 1117, 1128-29 (2010).

The fact-checks fail multiple of these requirements. For one, "while Facebook sells advertising, it is not 'primarily engaged in the business of selling or leasing goods or services'" because it "offers a free service to its users." *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 203 (2017) (citing Cal. Code Civ. Proc. § 425.17(a)). This alone negates both the first and third requirements under *Simpson*. Beyond that, Meta's act of making Science Feedback's fact-checks available is not a "representation of fact" about either Meta's own operations, goods, or services, or about a "business competitor's" operations, goods, or services. *Simpson*, 230 P.3d at 1130. Nor are Science Feedback's fact-checks themselves, for that matter—there is no allegation that Stossel is a "business competitor" of Meta's or Science Feedback's, nor could there be. *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1104 (C.D. Cal. 2004) (observing that while neither the anti-SLAPP statute nor case law discusses what "competitor" means, Webster's dictionary defines the term as covering a "'rival' or 'one selling or buying goods or services in the same market as another'"); *see also id.* at 1116 (holding that plaintiff and defendant software companies were not competitors because they were "engaged in separate and distinct businesses"); *Muddy Waters, LLC v. Super. Ct.*, 62 Cal. App. 5th 905, 920 (2021) (parties not competitors for purposes of commercial-speech exemption because defendant was "in the business of financial analysis and activist short selling, whereas plaintiff is in the business of importing, exporting, selling, and leasing aluminum goods").

These factors distinguish *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294 (2014), the sole case that Stossel cites regarding the commercial-speech exemption, *see* Opp. 18. There, the

exemption applied because the suit concerned Yelp's representations about the reliability of its *own* filtering software, not the content of any third-party reviews, that were made for the purpose of inducing commercial transactions (i.e., advertising) on its site. *Demetriades*, 228 Cal. App. 4th at 310. Not so here. The California Court of Appeal has rejected application of the commercial-speech exemption where, as here, the representations at issue concerned the plaintiff, rather than the defendant or its competitors, and were not made for purposes of promoting sales of defendant's goods or services. *See Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 676 (2010); *see also Cross*, 14 Cal. App. 5th at 202, 204 (rejecting application of commercial-speech exemption because suit did not challenge any statement made by Facebook about its business operations to solicit users, but instead arose from the speech of the third parties on its platform).

Finally, Stossel errs in arguing (Opp. 1, 16-17) that Meta's anti-SLAPP and Section 230 arguments are incompatible. Courts routinely afford protection under Section 230 and the anti-SLAPP statute in tandem. *See, e.g.*, *Batzel*, 333 F.3d at 1026; *Cross*, 14 Cal. App. 5th at 205-07. Meta's decision to append a third-party fact check to a user-generated post is an editorial decision entitled to both Section 230 and First Amendment protection. That decision is protected by Section 230 because Stossel cannot show how Meta bears responsibility "for what makes the displayed [fact-check] content" allegedly defamatory. *Kimzey*, 836 F.3d at 1269 n.4 (internal quotation marks and citation omitted). And it triggers the anti-SLAPP statute because the First Amendment protects editorial decisions to fact-check and display fact-check labels.

### B.     Stossel Has Not Demonstrated Any Chance of Success on the Merits

The second prong is also satisfied because Stossel cannot demonstrate a likelihood of success on the merits, for the reasons discussed above and in Meta's motion. *See Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1026 (N.D. Cal. 2017).

## IV.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Dismissal of Stossel's complaint should be with prejudice, for at least two reasons.

*First*, Section 230 exists "'to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.'" *Sikhs for Justice v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015), *aff'd*, 697 Fed. App'x 526 (9th Cir. 2017) (quoting

*Roommates.com*, 521 F.3d at 1175).   Accordingly, courts regularly dismiss cases with prejudice where Section 230's protections apply—as they do here.  *See id.* (dismissing with prejudice where Section 230 barred complaint); *see also Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at *7 (N.D. Cal. Oct. 8, 2018), *aff'd*, 786 Fed. App'x 104 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 913 (2020) (same); *Obado v. Magedson*, 612 F. App'x 90, 93 (3d Cir. 2015) (affirming similar decision).

*Second*, nothing in Stossel's Opposition suggests that he could cure the many deficiencies in his Complaint if given leave to replead.   The only allegations Stossel proposes adding are statements by "a Climate Feedback agent" that Meta "alert[ed]" Science Feedback to the Alarmism Video and that Meta was "working with" Science Feedback to "identify and counter misinformation." Opp. 9 n.3.  These allegations add nothing:  The Complaint already alleges that Meta "work[s] with" Science Feedback, Compl. ¶ 27, and Meta has already admitted that it "identifies potential misinformation for fact-checkers to review and rate," Mot. 1.  As explained, those allegations do not take this case outside of Section 230, *supra* pp. 3-4, or support the legal conclusion that Science Feedback acted as Meta's agent, *supra* pp. 5-7.   Ultimately, even if they were plausibly alleged, they would bring Stossel no closer to pleading that Meta acted with actual malice, or that the statements at issue were both false and defamatory.  *Supra* pp. 7-10.

Moreover, where a plaintiff cannot state a viable claim "without contradicting any of the allegations of his original complaint," the court may deny leave to amend.  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990); *see also Clifford v. Trump*, 339 F. Supp. 3d 915, 928-29 (C.D. Cal. 2018), *aff'd*, 818 F. App'x 746 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021) (striking a complaint under California's anti-SLAPP statute with prejudice where amendment would be futile).  That is the case here—both Stossel's Section 230 argument and his defamation claim hinge upon an agency theory that is expressly negated by Stossel's own allegation in the Complaint that Meta publicly identifies fact-checkers as "independent."  *Supra* p. 6.

## CONCLUSION

The Complaint should be dismissed with prejudice, the claim against Meta should be struck, and Meta should be awarded its fees and costs.

Respectfully submitted,

1

2  Dated:  February 8, 2022                    WILMER CUTLER PICKERING HALE
                                              AND DORR LLP
3
                                              By:    /s Sonal N. Mehta
4                                                    SONAL N. MEHTA

5                                             Attorney for Defendant Meta Platforms, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2
**CERTIFICATE OF SERVICE**

3
       I hereby certify that on February 8, 2022, I electronically filed the above document with

4
the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all

5
registered counsel.

6

7
Dated: February 8, 2022              By:   */s Sonal N. Mehta*

8
                                 Sonal N. Mehta

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28