KRISTA L. BAUGHMAN (SBN: 264600)
kbaughman@dhillonlaw.com
HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
JESSE FRANKLIN-MURDOCK (SBN: 339034)
jfranklin-murdock@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Plaintiff
JOHN STOSSEL

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **JOHN STOSSEL**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**META PLATFORMS, INC.**, a Delaware corporation; **SCIENCE FEEDBACK**, a French non-profit organization; and **CLIMATE FEEDBACK**, a French non-profit organization,<br><br>Defendants. | Case Number: 5:21-cv-07385-VKD<br><br>**PLAINTIFF JOHN STOSSEL'S OPPOSITION TO DEFENDANT SCIENCE FEEDBACK'S (1) MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6), AND (2) MOTION TO STRIKE COMPLAINT PURUSANT TO CALIFORNIA'S ANTI-SLAPP STATUTE, CODE CIV. PROC. § 425.16**<br><br>Judge: Hon. Virginia K. DeMarchi<br>Location: Courtroom 2 – 5th floor<br>280 South 1st Street, San Jose, CA 95113<br>Date: April 12, 2022<br>Time: 10:00 a.m. |



# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 2

A.   THE PARTIES ..................................................................................................... 2

B.   THE FIRE VIDEO ............................................................................................... 3

C.   THE ALARMISM VIDEO ................................................................................... 3

III.    LEGAL STANDARDS ................................................................................................. 4

A.   MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) ................................ 4

B.   SPECIAL MOTION TO STRIKE UNDER CALIFORNIA'S ANTI-SLAPP STATUTE ........... 4

IV.     ARGUMENT ................................................................................................................ 5

A.   STOSSEL'S OBJECTIONS TO SCIENCE FEEDBACK'S REQUEST FOR JUDICIAL NOTICE ........................................................................................................ 5

B.   STOSSEL HAS PLED A VIABLE DEFAMATION CLAIM AGAINST CLIMATE FEEDBACK ........................................................................................................ 6

   1.   Climate Feedback's Speech Is Actionable ................................................ 6

   a.  Science Feedback's statements are capable of a defamatory meaning ...................... 6

   b.  Science Feedback's statements are not protected opinion based on disclosed facts ................. 7

   c.  Science Feedback's statements are not substantially true ........................................ 10

   2.   Science Feedback's Speech Was "Of and Concerning" Stossel ........................... 10

   3.   Science Feedback Engaged in Libel Per Se ................................................ 11

   4.   California's Correction Statute Does Not Bar Stossel's Claim ............................ 13

   a.  The Corrections Statute does not apply to Science Feedback ............................... 13

   b.  Stossel complied with the Corrections Statute ........................................... 14

   5.   Stossel Pleads Special Damages ................................................................ 15



6.    Stossel Alleges Actual Malice.............................................................16

V.    CONCLUSION ...................................................................................18



Opposition to Motions to Dismiss and Strike                    Case No.  5:21-cv-07385-VKD

1

**TABLE OF AUTHORITIES**

2 **Cases**

3 *AK Futures v. Limitless Trading Co., LLC*,

4   No. SACV21CV01154JVSADSX, 2021 WL 5238588 (C.D. Cal. Oct. 6, 2021) ..............................12

5 *Ashcroft v. Iqbal*,

6   556 U.S. 662 (2009)...........................................................................................................................4

7 *Barnes-Hind, Inc. v. Superior Ct.*,

8   181 Cal. App. 3d 377 (1986) ...........................................................................................................12

9 *Bell Atlantic Corp. v. Twombly*,

10   550 U.S. 544 (2007)...........................................................................................................................4

11 *Blatty v. N.Y. Times Co.*,

12   42 Cal. 3d 1033 (1986) ....................................................................................................................11

13 *Briggs v. Eden Council for Hope & Opportunity*,

14   19 Cal. 4th 1106 (1999) .....................................................................................................................5

15 *Christian Research Institute v. Alnor*,

16   148 Cal. App. 4th 71 (2007) ............................................................................................................16

17 *Cochran v. NYP Holdings, Inc.*,

18   58 F. Supp. 2d 1113 (C.D. Cal. 1998) ...............................................................................................9

19 *County of Toulomne v. Sonora Cmty. Hosp.*,

20   1 F. App'x 653 (9th Cir. 2001) ..........................................................................................................8

21 *Ferlauto v. Hamsher*,

22    74 Cal.App.4th 1394 (1999) ...........................................................................................................11

23 *Gallagher v. Philipps*,

24   No. 20-CV-993 JLS (BLM), 2021 WL 4428996 (S.D. Cal. Sept. 27, 2021) ..............................11, 15

25 *Henley v. Jacobs*,

26   No. C 18-2244 SBA, 2019 WL 8333524 (N.D. Cal. Aug. 2, 2019)..................................................11

27 *Hotel Emps. & Rest. Emps. Loc. 2 v. Vista Inn Mgmt. Co.*,

28   393 F. Supp. 2d 972 (N.D. Cal. 2005) ...............................................................................................5



*Houlahan v. Freeman Wall Aiello*,
    15 F. Supp. 3d 77 (D.D.C. 2014) ................................................................................................7

*Kahn v. Bower*,
    232 Cal. App. 3d 1599 (1991) ....................................................................................................6

*Kanarek v. Bugliosi*,
    108 Cal. App. 3d 327 (1980) ....................................................................................................15

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ......................................................................................................5

*MacKinnon v. Logitech Inc.*,
    Civ. No. 15-cv-05231-TEH, 2016 WL 2897661 (N.D. Cal. May 8, 2016) .............................16

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) ....................................................................................................................6

*Moldea v. New York Times Co.*,
    22 F.3d 310 (D.C. Cir. 1994) ......................................................................................................8

*Navellier v. Sletten*,
    52 P.3d 703 (Cal. 2002) ......................................................................................................4, 5, 6

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..................................................................................................................16

*Newton v. Nat'l Broad. Co.*,
    930 F.2d 662 (9th Cir. 1990) ....................................................................................................11

*O'Hara v. Storer Commc'ns, Inc.*,
    231 Cal. App. 3d 1101 (1991) ..................................................................................................15

*Owens v. Lead Stories, LLC*,
    No. CV S20C-10-016 CAK, 2021 WL 3076686 (Del. Super. Ct. July 20, 2021).............9, 10

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ......................................................................................................5

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ...................................................................................................7, 8

iv

DILLON LAW GROUP INC.

*Planned Parenthood Fed'n of Am., Inc. v. Cntr. for Med. Progress*,

  890 F.3d 828 (9th Cir. 2018) ................................................................................1

*Reader's Digest Ass'n v. Superior Ct.*,

  37 Cal. 3d 244 (1984) ....................................................................................16

*Song fi Inc. v. Google, Inc.*,

  108 F. Supp. 3d 876 (N.D. Cal., 2015) ..........................................................12

*Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. Of California v. Yagman*,

  55 F.3d 1430 (9th Cir. 1995) ..........................................................................9

*Usher v. City of Los Angeles*,

  828 F.2d 556 (9th Cir. 1987) ..........................................................................4

**Statutes**

Cal. Civ. Code § 45(a) ...............................................................................11, 15

Cal. Civ. Code § 48a(a)...................................................................................13

Cal. Civ. Code § 48a(d)(2)...............................................................................15

Cal. Civ. Code § 48a(d)(5)...............................................................................13

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ......................................................................passim

**Legislative Materials**

A.B. 998 § 1, 2015 Leg. (Cal. 2015)...........................................................13, 14

A. Rep. A.B. 998 (Cal. 2015) .........................................................................14

S. Rep. A.B. 998 (Cal. 2015) .........................................................................13

**Constitutional Provisions**

U.S. Constitution, Amend. I............................................................................7, 11



## I.    INTRODUCTION

In response to Plaintiff John Stossel's ("Stossel") Complaint, Defendant Science Feedback ("Science Feedback") has filed a Motion to Dismiss and Special Motion to Strike Complaint under California's Anti-SLAPP Statute ("Motion"), which argues that a Rule 12(b)(6) standard applies[1] and that Stossel failed to plead a prima facie case of defamation.

Science Feedback and Defendant Meta Platforms, Inc. ("Meta") act in partnership to conduct what they describe as "fact-checks" of content posted by Facebook users. Science Feedback tells the public that its job is to "sort fact from fiction," while Meta announces that its "fact-checking program" focuses on "provably false claims." Yet Defendants ask this Court to characterize their "fact-checks" of Stossel's reporting as opinion.

Had Defendants transparently told the public what they now argue in court — that Defendants were not claiming to evaluate Stossel's work for factual accuracy, but instead were simply expressing "a disagree[ment] on scientific opinion" (Motion at 24) — this lawsuit would not have been filed. Instead, Defendants announced to Facebook's 2.9 billion users that Stossel's news reports had been subjected to fact-checks, and failed. In one instance, Defendants labeled Stossel's reporting "misleading" based on a dubious claim he never made, in a video Science Feedback's reviewers never watched (the Fire Video). In a second instance, Defendants labeled Stossel's report "partly false" despite knowing that it contained not a single false fact (the Alarmism Video). As the publicly-designated partner in fact-checking for the largest social networking site in the world, Science Feedback's declarations of fact carry an imprimatur of authority, and the black marks it placed on Stossel's reporting caused Stossel significant reputational and financial injury.

Stossel freely acknowledges that Defendants have the right to disagree with him about complex and unresolved scientific matters, and to voice opinions that are different from his own. What Defendants may *not* do, is put words in Stossel's mouth and tell the public his reporting is false as a

---

[1] *See* Motion at 11 ("In federal court, where no discovery has occurred, [the probability of prevailing] standard requires the plaintiff to satisfy the pleading standards under Rule 12(b)(6)." (citing *Planned Parenthood Fed'n of Am., Inc. v. Cntr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018))).

Opposition to Motions to Dismiss and Strike                    Case No.  5:21-cv-07385-VKD

1  matter of fact, when what they actually mean is that they have a disagreement with him. Stossel amply

2  states a claim for defamation on these facts.

3        None of Science Feedback's legal defenses change this result. While Science Feedback

4  acknowledges that a Rule 12 standard applies, it improperly attempts to introduce extrinsic evidence to

5  color the Court's view of Stossel and his reporting — for example, to argue that its lies about Stossel's

6  journalism were not disparaging because of Stossel's supposed "pre-existing notoriety for posting

7  controversial subject matter," found nowhere in the four corners of the Complaint. Motion at 14.

8  Stripped away of these tactics, Science Feedback's defenses fail in light of the well-pled facts and law.

9  Nor can Science Feedback seek refuge in California's Correction Statute, which by its terms patently

10  does not apply to Science Feedback's website, and where Stossel has pled both timely demand for

11  correction and special damages, in any case.

12        As Science Feedback's legal defenses are unavailing and Stossel's Complaint clearly pleads

13  sufficient facts to state a plausible defamation claim, Stossel respectfully requests that the Motion be

14  denied in full.

15                 **II.    BACKGROUND**

16  **A.  THE PARTIES**

17        Stossel is a well-respected, award-winning career journalist and reporter who publishes weekly

18  news videos on social media, primarily on the social networking service Facebook, which is operated

19  by Meta. Compl. ¶¶ 23–24. Defendant Science Feedback is a French Association Déclarée and

20  describes itself as a "a worldwide network of scientists sorting fact from fiction in science based media

21  coverage." *Id.* ¶ 25. Defendant Climate Feedback is alleged to be a subsidiary of Science Feedback (*id.*

22  ¶ 26), though the record now confirms that it is actually just a website exclusively owned and

23  controlled by Science Feedback. Dkt. No. 43. at 2.

24        Meta contracts with Science Feedback to "fact-check" content posted by Facebook users.

25  Compl. ¶ 108. Meta tells its users that it has a "fact-checking program" and that its "partners prioritize

26  provably false claims." *Id.* ¶ 30. Defendants jointly developed the defamatory content that is at issue in

27  this case. *Id.* ¶ 107. For example: Meta commissions the fact-checking, and applies content, labels, and

28  other information developed by fact-checkers to its users' speech. *Id.* ¶ 27. Meta intends that viewers

2

read the fact-checkers' content before reading or sharing the content being fact-checked. *Id.* ¶ 34. Meta takes action so that content with certain fact-checking ratings are viewed by significantly fewer people. *Id.* ¶ 35. Meta also restricts pages and websites that share "misinformation." *Id.* ¶ 36.

**B.  THE FIRE VIDEO**

On September 22, 2020, Stossel published on his Facebook page a short news video entitled "Government Fueled Fires" (the "Fire Video"). *Id.* ¶ 37. In the Fire Video, Stossel discussed the forest fires that were ravaging California in 2020, and reported on several reasons cited by politicians, scientists, and environmentalists as the cause of the fires. *Id.* ¶ 38. The Fire Video explored two causes of forest fires: climate change, and the buildup of vegetation due to government policy. *Id.* ¶ 39. In the Fire Video, Stossel repeatedly acknowledged that climate change plays a role in forest fires. *Id.* ¶ 40. He cited data from the Western Regional Climate Center and stated that "climate change has made things worse. California has warmed 3 degrees over 50 years." *Id.*

Shortly after Stossel published the Fire Video, Meta placed a label prominently over or below the Fire Video, stating, "Missing Context. Independent fact-checkers say this information could mislead people," under which was a button stating "See Why." *Id.* ¶ 45. A viewer is then directed to a page on Climate Feedback's website (the "Verdict Page"), which states: "Claim – 'forest fires are caused by poor management. Not by climate change.' Verdict: misleading" (the "Claim"). *Id.* ¶ 47. A reasonable reader who clicked through the various prompts and read the Verdict Page would and did understand Defendants to mean that Stossel had made the allegedly debunked claim. *Id.* ¶ 48. In reality, not only is the "claim" contained nowhere in Stossel's Fire Video, but the video repeatedly confirms the opposite: that climate change is one of cause of forest fires. *Id.* ¶ 49. Defendants flagged Stossel's reporting as failing a "fact-check" and being "misleading" and "missing context," based on their false attribution to Stossel of the statement, "climate change doesn't cause forest fires," a claim that he never made. *Id.* ¶ 53. Stossel later learned that Defendants apparently had not even bothered to watch his Fire Video before condemning it. *Id.* ¶ 58.

**C.  THE ALARMISM VIDEO**

On April 17, 2021, Stossel re-published on his Facebook page another video report he had previously published in November 2019, entitled "Are We Doomed?" (the "Alarmism Video"). *Id.* ¶

3

78. This video questioned claims made by those who Stossel refers to as "environmental alarmists," including claims that hurricanes are getting stronger, that sea level rise poses a catastrophic threat, and that humans will be unable to cope with the effects. *Id.* Shortly after the April 2021 re-publication of the Alarmism Video, Meta placed a label prominently over the video, stating "Partly False Information. Checked by independent fact-checkers," under which was a button stating "See Why." *Id.* ¶ 83. If a user clicks through, she is directed to a page on Climate Feedback's website captioned "[v]ideo promoted by John Stossel for Earth Day relies on incorrect and misleading claims about climate change" (the "'Fact-Check' Page"). *Id.* ¶ 83. Yet the "Fact-Check" Page identified no false facts in Stossel's report. *Id.* ¶ 86. Relying on its faulty conclusions about both of Stossel's video reports, Meta has reduced all distribution of Stossel's video reporting, and has limited the number of individuals who will see his content on Facebook. *Id.* ¶¶ 102–105.

### III.    LEGAL STANDARDS

**A.  MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating a Rule 12(b)(6) motion, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**B.  SPECIAL MOTION TO STRIKE UNDER CALIFORNIA'S ANTI-SLAPP STATUTE**

To prevail on an anti-SLAPP motion to strike, "[s]ection 425.16 posits [] a two-step process for determining whether an action is a SLAPP." *Navellier v. Sletten*, 52 P.3d 703, 708 (Cal. 2002). "First the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* "If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim."



Opposition to Motions to Dismiss and Strike                    Case No.  5:21-cv-07385-VKD

*Id.* For the purpose of this Motion, Stossel is not contesting that Science Feedback satisfies the first prong of protected activity.

Under the second prong, the "plaintiff need only have 'stated and substantiated a legally sufficient claim.'" *Navellier*, 52 P.3d at 708 (quoting *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1123 (1999)). "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Id.* (internal citations omitted).

## IV.     ARGUMENT

## A. STOSSEL'S OBJECTIONS TO SCIENCE FEEDBACK'S REQUEST FOR JUDICIAL NOTICE

Science Feedback mounts a purely legal challenge, correctly pointing out that no discovery has occurred and that Stossel need only satisfy the pleading standards under Rule 12(b)(6) in order to defeat the Motion. *See* Motion at 11. Despite this, Science Feedback improperly asks the Court to consider extrinsic evidence. Specifically, Science Feedback requests that the Court take judicial notice of "a screenshot of Plaintiff's Facebook profile page," and "a webpage explaining Climate Feedback's review process," which are Exhibits 3 and 6 to Science Feedback's counsel's declaration. Request for Judicial Notice at 2.

Relying on extrinsic evidence and taking judicial notice of disputed matters of fact on a motion to dismiss is reversible error. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). Science Feedback relies on the incorporation by reference doctrine, Request for Judicial Notice at 1–2, under which the court *may* consider documents not physically attached to the complaint if their authenticity is not contested and "the plaintiff's complaint necessarily relies on them." *Lee*, 250 F.3d at 688 (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)). Such documents "must be integral to the plaintiff's complaint and dispositive in the dispute, raising the specter that plaintiff failed to incorporate them by reference in the complaint as a means of avoiding Rule 12(b)(6) dismissal." *Hotel Emps. & Rest. Emps. Loc. 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 979 (N.D. Cal. 2005) (citations omitted). Neither Stossel's Facebook profile nor Climate Feedback's *own*

Opposition to Motions to Dismiss and Strike                          Case No.  5:21-cv-07385-VKD

*description* of its review process is integral to the Complaint. The Court should therefore disregard both documents in ruling on the Motion.

## B.  STOSSEL HAS PLED A VIABLE DEFAMATION CLAIM AGAINST CLIMATE FEEDBACK

Stossel has stated a plausible defamation claim against Science Feedback, and, accordingly has also "stated and substantiated a legally sufficient claim" sufficient to defeat Science Feedback's anti-SLAPP motion. *Navellier*, 52 P.3d at 708 (citation omitted). Stossel has shown that Climate Feedback's speech was defamatory in nature and "of and concerning" Stossel. While Stossel was not required to plead special damages because Science Feedback engaged in defamation per se without enjoying the protections of the Corrections Statute, Stossel sufficiently pleaded special damages. Finally, Stossel has pleaded facts showing that Science Feedback acted with actual malice.

### 1.  Climate Feedback's Speech Is Actionable

Science Feedback argues that its speech is not defamatory because: it is not capable of defamatory meaning, it is protected opinion, and/or it is substantially true. Each defense falls apart under an examination of what Science Feedback is actually alleged to have said about Stossel, and in what context, as opposed to how Science Feedback selectively and misleadingly describes its speech.

### a.  Science Feedback's statements are capable of a defamatory meaning

Science Feedback claims that there was nothing defamatory about attributing to a journalist an inaccurate claim that he never made, or stating that his reporting contained falsehoods when it did not. Motion at 13–14. Yet "[f]alse attribution of statements to a person may constitute libel, if the falsity exposes that person to an injury contemplated by the [libel] statute." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (applying California law) (collecting cases). And if a "statement is reasonably susceptible of a defamatory interpretation . . . it is for the jury to decide whether a defamatory meaning was in fact conveyed to the listener or reader." *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1608 (1991), *reh'g denied and opinion modified* (Sept. 6, 1991) (citations omitted).

Stossel has pled sufficient facts for the jury to decide whether Science Feedback's statements about the "misleading" and "partly false" nature of his journalism are defamatory to him, as a career journalist. The statements falsely accuse Stossel of making a claim that he did not make and that his

1    viewership immediately recognized as lacking credibility, and of deceiving readers by including false

2    facts in his reporting. The Complaint alleges that these statements have caused irreparable damage to

3    Stossel's professional reputation and business, including by causing existing viewers to believe that

4    Stossel's reporting is biased and unfair. Compl. ¶¶ 54, 62 at p. 11, n.7 (video at 0:21 seconds:

5    "SHAMEFUL John had all due respect for you till now! What happened to you!!?? Your

6    NEWSWORTHY reporting was always neutral fair to both side[s of] the story was always on mark

7    TILL NOW?!?!?...you['re] SC Fires story was SO RIGHT SIDED UNFAIR even FB tagged it."); *see

8    also id.* ¶ 54 (summarizing negative feedback Stossel received). "[S]tatements [that] either explicitly

9    or implicitly call[] into question [the plaintiff]'s professionalism as a journalist . . . are capable of a

10   defamatory meaning and could reasonably be understood in a defamatory sense." *Houlahan v.*

11   *Freeman Wall Aiello*, 15 F. Supp. 3d 77, 82 (D.D.C. 2014). As harmful as accusations about a

12   journalist's professionalism may be, attacks on a journalist's credibility and veracity are even more

13   damaging. This element is amply met.

14      **b.  Science Feedback's statements are not protected opinion based on disclosed facts**

15      Stossel wholeheartedly agrees with Science Feedback that in evaluating whether a statement is

16   protected opinion, "[c]ontext is key." Motion at 14. The context in this case forecloses a protected

17   opinion defense for a simple reason: Science Feedback told its readers that its statements about Stossel

18   were statements of *fact*, as part of Science Feedback's mission to "sort[] fact from fiction." Compl. ¶

19   25.

20      This conclusion is supported by an application of the reasoning discussed in each of the

21   authorities cited by Science Feedback. *Partington v. Bugliosi* held that "when an author outlines the

22   facts available to him, thus making it clear that the challenged statements represent his own

23   interpretation of those facts and leaving the reader free to draw his own conclusions, those statements

24   are generally protected by the First Amendment." Motion at 14 (*citing Partington*, 56 F.3d 1147,

25   1156–57 (9th Cir. 1995). *Partington* further held that statements are protected when "read in context,

26   they are not statements implying the assertion of objective facts but are instead interpretations of the

27   facts available to both the writer and the reader." *Partington*, 56 F.3d at 1156–57. As Science

28   Feedback notes, the *Partington* court held that because a book about a murder case "outlines [the

7



Opposition to Motions to Dismiss and Strike                              Case No.  5:21-cv-07385-VKD

author's] own version of what took place, a reader would expect him to set forth his personal theories about the facts of the trial and the conduct of those involved in them." Motion at 15 (*citing Partington*, 56 F.3d at 1153). The opposite context exists in this case: far from "making it clear" that their fact-checks represented their conflicting opinions about the data, Defendants told the Facebook public that their statements reflected determinations of objective fact and were the product of a "fact-checking program" that "prioritize[s] provably false claims." Compl. ¶ 30.

Science Feedback's reference to *Moldea v. New York Times Co.*, 22 F.3d 310 (D.C. Cir. 1994) is equally destructive to its protected opinion defense. In *Moldea,* the court considered a *New York Times* book review that was alleged to defame the book's author. Critically — and as Science Feedback misleadingly omits from its discussion — the court noted the "[r]elevance of the [b]ook [r]eview [c]ontext" in the protected opinion analysis, stating that it "involves a context, a book review, in which the allegedly libelous statements were evaluations quintessentially of a type readers expect to find in that genre." *Moldea*, 22 F.3d at 315. The court continued, "[t]he challenged statements in the Times review consist solely of the reviewer's comments on a literary work, and therefore must be judged with an eye toward readers' expectations and understandings of book reviews." *Id.* at 315. It was within the book review context that the court discussed the "breathing space" that Science Feedback raises.

The present context could not be more different. Defendants were not in the business of reviewing books — they were in the business of "sorting fact from fiction" and "prioritiz[ing] provably false claims." Compl. ¶¶ 25, 30. Their readers — the Facebook public — neither understood nor expected that Defendants' labels of Stossel's work were their own opinions, critically because *Defendants themselves* said the opposite was true. No literary criticism "breathing space" exists in this context. Science Feedback's declaration that its self-described fact-checks are really nonactionable "feeling[], belief[], and concern[]" (Motion at 15) is patently ridiculous, as evidenced by the fact that the sole case cited in support is a two-paragraph decision holding that "statements *phrased as feelings* are protected opinion." *County of Toulomne v. Sonora Cmty. Hosp.*, 1 F. App'x 653, 654 (9th Cir. 2001) (citation omitted) (emphasis added). The Complaint amply pleads that Science Feedback's defamatory labels were not "phrased as feelings," but rather as vetted fact.

8

1    Science Feedback's reference to *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113 (C.D.

2   Cal. 1998) further eviscerates its protected opinion defense. *See* Motion at 16. Science Feedback

3   argues that where "the factual referent is disclosed, readers will understand they are getting the

4   author's interpretation of the facts presented," sufficient to render statements nonactionable. *Id.* at 16

5   (*citing Cochran*, 58 F. Supp. 2d at 1123). In *Cochran,* the "factual referent" in question was the

6   "shared public knowledge of the trial, proceedings, theories, and underlying factual allegations" about

7   the infamous O.J. Simpson trial. *Cochran,* 58 F. Supp. 2d at 1122–23. Thus, the average reader of the

8   opinion piece at issue in that case had a deep prior knowledge of the matter, sufficient to allow him or

9   her to understand that the author's statements were opinions, not facts. By contrast here, a Facebook

10  user who saw the "misleading" and "partly false" labels on Stossel's report had no preexisting "factual

11  referent" to enable her to understand that she was getting Defendants' opinions — and what's more,

12  she was expressly *told by Defendants* that the labels were based on an adjudication of fact. And far

13  from *disclosing* the factual referent (i.e., the Stossel videos) to Facebook users, Defendants

14  intentionally reduced all distribution to Stossel's videos after they were labeled, further obscuring any

15  opportunity for a viewer to understand that opinions, rather than facts, were being communicated.

16  Compl. ¶ 102.

17   Science Feedback's opinion defense further fails because opinions are only protected if they

18  are based on fully disclosed facts that are *true. See Standing Comm. on Discipline of U.S. Dist. Court*

19  *for Cent. Dist. Of California v. Yagman,* 55 F.3d 1430, 1439 (9th Cir. 1995) ("A statement of opinion

20  based on fully disclosed facts can be punished only if the stated facts are themselves false and

21  demeaning"). Yet the Complaint alleges that Science Feedback's so-called opinions were based on

22  factual assertions that were themselves false and demeaning. Science Feedback's "opinion" that the

23  Fire Video was "misleading" was based on its false attribution to Stossel of a claim he never made.

24  Science Feedback's "partly false" label was based on the inaccurate assertion that the Alarmism Video

25  contained "factual inaccuracies." Thus, for this additional reason, a protected opinion defense fails.

26   Science Feedback's comparison of this case to *Owens v. Lead Stories, LLC*, No. CV S20C-10-

27  016 CAK, 2021 WL 3076686 (Del. Super. Ct. July 20, 2021), is unavailing. Motion at 16. In *Owens*,

28  the court rejected defamation claims brought by political commentator Candace Owens when a fact-

9



1    checker labeled her posts after "point[ing] out factual inaccuracies" in them. *Owens*, 2021 WL

2    3076686, at *14. By stark contrast here, Science Feedback did not and could not identify any

3    falsehoods in Stossel's videos. Science Feedback nonetheless applied fact-checking labels falsely

4    accusing Stossel of making a claim he did not make, and of publishing inaccurate reporting.

5          For all of these reasons, there is no protected opinion defense available to Science Feedback.

6    Allowing Science Feedback to hide behind this defense in the context of this case would make a

7    mockery of the logic behind the protected opinion defense, and open floodgates for social media

8    platforms to silence speech using false fact-checking labels with dangerous ramifications to speech on

9    these platforms.

10          **c.  Science Feedback's statements are not substantially true**

11          The Complaint plainly alleges that Science Feedback defamed him by falsely attributing to him

12   a claim ("forest fires are caused by poor management. Not by climate change") that he did not make.

13   Compl. ¶ 116. That Science Feedback put words in Stossel's mouth is provably false; there is no

14   "substantial truth" to it. Science Feedback's recitations concerning the process by which its scientists

15   conducted their analysis of particular data pertaining to the causes of forest fires do not change the fact

16   that Science Feedback made a materially false statement by attributing to Stossel a false claim he

17   never made, nor does Science Feedback directly address this simple reality in its Motion.

18          The analysis is equally straightforward for the Alarmism Video: Science Feedback labeled the

19   report as "partly false" and containing "factual inaccuracies," without identifying any false facts in the

20   report. Compl. ¶ 86. These statements are provably false; there is no "substantial truth" to them.

21   Science Feedback's Motion attempts to take the Court beyond a Rule 12 standard by arguing about the

22   conclusions it reached about underlying scientific data (while still being unable to point to any false

23   statement in the Alarmism Video), which of course are factual issues improperly resolved at this stage.

24   The Complaint amply pleads falsity.

25          **2.  Science Feedback's Speech Was "Of and Concerning" Stossel**

26          The Court should reject Science Feedback's argument that attacks on Stossel's credibility as a

27   journalist were not "of and concerning" Stossel. Both videos were of Stossel's reporting, were posted

28   on Stossel's Facebook page, included reference to his name in the bottom left corner, and were

Opposition to Motions to Dismiss and Strike                    Case No.  5:21-cv-07385-VKD

1    understood by readers to be about his reporting. Compl. ¶¶ 37, 45 (see graphic), 54, 78, 83 (see

2    graphic). Science Feedback's statements referred personally to Stossel, both "by name [and] by clear

3    implication." *Ferlauto v. Hamsher,* 74 Cal. App. 4th 1394, 1404 (1999).

4          Science Feedback argues that it was attacking Stossel's sources, not Stossel, relying on the

5    Ninth Circuit's statement that "the credibility of a journalist's source is a separate inquiry from the

6    credibility of the journalist himself." Motion at 19 (citing *Newton v. Nat'l Broad. Co.*, 930 F.2d 662,

7    683 (9th Cir. 1990)). But *Newton* is wholly inapposite because it dealt with a defamation claim *against*

8    a journalist, who claimed to rely on information provided by a source. *Newton*, 930 F.2d at 683. The

9    second clause of the *Newton* court's holding (which Science Feedback ignores) is: "we apply a

10   heightened review to the evidence regarding whether the publisher was reckless or knowingly false

11   when he relied upon information provided by his source." *Id.* Thus, *Newton* in no way stands for the

12   proposition that attacks on the veracity of journalistic output are not "of and concerning" the journalist.

13         Instead, the "of and concerning" requirement "derives from the First Amendment and specifies

14   the statement must relate to the plaintiff 'by name or by 'clear implication.'" *Henley v. Jacobs*, No. C

15   18-2244 SBA, 2019 WL 8333524, at *7 (N.D. Cal. Aug. 2, 2019) (quoting *Ferlauto*, 74 Cal. App. 4th

16   at 1404)). Courts examine whether a statement is about a "small group [with] easily ascertainable"

17   members or about a large group exceeding twenty-five members. *Id.* (citations omitted). The "of and

18   concerning" requirement denies recovery to "to those who merely complain of nonspecific statements"

19   without being "identified, either expressly or by clear implication." *Gallagher v. Philipps*, No. 20-CV-

20   993 JLS (BLM), 2021 WL 4428996, at *20 (S.D. Cal. Sept. 27, 2021) (citing *Blatty v. N.Y. Times Co.*,

21   42 Cal. 3d 1033, 1044 (1986)). Science Feedback's "fact-checks" unquestionably are "of and

22   concerning" Stossel because they imply that Stossel, a professional journalist, peddles falsehoods.

23         **3.  Science Feedback Engaged in Libel Per Se**

24         The Court should reject Science Feedback's argument that Stossel fails to allege libel per se

25   because an attack on a journalist's credibility and veracity is plainly libelous without any knowledge

26   of outside fact. Under California law, the distinction between libel per se and libel per quod is

27   statutory. *See* Cal. Civ. Code § 45a ("A libel which is defamatory of the plaintiff without the necessity

28   of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on

1    its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and

2    proves that he has suffered special damage as a proximate result thereof."). The test is whether a

3    defamatory meaning appears from the language itself without the necessity of explanation or the

4    pleading of extrinsic facts." *Barnes-Hind, Inc. v. Superior Ct.*, 181 Cal. App. 3d 377, 384–85 (1986).

5    "If . . . a reader would perceive a defamatory meaning without extrinsic aid beyond his or her own

6    intelligence and common sense, then . . . there is a libel per se." *Id.* at 386–87. (Stossel did indeed

7    plead special damages, so his claim survives regardless. *See* Section IV.B.5, *infra*.)

8            There are no outside facts to which a reader must be privy in order to glean the defamatory

9    meaning of Science Feedback's speech. Readers who come upon Stossel's videos see the "missing

10   context" and "partly false" fact-checking labels affixed to the Fire Video and the Alarmism Video. The

11   implication is glaringly obvious: that a reader should not trust Stossel's videos to be truthful. Science

12   Feedback's argument that a reader must "attribute certain statements of [Stossel]'s sources to

13   [Stossel]" in order for there to be a defamatory meaning, Motion at 20, misses the point entirely: a

14   reader who sees the fact-checking label affixed to either video will necessarily infer the defamatory

15   meaning, *even without watching the video*. The defamatory meaning — that Stossel's reporting is not

16   credible — is per se libelous. *See AK Futures v. Limitless Trading Co., LLC*, No.

17   SACV21CV01154JVSADSX, 2021 WL 5238588, at *4 (C.D. Cal. Oct. 6, 2021) ("[Defendant] is

18   accusing [Plaintiff] of selling fake products. No extrinsic information is required to understand that

19   meaning. Accusations that a company is selling fake products, an act of dishonesty, has a natural

20   tendency to injure its business reputation." (citation omitted)).

21           Science Feedback relies on *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876 (N.D. Cal., 2015),

22   Motion at 20, but *Song fi* actually highlights why Science Feedback *did* engage in defamation per se.

23   In *Song fi*, the court explained that when YouTube published a notice that a "video has been removed

24   because its content violated YouTube's Terms of Service," an "average reader" could only appreciate

25   the alleged defamatory meaning of the notice if "the average viewer knew that pornography and

26   obscenity, among other things, were prohibited by YouTube's Terms of Service," and the "Terms of

27   Service and their prohibitions are not 'matters of common knowledge rationally attributable to all

28   reasonable persons.'" *Song fi Inc.*, 108 F. Supp. 3d at 888–89 (citation omitted). Again, a reader need

                                                          12



1   not even watch Stossel's video, let alone read a separate extrinsic document, to understand that

2   Science Feedback defamed Stossel through its fact-checking labels.

3       **4.   California's Correction Statute Does Not Bar Stossel's Claim**

4       Science Feedback attempts to seek refuge in California's Correction Statute, which limits a

5   plaintiff to special damages in "any action for damages for the publication of a libel in a daily or

6   weekly news publication, or of a slander by radio broadcast," unless a notice and demand for

7   correction is served upon the publisher within "20 days after knowledge of the publication or

8   broadcast." Cal. Civ. Code § 48a(a). The Correction Statute has no effect on Stossel's claim because

9   Science Feedback is not a type of publication that the Correction Statute protects. Even if the

10   Corrections Statute applied, Stossel nonetheless complied with it. And in any event, Stossel pleaded

11   special damages. *See* Section IV.B.5, *infra*.

12       **a.   The Corrections Statute does not apply to Science Feedback**

13       Climate Feedback is a "fact-checking website[]." Compl. ¶ 25. The Corrections Statute defines

14   "[d]aily or weekly news publication" as "a publication, either in print or electronic form, that contains

15   *news* on matters of public concern and that publishes at least once a week." Cal. Civ. Code § 48a(d)(5)

16   (emphasis added). Science Feedback relies on the legislative history of the statute and case law

17   interpreting the journalist's Shield Law in order to argue that the Corrections Statute should cover

18   Climate Feedback because it gathers a "particular kind of information." Motion at 22.

19       The word "news," however, is not mere surplusage, and, as the legislative history of the

20   Corrections Statute reveals, is an integral part of the statute. Indeed, Assembly Bill 998 (which created

21   the Corrections Statute) stated that its intent was to protect online publications that "perform the same

22   news-disseminating function as a daily newspaper." A.B. 998 § 1, 2015 Leg. (Cal. 2015) (Dkt. No. 50-

23   8 at 2). The legislature's intent was to "protect enterprises engaged in the *immediate dissemination of*

24   *news* on matters of public concern, insofar as time constraints do not reasonably permit such

25   enterprises to check sources for accuracy and stories for inadvertent error." *Id.* (emphasis added). The

26   Senate Judiciary Committee's report confirms that protection should "extend to online publications

27   and weekly newspapers, which publish *breaking news on deadlines indistinguishable from daily*

28   *newspapers*." S. Rep. A.B. 998 at 6 (Cal. 2015) (Dkt. No. 50-8 at 11) (emphasis added). And the

1    Assembly Judiciary Committee's report explains that the policy rationale for the limitation in the

2    Corrections Statute "is that a publication should verify factual allegations before publishing, *unless*

3    they operate under deadline pressures that make verifying every fact and correcting every inadvertent

4    error impracticable." A. Rep. A.B. 998 at 6 (Cal. 2015) (Dkt. No. 50-8 at 16).

5            Science Feedback does not engage in the immediate dissemination of breaking news operating

6    on deadlines similar to daily newspapers. Instead, by its own admissions, "Climate Feedback editors

7    select certain broad claims that are gaining traction on social media and subsequently turn to their

8    network of outside experts and scientists," who then "review and comment on the article," after which

9    "a Climate Feedback editor summarizes the findings and publishes the findings in an article[.]" Motion

10   at 4. Science Feedback's work, in short, is nothing like the publications the Correction Statute protects.

11   Science Feedback does not report *news*, and certainly does not do so on an immediate basis. At a

12   minimum, whether Science Feedback is protected by the Correction Statute requires factual analysis

13   beyond the four corners of the Complaint that would be inappropriate at this stage.

14           **b. Stossel complied with the Corrections Statute**

15           Even if the Court were to find that a website that published articles "fact-checking" others'

16   statements (or as in this case, statements not actually made) was a news publication under the

17   Correction Statute, Stossel nonetheless alleges facts showing that he complied with the Correction

18   Statute. Stossel "made significant efforts to bring to Defendants' attention the falsity of their

19   statements about the Fire Video[.]" Compl. ¶ 59. These efforts included emailing Climate Feedback

20   editor, Nikki Forrester, about the falsity of the label, with no response (*id.*);[2] speaking with two of the

21   three designated scientist reviewers for Climate Feedback about the falsity of the label, without any

22   correction (*id.* ¶ 60); and again emailing Ms. Forrester to "repeat[] the request that Defendants' false

23   attribution and associated false labels be corrected," to no avail. *Id.* ¶ 67. Incredibly, after all of these

24   correction demand efforts, Climate Feedback not only failed to correct, but doubled down by

25   publishing a Response Page that *blamed* Stossel for having contacting its editor and scientist reviewers

26   _____

27   [2] Should the Court require, Stossel can amend to plead *additional* facts showing compliance with the
     Correction Statute, including that the president of Stossel TV sent an email on September 29, 2020

28   (just seven days after the Fire Video was published) to Climate Feedback editor Nikki Forrester
     stating, "we would appreciate your help in getting [the fact check warning] removed."

Opposition to Motions to Dismiss and Strike          Case No.  5:21-cv-07385-VKD

1   to demand corrections. *Id.* ¶ 74. Stossel took equal efforts to obtain correction of his Alarmism Video,

2   also to no avail. *See id.* ¶¶ 92–93.

3       **5. Stossel Pleads Special Damages**

4       Stossel is not required to plead special damages: he stated a claim for defamation per se that is

5   not subject to the Correction Statute. Even if the Court disagrees with Stossel as to either point,

6   Stossel's defamation claim is still actionable because he sufficiently alleges facts showing special

7   damages. In the Correction Statute, the legislature defined special damages as "all damages that

8   plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade,

9   profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she

10  has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a(d)(2); *see also* §

11  45(a) ("Special damage is defined in Section 48a of this code."). "'[A] business loss suffered by the

12  plaintiff as a result of damage to her reputation' is 'the classical definition of special damage in

13  a defamation case.'" *Gallagher v. Philipps*, No. 20-CV-993 JLS (BLM), 2021 WL 4428996, at *16

14  (S.D. Cal. Sept. 27, 2021) (quoting *O'Hara v. Storer Commc'ns, Inc.*, 231 Cal. App. 3d 1101, 1112

15  (1991)) (brackets in original).

16      Stossel alleges that his "business model has relied on reaching audiences through social media

17  platforms," and that as a result of the defamatory fact-checks, "Facebook has reduced *all* distribution

18  of Stossel's video reporting, and has limited the number of individuals who will see his content on

19  Facebook." Compl. ¶¶ 101–02. Science Feedback's defamation therefore harmed Stossel in the form

20  of "reduced distribution of his reporting, reduced viewership, and reduced profits from advertising

21  revenue from his viewership." *Id.* ¶ 103. Indeed, after Science Feedback defamed Stossel with its fact-

22  check of the Alarmism Video, Stossel's advertising revenue fell from "approximately $10,000 a month

23  to approximately $5,500 a month" because of the "dramatic drop in both views of that video and all

24  Stossel's other videos[.]" *Id.* ¶ 105. Stossel further lost advertising revenue he would have earned from

25  the Fire Video, which had already accumulated 1.2 million views before Stossel was defamed. Stossel

26  therefore sufficiently states entitlement to special damages. *See Kanarek v. Bugliosi*, 108 Cal. App. 3d

27  327, 337 (1980) ("Plaintiff's pleading of a reduction in the number of new clients and a loss of clients

28  is a sufficient pleading of special damages for purposes of Civil Code section 48a."). And contrary to

15

1   Science Feedback's argument, Stossel alleges that Science Feedback's defamation was the proximate

2   cause of these damages as its defamatory statements directly resulted in the throttling of Stossel's

3   Facebook page, and the subsequent decline in views and advertising revenue.

4       **6.   Stossel Alleges Actual Malice**

5       Stossel further satisfies the constitutional standard of actual malice. Presuming for the sake of

6   Science Feedback's Motion that Stossel is a public figure or limited purpose public figure, to prove a

7   defamation claim he must prove actual malice under the standard first articulated in *New York Times*

8   *Co. v. Sullivan*, 376 U.S. 254 (1964). "In this context, a defendant acts with 'actual malice' when

9   publishing a knowingly false statement or where he 'entertained serious doubts as to [its] truth.'"

10  *Christian Research Institute v. Alnor*, 148 Cal. App. 4th 71, 81 (2007) (quoting *Reader's Digest Ass'n*

11  *v. Superior Ct.*, 37 Cal. 3d 244, 256 (1984)). Further, a plaintiff can establish actual malice by

12  "showing that the defendant lacked reasonable ground for belief in the truth of the publication[.]"

13  *MacKinnon v. Logitech Inc.*, Civ. No. 15-cv-05231-TEH, 2016 WL 2897661, at *4 (N.D. Cal. May 8,

14  2016).

15      Stossel alleges facts making it clear that Science Feedback acted recklessly (at least) and

16  without a reasonable basis when it affixed its defamatory labels to Stossel's content. Science Feedback

17  attributed to him a claim he never made in the Fire Video (i.e., that climate change does not cause

18  forest fires), and on this sole, faulty ground, it was labeled, "missing context." Compl. ¶ 45. Science

19  Feedback lacked reasonable grounds for belief in the truth of its statements, including because it failed

20  to identify any false facts in Stossel's report, *id.* ¶ 70, and did not bother even to watch the Fire Video

21  before publishing its false attribution and label. *Id.* ¶¶ 58, 60. Indeed, Science Feedback — including

22  via Climate Feedback scientist reviewers Stefan Doerr and Zeke Hausfather — conceded that its

23  statements were *not* fairly applied to the Fire Video, *id.* ¶ 62, and further conceded that "if this [the

24  label] is implying that we have reviewed the video, then this is clearly wrong, there's something wrong

25  with the system." *Id.* ¶ 60–61. Yet despite all of this, after Stossel's agent asked Defendants to correct

26  the false attribution and label — including via a request he made to Climate Feedback editor Nikki

27  Forrester — Defendants refused to correct their mistakes. *Id.* ¶¶ 67–68. These allegations amply

28

Opposition to Motions to Dismiss and Strike                    Case No.  5:21-cv-07385-VKD

1  establish malice, as Science Feedback published (and continues to publish) false statements, either

2  knowing them to be false or lacking a reasonable ground for belief in their truth.

3      Stossel alleges that Science Feedback labeled the Alarmism Video as "partly false" without

4  identifying a single false fact in Stossel's report. Compl. ¶¶ 85–86. Science Feedback's own scientist

5  reviewers conceded that their label was wrongly applied to Stossel's report, including by confirming

6  that the label was *not* based on "specific 'facts' being 'wrong'" but instead was applied because

7  "broader claims are being disputed" and Stossel's reports apparently had the wrong "ton[e]," and by

8  acknowledging that "it's wrong [Stossel was] criticized" for reciting a true fact about observed trends

9  in hurricane strength. *Id.* ¶¶ 92–95. Once again, Science Feedback failed to remove their false label,

10 after being notified of its falsity.  *Id.* ¶¶ 96–100. These allegations are sufficient to establish malice on

11 a Rule 12 posture, as it is well-pled that Science Feedback published false statements, either knowing

12 them to be false or lacking a reasonable ground for belief in their truth.

13     Science Feedback's arguments regarding actual malice miss the point entirely. This is not a

14 lawsuit about a "disagree[ment] on scientific opinion." Motion at 24 (internal quotation marks

15 omitted). Thus, Science Feedback's arguments about the scholastic quality of its fact-checking articles

16 are totally irrelevant. Science Feedback has every right to disagree with Stossel about complex and

17 unresolved scientific matters. The problem is that Science Feedback imposed negative fact-checks to

18 Stossel's content based on claims he did not make in a video its reviewers did not watch (the Fire

19 Video), and without identifying a single misstatement of fact (the Alarmism Video). In an effort to

20 distract from its recklessness in mislabeling a video before watching it (a fact that is addressed

21 nowhere in Science Feedback's actual malice section), Science Feedback instead editorializes about

22 the quality of its reviews and its thoroughness in writing them. Even if the Court were to go beyond

23 the four corners of the Complaint to consider outside facts about Science Feedback's review process,

24 which it should not, it was nonetheless reckless of Science Feedback to deem the Fire Video "missing

25 context" before watching it and after acknowledging that the label was improper, and reckless to deem

26 the Alarmism Video "partly false" despite being unable (and remaining unable) to point to a single

27 misstatement of fact therein.

28 //

**DLG**
DHILLON LAW GROUP INC.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff John Stossel respectfully requests that the Court deny Science Feedback's Motion to Dismiss and Anti-SLAPP Motion, in full. If the Court grants Science Feedback's Motion in any part, Stossel asks the Court for leave to amend to cure any pleading deficiencies.


Respectfully submitted,

Date: February 28, 2022                    DHILLON LAW GROUP INC.

                          By: /s/ Krista L. Baughman
                              KRISTA L. BAUGHMAN
                              HARMEET K. DHILLON
                              JESSE FRANKLIN-MURDOCK
                              DHILLON LAW GROUP INC.
                              177 Post Street, Suite 700
                              San Francisco, California 94108
                              Telephone: (415) 433-1700
                              Attorneys for Plaintiff John Stossel



Opposition to Motions to Dismiss and Strike                    Case No.  5:21-cv-07385-VKD

**CERTIFICATE OF SERVICE**

I, Krista L. Baughman, hereby certify that on February 28, 2022, I electronically filed the above document with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel.

Dated: February 28, 2022                          By:   /s/ Krista L. Baughman
                                                             Krista L. Baughman

Opposition to Motions to Dismiss and Strike                          Case No.  5:21-cv-07385-VKD