| | |
|---|---|
| 1 | THOMAS R. BURKE (State Bar No. 141930) |
| |   thomasburke@dwt.com |
| 2 | DAVIS WRIGHT TREMAINE LLP |
| | 505 Montgomery Street, Suite 800 |
| 3 | San Francisco, California 94111-6533 |
| | Telephone:(415) 276-6500 |
| 4 | Facsimile:(415) 276-6599 |
| 5 | SELINA MACLAREN (State Bar No. 300001) |
| |   selinamaclaren@dwt.com |
| 6 | ABIGAIL ZEITLIN (State Bar No. 311711) |
| |   abigailzeitlin@dwt.com |
| 7 | DAVIS WRIGHT TREMAINE LLP |
| | 865 South Figueroa Street, 24th Floor |
| 8 | Los Angeles, California 90017-2566 |
| | Telephone: (213) 633-6800 |
| 9 | Fax: (213) 633-6899 |
| 10 | *Attorneys for Defendant* |
| | SCIENCE FEEDBACK |
| 11 | (erroneously sued as "Science Feedback and Climate Feedback") |

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN STOSSEL, an individual, | Case No. 5:21-cv-07385 |
| Plaintiff, | Assigned to the Hon. Virginia K. DeMarchi |
| v. | **DEFENDANT SCIENCE FEEDBACK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6), AND SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE, CODE CIV. PROC. § 425.16** |
| FACEBOOK, INC., a Delaware corporation; SCIENCE FEEDBACK, a French non-profit organization; and CLIMATE FEEDBACK, a French non-profit organization, | |
| Defendants. | |
| | Date: April 12, 2022 <br> Time: 10:00 AM <br> Courtroom: 2 |
| | Action Filed: September 22, 2021 |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT .......................................................................................................... 2

    A. Defendant's Request for Judicial Notice is Proper. ................................... 2

    B. Plaintiff Cannot Show a Probability of Prevailing on His Claims. ............. 2

        1. The Statements At Issue Are Not Actionable. ................................ 3

        2. The Identified Statements Are Not "Of and Concerning" Plaintiff. ......................................................................................... 10

        3. Plaintiff Does Not Allege Libel Per Se, or Plead Special Damages. ....................................................................................... 11

        4. The Complaint Should Be Stricken Because Plaintiff's Claim Is Barred By The Correction Statute. ............................................ 12

        5. Plaintiff Fails to Allege Actual Malice. ........................................ 13

III. CONCLUSION ..................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bose Corp. v. Consumer Union of U.S., Inc.*,
    466 U.S. 485 (1984) .................................................................................................................. 13

*Campanelli v. Regents of Univ. of Cal.*,
    44 Cal. App. 4th 572 (1996) ...................................................................................................... 7

*Carnett v. WBBJ-TV*,
    No. 14-1309-JDT-egb, 2015 WL 10714008 (W.D. Tenn. Sept. 25, 2015) ............................... 4

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014) ...................................................................................................... 4

*Cochran v. NYP Holdings, Inc.*,
    58 F. Supp. 2d 1113 (C.D. Cal. 1998) ....................................................................................... 7

*Collins v. Purdue Univ.*,
    703 F. Supp. 2d 862 (N.D. Ind. 2010) ....................................................................................... 4

*County of Tuolumne v. Sonora Community Hospital*,
    1 F. App'x 653 (9th Cir. 2001) .................................................................................................. 7

*Dworkin v. Hustler Mag. Inc.*,
    867 F.2d 1188 (9th Cir. 1989) ................................................................................................... 6

*Field Research Corp. v. Super. Ct.*,
    71 Cal.2d 110 (1969) ............................................................................................................... 12

*Freedom Newspapers, Inc. v. Super. Ct.*,
    4 Cal. 4th 652 (1992) ............................................................................................................... 12

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021), *reh'g & reh'g en banc denied*,
    21 F.4th 665 (9th Cir. 2022) ...................................................................................................... 4

*Hayes v. Facebook*,
    No. 19-cv-02106-TSH, 2019 WL 5088805 (N.D. Cal. Aug. 15, 2019), *R. & R. adopted*, No. 19-cv-02106-HSG, 2019 WL 5091162 (N.D. Cal. Sept. 5, 2019) .................... 11

*Hotel Emps. & Rest. Emps. Local 2 v. Vista Inn Mgmt. Co.*,
    393 F. Supp. 2d 972 (N.D. Cal. 2005) ....................................................................................... 2

*Hupp v. Freedom Commc'ns, Inc.*,
    221 Cal. App. 4th 398 (2013) .................................................................................................... 4

*Song fi Inc. v. Google, Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ............................................................................ 3

*Koch v. Goldway*,
   817 F.2d 507 (9th Cir. 1987) ........................................................................................... 7

*Lewis v. Time, Inc.*,
   710 F.2d 549 (9th Cir. 1983) ........................................................................................... 7

*MacKinnon v. Logitech Inc.*,
   No. 15-cv-05231-TEH, 2016 WL 2897661 (N.D. Cal. May 18, 2016) .................................. 13

*Masson v. New Yorker Mag., Inc.*,
   960 F.2d 896 (9th Cir. 1992) ......................................................................................... 15

*Moldea v. New York Times Co.*,
   22 F.3d 310 (D.C. Cir. 1994) ........................................................................................... 6

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ............................................................................................... 13, 15

*Newton v. Nat'l Broad. Co.*,
   930 F.2d 662 (9th Cir. 1990) ......................................................................................... 10

*Nygard, Inc. v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027 (2008) ......................................................................................... 7

*O'Grady v. Superior Court*,
   139 Cal. App. 4th 1423 (2006) ....................................................................................... 12

*Obsidian Fin. Grp., LLC v. Cox*,
   740 F.3d 1284 (9th Cir. 2014) ......................................................................................... 7

*Owens v. Lead Stories, LLC*,
   No. CV S20C-10-016 CAK, 2021 WL 3076686 (Del. Super. Ct. July 20,
   2021), *aff'd*, No. 253, 2021, 2022 WL 521388 (Del. Feb. 22, 2022) ................................ 8, 9

*Partington v. Bugliosi*,
   56 F. 3d 1147 (9th Cir. 1995) ....................................................................................... 5, 6

*Peak Health Ctr. v. Dorfman*,
   No. 19-CV-04145-VKD, 2019 WL 5893188 (N.D. Cal. Nov. 12, 2019) .............................. 11

*Pridonoff v. Balokovich*,
   36 Cal. 2d 788 (1951) ................................................................................................... 11

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
   302 F. Supp. 3d 1005 (N.D. Cal. 2017) ............................................................................ 8

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
   No. 17-CV-02824, 2019 WL 281370 (N.D. Cal. Jan. 22, 2019) .......................................... 6

*Shelton v. Bauer Publ'g Co.*,
   No. 2:15-cv-09057-CAS, 2016 WL 1574025 (C.D. Cal. Apr. 18, 2016) ............................... 13

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ........................................................................................................... 15

*Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995) .......................................................................................... 7, 8

**Statutes**

26 U.S.C. § 48a ........................................................................................................................ 12

47 U.S.C. § 230 .......................................................................................................................... 4

California Civil Code § 45 ......................................................................................................... 5

California Civil Procedure Code § 425.16(b)(1) ....................................................................... 3

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 1

**Constitutional Provisions**

U.S. Const. amend. I ................................................................................................................. 5

I.     INTRODUCTION

In his Opposition Brief ("Opposition") to Defendant Science Feedback's Motion to Dismiss the Complaint ("Motion"), Plaintiff engages in obfuscation and unnecessary complication to distract from the fatal flaws in his defamation action. In many instances, Plaintiff does not directly address the points made by Science Feedback, and instead discusses ancillary and irrelevant points to avoid the reality that Plaintiff's claims do not meet the required elements to state a claim for defamation. Plaintiff also simply ignores facts that are inconvenient to his argument.

Equally telling as what Plaintiff contests is what Plaintiff concedes. Plaintiff concedes—as he must—that the anti-SLAPP statute applies here leaving the Court only to decide whether he has demonstrated a probability of prevailing against Science Feedback, under the Rule 12(b)(6) standard. He concedes that he is a public figure who must satisfy the high burden of showing constitutional actual malice in order to succeed on his claims. This alone ends the action, because Plaintiff's only allegations supporting knowledge of falsity or reckless disregard of the truth are that Plaintiff interviewed two scientists who, he alleges, agreed with him, and Plaintiff (allegedly) notified Science Feedback that he did not believe the Articles were true. These factual allegations pale in comparison to the rigorous, peer-reviewed scientific research relied upon and cited in the Articles, which Plaintiff ignores. Plaintiff faces a hurdle he cannot overcome: Science Feedback had no reason to doubt the veracity of the challenged Statements.

Even putting actual malice aside, Plaintiff fails to plead a viable defamation claim for a number of other, independent reasons. *First*, the Statements at issue are not capable of a defamatory meaning because they do not subject Plaintiff to scorn, hatred, ridicule or obloquy any more than the underlying videos themselves might. *Second*, the Statements concern Plaintiff's videos, not Plaintiff himself. *Third*, by repeatedly emphasizing how readers would infer negative judgments about the quality of his journalism from the Articles, Plaintiff effectively concedes that his is a claim for defamation by implication, but he does not plead special damages as required to support such a claim. Indeed, any damages he identifies to his viewership or advertising revenue can again be attributed to the videos themselves, or a myriad

1
REPLY ISO MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385
4876-9543-1186v.5 0117048-000004

of other factors, rendering his alleged special damages claims far too speculative to rescue his claims as a matter of law. *Fourth*, Plaintiff cannot outmaneuver the corrections statute by insisting that it only applies to "breaking news" publications. Not so. Further, Plaintiff fails to demonstrate that he complied with the requirements of this statute, citing only to isolated or untimely instances of contacting the wrong people, *i.e.*, not the publisher, owner, or operator of the Climate Feedback website. Each of these flaws independently bars Plaintiff's claims, which should be dismissed with prejudice.

## II.     ARGUMENT

### A.     Defendant's Request for Judicial Notice is Proper.

As Plaintiff correctly notes, the incorporation-by-reference doctrine allows the Court to take judicial notice of any documents that are "integral to the plaintiff's complaint" and "dispositive in the dispute." *See* Opp. at 5 (citing *Hotel Emps. & Rest. Emps. Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 979 (N.D. Cal. 2005)). Both Climate Feedback's website and Stossel's Facebook page are integral to the Complaint as the allegedly defamatory statements appear on one, and the subjects of the alleged defamation appear on the other. Indeed, Plaintiff cannot credibly dispute that Climate Feedback's website describing its fact-checking process is not integral to his Complaint given that his Complaint contains a section entitled "Defendants' 'Fact-Checking' Process" (Compl. at 6); repeatedly cites Climate Feedback's website, climatefeedback.org (*e.g.*, Compl. ¶ 47; 5 n.2; 9 n.6; 12 n.8); and discusses Climate Feedback's fact-checking process at length (*e.g.*, Compl. ¶¶ 58-75). Plaintiff's Facebook page is clearly integral to the Complaint because it is where Plaintiff published the videos at the heart of this suit. Compl. at 7 n.5; 14 n.4. Accordingly, the Court may consider these documents in ruling on the Motion.

### B.     Plaintiff Cannot Show a Probability of Prevailing on His Claims.[1]

Plaintiff's Opposition uses a litany of tactics to avoid actually answering the fundamental question of whether the statements identified in the Complaint meet the necessary requirements

---

[1] Plaintiff does not contest that the anti-SLAPP statute applies to his Complaint and admits that Defendant "satisfies the first prong of protected activity." Opp. at 4-5. Accordingly, this Reply

2
REPLY ISO MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385
4876-9543-1186v.5 0117048-000004

to state a claim for defamation. Specifically, Plaintiff's Opposition cites to third-party comments, attempts to conjure statements that Science Feedback did not make, ignores the sources and citations in the Articles, and relies on frivolous distinctions in the case law. This is all smoke and mirrors and, in essence, creates much ado about nothing. Plaintiff has not identified any materially false statements of fact published by Defendant that are actionable for defamation, does not show how any alleged statements are "of and concerning" Plaintiff, does not allege libel per se or special damages, does not allege proper compliance with California's correction statute, and fails to allege that Defendant acted with constitutional malice. Everything else cited in Plaintiff's Opposition is extraneous and only serves to distract from the fact that Plaintiff has not met his burden as a matter of law.

### 1. The Statements At Issue Are Not Actionable.

The Opposition attempts to expand the universe of content that is properly attributable to Science Feedback for the purposes of surviving the Motion. However, the Complaint identifies only two allegedly defamatory statements attributable to Climate Feedback: (1) that it is "misleading," as a general matter, for the Fire Video to claim that forest fires are not caused by climate change but by poor forest management by the government; and (2) that a majority of Climate Feedback's scientist reviewers tagged the Alarmism Video as "Flawed reasoning, Inaccurate, Misleading" (the "Statements"). Any other discussion is extraneous to whether these two statements are actionable for defamation. For the reasons discussed below, they are not.

#### a. The Statements Are Not Capable Of A Defamatory Meaning.

In his Opposition, Plaintiff makes the conclusory argument that Science Feedback's statements "falsely accuse Stossel of making a claim that he did not make" and these amount to accusations about Stossel's "professionalism." Opp. at 6-7. However, neither of the statements identified in the Complaint mention Plaintiff, his career as a journalist, or his professionalism. Instead, they concerned the credibility of the videos themselves. *Accord Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 888 (N.D. Cal. 2015) (finding that it was not libelous per se to place a

---

brief only addresses the second prong of the anti-SLAPP analysis—probability of prevailing. Cal. Civ. Proc. Code § 425.16(b)(1).

3
REPLY ISO MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385
4876-9543-1186v.5 0117048-000004

notice on a YouTube video stating that the video had been removed, because defamatory meaning was "not discernable from the face of the publication," and average viewer would need to be familiar with YouTube's Terms of Service to conclude that the notice implied that plaintiff's video was indecent (citation and internal quotation marks omitted)).  Try as Plaintiff repeatedly does, he cannot establish defamatory meaning by conflating criticism of the statements in his videos with criticism of himself.  *Accord Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014) ("[T]he statement must do more than cause discomfort or affront; the statement is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject.").

Moreover, Plaintiff's entire argument on defamatory meaning rests solely on *third-party* comments on his video that gave "negative feedback" about Plaintiff.  Opp. at 7.  These comments clearly are not attributable to Science Feedback, and Plaintiff does not and cannot allege that Science Feedback played any role in these third-party authored statements.  Indeed, it is well-established that publishers like Science Feedback cannot be held liable for reader comments on their stories.  *See, e.g.*, *Gonzalez v. Google LLC*, 2 F.4th 871, 886 (9th Cir. 2021) (discussing Section 230), *reh'g & reh'g en banc denied*, 21 F.4th 665 (9th Cir. 2022); *Hupp v. Freedom Commc'ns, Inc.*, 221 Cal. App. 4th 398, 404-05 (2013) (SLAPP motion granted; Section 230 immunized news site against claim based on reader comments on article); *Collins v. Purdue Univ.*, 703 F. Supp. 2d 862, 880 (N.D. Ind. 2010) (publisher immune from liability based on reader comments on its website); *Carnett v. WBBJ-TV*, No. 14-1309-JDT-egb, 2015 WL 10714008, at *2 (W.D. Tenn. Sept. 25, 2015) (same for third party comments on website and Facebook page).

In addition, although the user comments cited by Plaintiff are wholly irrelevant to Science Feedback's liability, it bears noting that they are reactions to the *content* of the video, not the particular labels given by Science Feedback.  *See* Opp. at 7 (citing user comment "Your SC Fires story was SO RIGHT SIDED UNFAIR . . .").  Accordingly, these isolated comments by individual Facebook users are explained by the fact that Plaintiff chose to include controversial positions in videos that he published, which subjected him to criticism.  While

1    other Facebook users may have issues with Plaintiff's journalism, their isolated comments—
2    which cannot be attributed to Science Feedback in any event—are insufficient to establish the
3    effect of the labels "misleading" and "inaccurate" on an average, reasonable viewer.
4         Instead of addressing the relevant statements head-on, Plaintiff simply chooses to ignore
5    the fact that the only two statements identified in the Complaint are not capable of a defamatory
6    meaning.  The Statements do not mention Plaintiff or his journalism.  They discuss claims made
7    by *interviewees* in videos posted to Plaintiff's Facebook page and label them "misleading" or
8    "inaccurate."  Outside of his conclusory statements that these labels have caused damage to his
9    reputation, Plaintiff fails to show that how the identified Statements *on their face*—as opposed to
10   his own reporting—caused the "hatred, contempt, ridicule, or obloquy" required under California
11   law.  Cal. Civ. Code § 45.

### b.    Criticism Based On Disclosed Facts Is Nonactionable.

13   Plaintiff again clouds the discussion to avoid the fundamental fact that the criticism made
14   by Science Feedback is protected under the First Amendment.  In his Opposition, Plaintiff claims
15   "Science Feedback told its readers that its statements about Stossel were statements of fact" and
16   cites to Science Feedback's mission to "sort[] fact from fiction."  Opp. at 7.  Plaintiff provides no
17   citation or identified statement where Science Feedback told its readers that it was making
18   statements of fact about Plaintiff; Plaintiff only points to Science Feedback's identity as a *fact-*
19   *checking* organization.  The inherent nature of this type of work is that Science Feedback
20   provides commentary on scientific (and pseudo-scientific) claims spreading on the internet.
21   Plaintiff follows a similar pattern in attempting to distinguish the cases cited in
22   Defendant's Motion.  In discussing *Partington v. Bugliosi*, 56 F. 3d 1147, 1156-57 (9th Cir.
23   1995), Plaintiff claims the facts are different in this case because "Defendants *told* the Facebook
24   public that their statements reflected determinations of objective fact."  Opp. at 8.  Once again,
25   Plaintiff provides no citation for this proposition and this language does not appear in the
26   Statements identified in the Complaint.  Science Feedback's Articles are critical reviews of
27   certain claims contained in Plaintiff's Fire Video and Alarmism Video.  These Articles describe
28   scientific "facts available to both the writer and the reader," as in *Partington*.  56 F.3d at 1156-

5
REPLY ISO MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385
4876-9543-1186v.5 0117048-000004

57. They then describe the ultimate conclusions of Science Feedback's academic reviewers that certain claims within Plaintiff's Videos were "misleading" or "missing context," based on the aforementioned disclosed facts. Mot. Exs. 1-2; Compl. ¶¶ 116, 125. Just as in *Partington*, Facebook users are perfectly capable of viewing both Videos, reading the extensive peer-reviewed articles published on Climate Feedback's website, and "draw[ing] [their] own conclusions." 56 F. 3d at 1156-57.

Plaintiff's discussion of *Moldea v. New York Times Co.*, 22 F.3d 310 (D.C. Cir. 1994) is similarly off-base. Plaintiff strains to draw a distinction between the "book review" context and the fact-checking context. Opp. at 8. The type of work involved is not what triggers the "breathing space" afforded to authors of reviews, but rather whether the author is "criticiz[ing] and interpret[ing] the actions and decisions of those involved in a public controversy." *Partington*, 56 F. 3d at 1159. Science Feedback's statements are undoubtedly in the context of criticizing and interpreting the actions and statements of certain interviewees in the Fire Video and the Alarmism Video. The claims made by those interviewed by Plaintiff deal with climate change, which, as Plaintiff concedes in his Opposition, is indisputably a matter of public controversy in the current era. *See* Mot. at 12 (citing *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-CV-02824, 2019 WL 281370, at *18 (N.D. Cal. Jan. 22, 2019); Opp. at 4-5 ("Stossel is not contesting that Science Feedback satisfies the first prong of protected activity."). Thus, Defendant's commentary falls squarely within this protected breathing space.²

Nowhere in these decisions do the courts limit such rules to literary criticism. Any such limitation would be ridiculous, as books are not the only way people involve themselves in and opine on public controversies. *See, e.g.*, *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188 (9th Cir.

---

² Moreover, just as "readers' expectations and understandings of book reviews" protected the statements in *Moldea*, readers' understandings of online fact-checks protect the Statements here. 22 F.3d at 315. Readers' understanding of the Articles is informed by the Articles themselves, which describe the facts in dispute, the claims made by Plaintiff's interviewees, and scientists' conclusions regarding whether those claims are missing context. Just as readers understand that book reviews reflect evaluations by literary critics, readers understand, from reading the Articles, that scientists are evaluating viral content on the internet and concluding that such content "[m]isrepresent[s] a complex reality." *See* Declaration of Thomas Burke ("Burke Decl."), Ex. 1.

6
REPLY ISO MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385
4876-9543-1186v.5 0117048-000004

1989) (involving statements made in magazine feature); *Koch v. Goldway*, 817 F.2d 507, 508 (9th Cir. 1987) (involving statements made in *60 Minutes* segment).

Plaintiff's main qualm with the *County of Tuolumne v. Sonora Community Hospital*, 1 F. App'x 653, 654 (9th Cir. 2001), decision is that it is short. Opp. at 8 (stating that it is a "two-paragraph decision"). This is not a viable reason to invalidate the reasons the Ninth Circuit ruled. Moreover, this is scarcely the only case to reach this uncontroversial holding. *See Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1294 (9th Cir. 2014) (holding certain blog posts revealing feelings rather than assertions of fact were not actionable for defamation); *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1052 (2008) (holding statements made by employee discussing his "horrible" work conditions were statements of feeling and therefore not actionable defamation); *Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 572, 579 (1996) (holding that statement by father concerned about his son's health was not an objective assertion of fact because "what he felt constituted either a subjective assessment based on parent intuition or colorful hyperbole illustrative of his apprehension over Campanelli's behavior, but cannot be construed as intending to convey a verifiable assertion regarding his son's health."). Where, as here, the challenged statements reflect Science Feedback's rigorous evaluation of evidence—and the factual basis underlying its concerns are disclosed (citing to dozens of peer-reviewed articles)—so that readers can form their own conclusions, they are not actionable defamation as a matter of law.

Plaintiff also takes issue with *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113 (C.D. Cal. 1998), and confoundingly makes distinctions that are not analytically relevant or consistent with settled law. For instance, Plaintiff claims that in *Cochran*, the "average reader" had "prior knowledge" of the O.J. Simpson trial, therefore, this gave them the appropriate tools to analyze the author's statements. Opp. at 9. Yet, there is no requirement that the factual referent be "shared public knowledge" in order for the disclosed-opinion defense to exist, but rather, that the facts are disclosed to the reader by the publication. *See Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (citing *Lewis v. Time, Inc.*, 710 F.2d 549, 556 (9th Cir. 1983)) ("[W]here a publication sets forth the facts

7
REPLY ISO MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385
4876-9543-1186v.5 0117048-000004

underlying its statement of opinion . . . and those facts are true, the Constitution protects that opinion from liability for defamation.") (citation omitted).

Further, confoundingly, Plaintiff insists that the factual referents in this case are Plaintiff's Videos themselves and that these Videos are not disclosed in the Articles. But this proposition makes no sense. The "factual referents" for the Statements are the scientific data and studies used by the Climate Feedback scientists in forming their conclusions, *not* the Videos themselves. *See* Mot. at 6-8 (discussing the numerous citations and scientific articles used by Climate Feedback in each Article). The many sources were disclosed and linked in both Articles that contained the identified Statements. *See* Burke Decl. Exs. 1-2.

Plaintiff similarly takes issue with *Yagman*, 55 F.3d at 1440, claiming that in the present case, the disclosed facts are not true, but are themselves "false and demeaning." Opp. at 9. Plaintiff again cites to the Videos as factual referents, rather than the scientific data and sources actually disclosed in the Articles, and seemingly argues that the disclosed fact is a "false attribution" to Plaintiff of a claim actually made by his interviewees. First, the disclosed facts at issue are the scientific data cited in the Articles; the conclusion that the Fire Video was "missing context" rested on comparisons of those data against statements made by interviewees within the video. As explained in detail in Science Feedback's Motion (Mot. at 15), the Fire Video includes a statement by Michael Schellenberger that climate change was not the primary cause of the 2020 California fires. Compl. ¶ 42. Plaintiff does not identify any specific "false attribution" to him personally, and it is plain that a video can be "misleading" due to statements made therein, even without attributing those statements to the video's creator. Second, Plaintiff provides absolutely no explanation or provide authority for how the actual disclosed facts here— *i.e.*, the scientific studies and data cited in the Articles—are "false and demeaning" *of Plaintiff*. Disclosing reliance on scientific research or facts immunizes statements from defamation claims. *See Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1021 (N.D. Cal. 2017) ("[M]any of Greenpeace's publications at issue rely on scientific research or fact.").

Finally, Plaintiff makes a half-hearted attempt to distinguish *Owens v. Lead Stories, LLC*, No. CV S20C-10-016 CAK, 2021 WL 3076686, at *14 (Del. Super. Ct. July 20, 2021), *aff'd*,

1  No. 253, 2021, 2022 WL 521388 (Del. Feb. 22, 2022), a case that is squarely on point and was

2  recently affirmed by the Delaware Supreme Court.  Plaintiff claims that the Articles did not

3  "identify any falsehoods in Stossel's videos" and applied the fact-checking labels regardless.

4  This is simply untrue.  *See, e.g.*, Mot. at 7 (citing Alarmism Article and enumerating numerous

5  misleading claims in the Alarmism Video such as the claim that carbon dioxide "helps feed the

6  world.")  *See* Burke Decl. Ex. 9 at 3.  This claim is addressed in the article by *inter alia*,

7  Professor G. Philip Robertson at Michigan State University, who explains that any historic

8  positive effect of carbon dioxide on crop grown is generally considered to be "a fraction" of

9  other historic causes like genetics, nitrogen, and other inputs, and any positive effect on crop

10 grown "will almost certainly be offset by yield declines associated with the temperature

11 increased caused by elevated CO2, which are well known."  *Id.* (quoting Professor Philip

12 Robertson).  The plaintiff in *Owens* asserted the very same arguments Plaintiff asserts here, and

13 those arguments were correctly rejected and should be rejected again here.

14        Plaintiff's repeated attempts to shift focus away from the Statements and the Articles

15 themselves are disingenuous.  The Articles provide conclusions that are based on disclosed,

16 hyperlinked scientific research, and thus, are protected speech.

17              **c.     The Statements at Issue are Substantially True.**

18        Plaintiff's Opposition falls woefully short in its arguments regarding the falsity of

19 Defendant's statements.  Plaintiff once again makes conclusory statements such as "Science

20 Feedback put words in Stossel's mouth," or "attribut[ed] to Stossel a false claim he never made."

21 Opp. at 10.  Neither of the identified Statements refer to anything about Plaintiff's claims or

22 words Plaintiff may have used.  The Statements merely provide Science Feedback scientists'

23 conclusions about claims that are made by interviewees in the Fire Video and the Alarmism

24 Video.  The claims that were reviewed by Science Feedback address the claims espoused by

25 others in the Videos.

26        Even if the Statements were somehow read to be inferring that Plaintiff made certain

27 claims, the "gist or sting" of both Articles would remain true because Plaintiff does, indeed,

28 seem to endorse certain views of his interviewees.  *See*, *e.g.*, Ex. 8 at 3 (Plaintiff narrating: "Bad

9
REPLY ISO MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385
4876-9543-1186v.5 0117048-000004

policies were the biggest cause of this year's fires, not the slightly warmer climate."). Plaintiff does not argue otherwise in his Opposition.

### 2. The Identified Statements Are Not "Of and Concerning" Plaintiff.

Plaintiff attempts to divert the Court's attention yet again from the question at hand: whether the identified Statements were about Plaintiff. He offers no legal authority to support this argument. Importantly, Plaintiff's Complaint identifies only two allegedly defamatory statements attributable to Science Feedback, neither of which refers to Plaintiff himself. *See* Compl. ¶¶ 123-25.

As Science Feedback noted in its Motion, the claims made by a journalist's sources are separate from claims made by the journalist himself. Mot. at 19 (citing *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 683 (9th Cir. 1990)). Plaintiff attempts to distinguish *Newton* by noting that the Ninth Circuit applies a heightened level of review in its actual malice determination. Opp. at 11. This is a red herring. The scrutiny of the Ninth Circuit in determining whether a publisher acted with actual malice is not at issue in this Motion. Instead, *Newton* is cited for the proposition that "journalists [] interview diverse sources," and based on those interviews, journalists make their own, separate conclusions. 930 F.2d at 683.

Defendant's Articles contained their own commentary on the conclusions and credibility of Plaintiff's *sources*, not about Plaintiff himself or conclusions *Plaintiff* may have drawn. For instance, the Fire Article was published *before* Plaintiff's video, so the authors could not have possibly had Plaintiff in mind when that Article was written; indeed, the Article nowhere mentions Plaintiff by name. Burke Decl. Ex. 1. The Article was commenting on a viral claim that forest fires were not attributable to climate change, and Plaintiff subsequently posted a video in which Mr. Shellenberger espoused that claim. *See* Burke Decl. Ex. 1. Similarly, the Alarmism Article takes issue with the Alarmism Video's *reliance on* "incorrect and misleading claims about climate change" not about any claims Plaintiff himself is making. *See* Burke Decl. Ex. 2. Plaintiff's extraordinarily broad reading of the "of and concerning" requirement is profound. It would foreclose any criticism of statements within any form of media, for risk that such criticism would always defame the creator of that media itself. Such an absurd result is not

consistent with the law.  *See, e.g.*, *Hayes v. Facebook*, No. 19-cv-02106-TSH, 2019 WL 5088805, at *7 (N.D. Cal. Aug. 15, 2019) (where plaintiff asserted a defamation claim for action Meta took against plaintiff's social media post, court held that "no reasonable person would interpret those statements as being about [plaintiff] personally."), *R. & R. adopted*, No. 19-cv-02106-HSG, 2019 WL 5091162 (N.D. Cal. Sept. 5, 2019).  Not surprisingly, no court has adopted this novel argument and this Court should not entertain it.

### 3.     Plaintiff Does Not Allege Libel Per Se, or Plead Special Damages.

Plaintiff's claims do not sound in defamation per se.  At the same time, Plaintiff claims that the Articles "*imply* that Stossel, a professional journalist, peddles falsehoods" and that the language is defamatory on its face. Opp. at 11-12.  Plaintiff's Opposition constantly contradicts itself by admitting that libel per se must be libelous on its face, but claiming that a reader will "necessarily infer the defamatory meaning." *Id.*  Plaintiff cannot have it both ways: either the words are defamatory on their face, or they create an implication.  Neither is true here.

Regardless, Plaintiff does not plead with particularity that any special damages resulted from the language identified in the Statements.  Plaintiff claims he lost "advertising revenue he would have earned from the Fire Video" and that this was because of the "dramatic drop" in views of his Videos. Opp. at 15.  This is insufficient to plead special damages.  Plaintiff must show that any such loss or drop in viewership was a direct result of the two Statements made by Science Feedback.  *See* Mot. at 21 (plaintiff must allege that such damages are a proximate result of the allegedly defamatory statements).  Plaintiff's alleged damages are equally explainable by a number of other factors unrelated to Science Feedback, including the videos themselves, which Plaintiff concedes prompted a strong negative reaction from some viewers. Opp. 7.  Plaintiff bears the burden of demonstrating *specific* losses, not just speculative statements, and Plaintiff fails to do so despite multiple opportunities, in his Complaint and Oppositions to both Meta's and Science Feedback's Motions.  *See Pridonoff v. Balokovich*, 36 Cal. 2d 788, 792 (1951) ("A general allegation of the loss of a prospective employment, sale, or profit will not suffice."); *Peak Health Ctr. v. Dorfman*, No. 19-CV-04145-VKD, 2019 WL 5893188, at *6 (N.D. Cal. Nov. 12, 2019) (requiring plaintiff to "identify any specific customers or business transactions

that [plaintiff] lost as the result of the article's publication," rather than "general allegations of 'loss of business opportunities'" with unidentified clients).  Merely making the conclusory statement that "Science Feedback's defamation was the proximate cause of these damages" is not enough, particularly against the backdrop of Plaintiff's decision to post videos on controversial topics, and the myriad other factors that could lead to a drop in viewership and advertising revenue.  Opp. at 15-16.

### 4. The Complaint Should Be Stricken Because Plaintiff's Claim Is Barred By The Correction Statute.

Plaintiff claims that California's correction statute does not apply to Climate Feedback's website because it is "not a type of publication that the Correction Statute protects."  Opp. at 13. Plaintiff, however, does not engage with the numerous authorities cited in the Motion that argue otherwise.  Mot. at 22 (citing legislative history for Section 48a and *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423 (2006), which specifically argues that other similar laws expand protections beyond "traditional" publications and would apply, for example, to technology blogs).  Science Feedback is not required to publish at a certain regular interval to qualify for protection under the correction statute.  *Id.*

Plaintiff also claims that he has in fact complied with any correction demand requirements and cites to an email sent to "Climate Feedback editor Nikki Forrester" as satisfying this requirement.  Opp. at 14 n.2.  However, a proper correction demand requires a demand be sent to the "publisher," which "clearly refers to the owner or operator of the newspaper . . . rather than the originator of the defamatory statements."  *Freedom Newspapers, Inc. v. Super. Ct.*, 4 Cal. 4th 652, 656 (1992) (quoting *Field Research Corp. v. Super. Ct.*, 71 Cal.2d 110, 113 (1969)).  Even if Plaintiff did send such an email to Ms. Forrester, which Plaintiff admits was not alleged in the Complaint, it would not satisfy the requirements of the statute, because Ms. Forrester was merely the editor/author of the Fire Article; she is not the "publisher," "owner," or "operator" of Climate Feedback.  *See* Burke Decl. Ex. 1.  Plaintiff does not allege that he made any similar correction demand for the Alarmism Article.

### 5. Plaintiff Fails to Allege Actual Malice.

Plaintiff does not dispute that the heightened actual malice standard applies. Opp. at 16. But in addressing this high bar to his claims,[3] he once again points to facts outside the relevant considerations to establish actual malice. Plaintiff alleges that two scientist reviewers conceded that the labels were not fairly applied to the Fire Video and that this somehow implies reckless disregard on Science Feedback's part. *Id.*

Plaintiff's misleading interviews with two scientists does not somehow prove that Science Feedback was reckless in its publication of the Articles. *See* Mot. at 9 (describing Plaintiff's project of interviewing two scientists and publishing the interviews in heavily edited clips). First, these scientists were not involved in the Alarmism Article at all. Second, these scientists are not Science Feedback staff or editors, and their post-publication statements in a one-sided interview with Plaintiff say nothing of the state of mind *of Science Feedback* at the time the Fire Article was published. *Shelton v. Bauer Publ'g Co.*, No. 2:15-cv-09057-CAS (AGRx), 2016 WL 1574025, at *11 (C.D. Cal. Apr. 18, 2016) (the actual malice "standard focuses exclusively on the defendant's subjective state of mind 'at the time of publication'" (quoting *Bose Corp. v. Consumer Union of U.S., Inc.*, 466 U.S. 485, 512 (1984)).

Plaintiff makes much of the fact that weeks later, these two scientists admitted they did not watch the Fire Video before publishing the Article. Again, the Fire Article *was published before the Fire Video*, so necessarily, the scientists are not clairvoyants who could have watched an as-yet-to-be-published piece of content. Further, as Science Feedback explained in detail in its opening brief the scientists were reviewing a broad claim that was already circulating on the internet, which Plaintiff admits in his Opposition. Opp. at 17 (the scientists in the Fire Article were discussing "broader claims" being disputed). Then, after the Fire Video was released, the Fire Article was used as a basis to affix a Meta label to the Fire Video. Plaintiff admits, as he must, that

---

[3] Plaintiff attempts to muddle the black-letter law on the actual malice standard by citing to *MacKinnon v. Logitech Inc.*, No. 15-cv-05231-TEH, 2016 WL 2897661 (N.D. Cal. May 18, 2016), which dealt with a qualified privilege under state common law and did not address the constitutional malice standard applicable here. To be clear, the constitutional actual malice standard cannot be met by any showing less than knowledge of falsity or reckless disregard of the truth. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

the Fire Video addresses the very claim that was previously discussed in the Fire Article. Compl. ¶ 42 ("The Fire Video . . . explored a scientific hypothesis advanced by Mr. Shellenberger and others—namely, that while climate change undoubtedly contributes to forest fires, it was not the primary cause of the 2020 California fires."). Accordingly, it was abundantly reasonable for Science Feedback to believe that the Fire Article should apply to the Fire Video.

Plaintiff also asserts that Science Feedback did not identify a "single misstatement of fact" in the Alarmism Video. Opp. at 17. Once again, Plaintiff simply ignores facts that are inconvenient to his arguments. As discussed above, the Alarmism Article *did* identify specific misleading claims contained within the Alarmism Video. *See* Mot. at 7-8 (enumerating these claims in the Alarmism Video, such as the claims that carbon dioxide "helps feed the world," "sea levels have been rising for 20,000 years [and probably will continue]" and "'hurricanes and other storms' are not 'getting worse' and that 'there is no relationship between hurricane activity and the surface temperature of the planet,'" and describing how the Alarmism Article explained why these claims were misleading, by, for example, stating: "Research shows that climate scientists don't necessarily expect an increase in the frequency of all hurricanes with global warming, but instead an increase in hurricane risk."); Burke Decl. Ex. 2.

Plaintiff also ignores the rigorous evaluation process Science Feedback engaged in, which itself eviscerates any argument that Science Feedback acted with reckless disregard for the truth. First, in each Article, Climate Feedback lists and hyperlinks a litany of scientific sources and explanations used in its Articles. *See* Mot. at 6-10; Burke Decl. Exs. 1-2 (citing sources such as the Bulletin of the American Meteorological Society, PNAS articles, IPCC reports, and others; the Fire Article cites to PNAS, IPCC reports, National Academies Press articles, Scientific Advances articles, and others). Second, Climate Feedback went through the trouble of publishing a separate article enumerating its evaluation process for readers. Burke Decl. Ex 5. Plaintiff ignores these points entirely, dismissing them offhand as arguments about "scholastic quality," but high-quality scholastic work is directly relevant to truth-finding.[4]

---

[4] In addition, Plaintiff cannot establish actual malice simply by alleging that he requested Science Feedback "correct" the Fire Article, and "notified" Science Feedback of the Alarmism Article's "falsity." Opp. at 16-17. In establishing truthfulness, Plaintiff's self-serving complaint

14
REPLY ISO MOTION TO DISMISS/ANTI-SLAPP
Case No. 5:21-cv-07385
4876-9543-1186v.5 0117048-000004

Constitutional malice requires "clear and convincing" allegations by Plaintiff. *Sullivan*, 376 U.S. at 285. Even if Plaintiff could create a vague impression that such Articles were published imprudently, which he does not, Plaintiff does not satisfy the high bar required to satisfy a malice standard. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Plaintiff must show that Science Feedback *knew* the Articles contained false statements of fact, or entertained "serious doubts" about the truth of the Articles, and the copious citations in the Articles themselves, evaluations by numerous independent scientists, as well as the subsequent article enumerating Science Feedback's process unequivocally show that the Science Feedback staff reasonably believed in the rigor and precision of its own evaluative process.

### III. CONCLUSION

At this moment, when misleading and unsupported scientific claims can be spread virally, this Court should act to ensure that threats of civil liability do not chill efforts to criticize such claims. For these reasons, Science Feedback respectfully asks the Court to dismiss Plaintiff's lawsuit with prejudice and award Science Feedback its attorneys' fees and costs under California's anti-SLAPP statute.

DATED: March 14, 2022

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
SELINA MACLAREN
ABIGAIL ZEITLIN

By: */s/ Thomas R. Burke*
    Thomas R. Burke

*Attorneys for Defendant*
*SCIENCE FEEDBACK*

---

about the Articles did not automatically outweigh the thorough, ample, and well-supported scientific conclusions in the Articles. If it did, any person could silence speech simply by putting the speaker on notice that she believed the claims were false. *See Masson v. New Yorker Mag., Inc.*, 960 F.2d 896, 900 (9th Cir. 1992) ("the protestations of a source will not, standing alone, support an inference that the publisher 'entertained serious doubts' about, or even 'had obvious reasons to doubt,' the accuracy of" the statements).