UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN STOSSEL,<br><br>    Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., et al.,<br><br>    Defendants. | Case No. 21-cv-07385-VKD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH PREJUDICE; GRANTING DEFENDANTS' ANTI-SLAPP MOTIONS**<br><br>Re: Dkt. Nos. 27, 50 |

Plaintiff John Stossel asserts a single claim for defamation against defendants Meta Platforms, Inc. ("Meta"),[1] Science Feedback, and Climate Feedback. Dkt. No. 1. Defendants move to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 27 at 1, 7, 12–19; Dkt. No. 50 at 2, 11-25. Meta also moves to dismiss the complaint on the ground that Mr. Stossel's defamation claim against it is barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1). Dkt. No. 27 at 1, 7-12. Finally, both defendants specially move to strike the complaint pursuant to California's anti-Strategic Litigation Against Public Participation ("anti-SLAPP") statute, California Code of Civil Procedure § 425.16. *Id.* at 1, 19–22; Dkt. No. 50 at 1, 11-25.

The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332. *See* Dkt. No. 1 ¶¶ 19-21 (citizenship of parties), ¶ 15 (amount in controversy). All named parties have consented to magistrate judge jurisdiction. Dkt. Nos. 10, 24, 45.

---

[1] The complaint names Facebook, Inc. as a defendant. Facebook changed its name to Meta Platforms, Inc. effective October 28, 2021. Dkt. No. 32.

Having considered the parties' briefs and arguments made at the hearing on defendants' motions, the Court grants defendants' motions to dismiss on the ground that Mr. Stossel fails to state a claim for defamation. In addition, the Court grants defendants' anti-SLAPP motions to strike. Because any amendment would be futile, the Court dismisses the claim against each defendant with prejudice. The Court does not reach Meta's argument that Section 230(c)(1) of the CDA bars Mr. Stossel's claim.

## I.  BACKGROUND

For purposes of this order, and except as otherwise noted, the following facts are drawn from the allegations of the complaint and from materials incorporated by reference in the complaint.[2]

### A.  The Parties

Plaintiff John Stossel is a career journalist and reporter who resides in New York. Dkt. No. 1 ¶¶ 19, 23. Currently, Mr. Stossel publishes short weekly news videos on social media, primarily on the Facebook platform, where he has over one million followers. *Id* ¶ 23.

Defendant Meta is a Delaware corporation headquartered in Menlo Park, California. *Id.* ¶ 20. Meta provides an online social networking service called "Facebook." *Id.* ¶ 24. Meta allows users to view and post content on the Facebook platform. *Id.* ¶ 27. Mr. Stossel alleges, on information and belief, that "there are currently 2.8 billion individuals worldwide who engage in speech on Facebook's platform." *Id.* ¶ 24.

Defendant Science Feedback is a French non-profit organization that describes itself as a "worldwide network of scientists sorting fact from fiction in science based media coverage." *Id.* ¶ 25. Mr. Stossel alleges that Science Feedback is the "parent organization" of several "fact-checking websites," including Climate Feedback, and that Climate Feedback is a subsidiary of Science Feedback. *Id.* ¶¶ 25, 26. However, Science Feedback asserts that Climate Feedback "is

---

[2] The Court does not take judicial notice of Mr. Stossel's Facebook page (Dkt. No. 50-4) or Climate Feedback's description of its review process (Dkt. No. 50-7). These materials are not clearly referenced or quoted in the complaint. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 1005 (9th Cir. 2018) (incorporation-by-reference doctrine does not apply to a document not clearly referenced or quoted in the complaint).

not a separate legal entity, but rather a website run by Science Feedback." Dkt. No. 50 at 11 n.4; *see also* Dkt. No. 43 (Science Feedback's Rule 7.1 Corporate Disclosure Statement). Mr. Stossel does not dispute these assertions. Thus, for purposes of this order, the Court refers to Science Feedback when discussing the defendant fact-checking organization and to Climate Feedback when discussing the website run by Science Feedback.

### B. Meta's Fact-Checking Program

Meta states on its Facebook website that it is "commit[ed] to fighting the spread of misinformation on Facebook," representing that the company "work[s] with independent, third-party fact-checking organizations" to achieve this objective. Dkt. No. 1 ¶ 29. The "About Fact-Checking on Facebook" page[3] of the website states that "[f]act-checkers will review content, check its facts, and rate its accuracy." *Id.* ¶ 32. That page explains that "[t]he focus of this fact-checking program is identifying and addressing viral misinformation, particularly clear hoaxes that have no basis in fact." Dkt. No. 27-3 at ECF 2. But "[f]act-checking partners do not prioritize claims that are inconsequential or consist of minor inaccuracies." *Id.*

The Facebook website also includes a "Rating Options for Fact-Checkers" page,[4] which identifies six ratings that fact-checkers may use to rate content: "False," "Altered," "Partly False," "Missing Context," "Satire," and "True." *Id.* ¶ 33; Dkt. No. 27-5. The website provides guidelines explaining what each label means and gives examples of content to which each rating could apply. According to the website, "[w]hile Facebook is responsible for setting these rating guidelines, it is ultimately the fact-checkers who independently review and rate content— Facebook does not make changes to ratings." Dkt. No. 27-5 at ECF 2.

The "key steps" of the fact-checking program are described as follows:

---

[3] Meta argues that the complaint incorporates this webpage by reference. Dkt. No. 27 at 3 n.2. Mr. Stossel does not object to the Court's consideration of the contents of this webpage for purposes of deciding defendants' motions. *See, e.g.,* Dkt. No. 49 at 5-6 (quoting statements from webpage).

[4] Meta argues that the complaint incorporates this webpage by reference. Dkt. No. 27 at 3 n.4. Mr. Stossel does not object to the Court's consideration of the contents of this webpage for purposes of deciding defendants' motions. *See, e.g.,* Dkt. No. 49 at 2, 5 (quoting and citing statements from webpage).

3

- **Identify false news**: We identify potential misinformation using signals, like feedback from people on Facebook, and surface the content to fact-checkers. Fact-checkers may also identify content to review on their own.

- **Review content**: Fact-checkers will review content, check its facts, and rate its accuracy. This happens independently from Facebook, and may include calling sources, consulting public data, authenticating videos and images, and more.

- **Clearly label misinformation and inform users about it**: We apply a label to content that's been reviewed by fact-checking partners, so people can read additional context. We also notify people before they try to share this content, and people who have shared it in the past.

- **Ensure fewer people see misinformation**: Once a fact-checker rates a piece of content as False, Altered or Partly False, it will appear lower in News Feed, be filtered out of Explore on Instagram, and be featured less prominently in Feed and Stories. This significantly reduces the number of people who see it. We also reject ads with content that has been rated by fact-checkers.

- **Take action against repeat offenders**: Pages and websites that repeatedly share misinformation rated False or Altered will have some restrictions, including having their distribution reduced. They may also have their ability to monetize and advertise removed, and their ability to register as a news Page removed for a given time period.

Dkt. No. 27-3 at ECF 2-3; Dkt. No. 1 ¶¶ 34-36.

### C. Mr. Stossel's "Fire Video"

On September 22, 2020, Mr. Stossel published a short news video entitled "Government Fueled Fires" (the "Fire Video") on his Facebook page. Dkt. No. 1 ¶ 37; Dkt. No. 28.[5] The video includes a discussion of the massive forest fires in California in 2020. Dkt. No. 1 ¶ 38. In the video, Mr. Stossel acknowledges that climate change plays in role in forest fires, *id.* ¶ 40, but he says the video "explore[s] a scientific hypothesis advanced by [environmentalist Michael] Shellenberger and others—namely, that while climate change undoubtedly contributes to forest fires, it was not the primary cause of the 2020 California fires," *id.* ¶ 42. In the video, Mr. Stossel

---

[5] Meta argues that the complaint incorporates the video by reference. Dkt. No. 27 at 4 n.5. Meta asks the Court to consider the video itself and a transcript of the audio. *See id.*; Dkt. No. 28. Mr. Stossel does not object to the Court's consideration of the video or the transcript for purposes of deciding defendants' motions. *See generally* Dkt. Nos. 49, 54.

4

interviews Mr. Shellenberger, who opines that climate change was not the primary reason for the 2020 forest fires. *Id.* ¶ 43. Mr. Stossel's final statement in the video is: "Bad policies were the biggest cause of this year's fires, not the slightly warmer climate. And while climate change is a problem, Shellenberger's new book explains, it's not an apocalypse." *Id.* ¶ 44.

Shortly after Mr. Stossel published the Fire Video, Facebook placed a small rectangular label over the top part of the video. *Id.* ¶ 45. The label has the text "Missing Context" and below, in smaller font, the sentence: "Independent fact-checkers say the information could mislead people." *Id.* Beneath this sentence appears a button with the words "See Why." *Id.* A screenshot of the video and label, as reproduced in the complaint, appears below:



*Id.* If a viewer clicks on the "See Why" button, the following text box appears:



*Id.* ¶ 46. The text box includes the statement "[i]ndependent fact-checkers say this information is missing context and could mislead people." *Id.* It also includes a blue button with the words "Fact Check."

If a viewer clicks on the "Fact Check" button, she is directed to an article (the "Fires Article") on the Climate Feedback website. The Fires Article posits the following "claim": "Forest fires are caused by poor management. Not by climate change." Next to the "claim" is a "verdict," which indicates that the claim is "misleading." *Id.* ¶ 47. Additional explanation regarding the "claim" and the "verdict" appears in the Fire Article on Climate Feedback's website.[6] *See id.* ¶¶ 47-50; Dkt. No. 28-1. An image from the Climate Feedback website, as reproduced in the complaint, appears below:



Dkt. No. 1 ¶ 47.

On September 25, 2020, Mr. Stossel received a notification from Facebook regarding the Fire Video, advising that "[c]ontent is being seen by fewer people because it was rated Missing Context by an independent fact-checker." *Id.* ¶ 55.

---

[6] Meta argues that the complaint incorporates Climate Feedback's "Fires Article" by reference. Dkt. No. 27 at 5 n.6. Mr. Stossel does not object to the Court's consideration of the article for purposes of deciding defendants' motions. *See generally* Dkt. Nos. 49, 54.

6

### D. Mr. Stossel's "Alarmism Video"

On April 17, 2021, Mr. Stossel republished on his Facebook page a video entitled "Are We Doomed?" (the "Alarmism Video") that he had published previously in November 2019. Dkt. No. 1 ¶ 78; Dkt. No. 28-2.[7] According to Mr. Stossel, the video "question[s] claims made by those [whom] Stossel refers to as 'environmental alarmists.'" *Id.* In the video, Mr. Stossel includes clips from the video of a panel discussion he moderated. *Id.* ¶ 79. The panel discussion focuses on climate change. Although Mr. Stossel set up the discussion as a debate, he complains in the video that "climate alarmists never agree to debate" and that "the many individuals invited as counterpoints in the debate had refused to attend." *Id.* ¶ 80; Dkt. No. 28-2 at 3:23-24. According to Mr. Stossel, the video shows that the panel "acknowledged rising sea levels and discussed whether humans can adapt to the problems they pose; discussed data that undermine the claim that hurricanes are getting stronger; and discussed how carbon dioxide can be simultaneously a greenhouse gas and a beneficial fuel for crops." Dkt. No. 1 ¶ 79.

Shortly after the April 2021 republication of the Alarmism Video, Facebook placed a small rectangular label over the top part of the video. *Id.* ¶ 83. The label has the text "Partly False Information" and below, in smaller font, the sentence: "Checked by independent fact-checkers." *Id.* Beneath this sentence appears a button with the words "See Why." *Id.* A screenshot of the

//
//
//
//
//
//
//

---

[7] Meta argues that the complaint incorporates the video by reference. Dkt. No. 27 at 5 n.7. Meta asks the Court to consider the video itself and a transcript of the audio. *See id.*; Dkt. No. 28-2. Mr. Stossel does not object to the Court's consideration of the video or the transcript for purposes of deciding defendants' motions. *See generally* Dkt. Nos. 49, 54.

1  video and label, as reproduced in the complaint, appears below:



*Id.* If a viewer clicks on the "See Why" button, the following text box appears:



*Id.* ¶ 84.  The text box includes the statement "[i]ndependent fact-checkers say this information has some factual inaccuracies."  *Id.*  It also includes a blue button with the words "Fact Check."

//
//
//
//
//
//
//

If a viewer clicks on the "Fact Check" button, she is directed to an article entitled "Video promoted by John Stossel for Earth Day relies on incorrect and misleading claims about climate change" ("Alarmism Article").[8] *Id.* ¶ 85; Dkt. No. 28-3. An image from the Climate Feedback website, as reproduced in the complaint, appears below:

Dkt. No. 1 ¶ 85.

### E. Alleged Harm to Mr. Stossel's Reputation and Other Interests

Mr. Stossel alleges that defendants' actions have caused damage to him "in the form of reduced distribution of his reporting, reduced viewership, and reduced profits from advertising revenue from viewership." *Id.* ¶ 103. Specifically, Mr. Stossel alleges that "while the Fire Video had nearly 1.2 million views when it was originally posted, it received almost no views following Defendants' defamation of the video in September 2020. This resulted in reduced advertising revenue on that content, which revenue Stossel would otherwise have received." *Id.* ¶ 104. Further, Mr. Stossel alleges that pursuant to Facebook's policy on flagged content, he "was essentially prohibited from re-posting the Fire video . . . which would have resulted in another approximately 1.2 million views and the associated ad revenue from those views." *Id.* Similarly,

---

[8] Meta argues that the complaint incorporates Climate Feedback's "Alarmism Article" by reference. Dkt. No. 27 at 6 n.8. Mr. Stossel does not object to the Court's consideration of the article for purposes of deciding defendants' motions. *See generally* Dkt. Nos. 49, 54.

9

1  Mr. Stossel alleges that "immediately after Defendants affixed their false label on the Alarmism
2  Video in April 2021, there was a dramatic drop in both views of that video and all Stossel's other
3  videos, and of the associated advertising revenue, which reduced by nearly half, from
4  approximately $10,000 a month to approximately $5,5000 a month, and which Stossel otherwise
5  would have received." *Id.* ¶ 105. Mr. Stossel also alleges that his professional reputation has been
6  "significantly and irreparably damaged" by "the false labels and statements that Defendants
7  affixed to his work." *Id.* ¶ 106.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 889 F.3d 988, 998 (9th Cir. 2018). A document not attached to a complaint "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's

claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Courts "need not accept as true allegations contradicting documents that are referenced in the complaint." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Nor is a court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Id.* (citation omitted).

### B.     Anti-SLAPP Motion to Strike

California's anti-SLAPP statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). The statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's First Amendment right of petition or free speech in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. C.C.P. § 425.16(b)(1). A defendant in federal court may bring an anti-SLAPP motion with respect to California state law claims asserted under the court's diversity jurisdiction. *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.2 (9th Cir. 2010). When an anti-SLAPP motion to strike challenges the legal sufficiency of a claim, a district court applies the Rule 12(b)(6) standard and considers whether a claim is properly stated. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018).

Litigation of an anti-SLAPP motion requires two steps. First, the defendant must show that the plaintiff's claim arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech. If the defendant makes this showing, the plaintiff must demonstrate a reasonable probability that he will prevail on his claim. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272–73 (9th Cir. 2013). If the plaintiff cannot make this showing, the Court must strike the claim. *Id.*

### III.    DEFENDANTS' RULE 12(B)(6) MOTIONS TO DISMISS

Both defendants move to dismiss Mr. Stossel's defamation claim under Rule 12(b)(6) for failure to state a claim. Because Mr. Stossel's defamation claim rests on allegations of

11

defendants' joint conduct and/or shared responsibility, and because defendants make similar arguments in support of their motions to dismiss,[9] the Court addresses defendants' motions together.

To state a claim for defamation under California law, Mr. Stossel must allege (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007); Cal. Civ. Code §§ 44-45. Additionally, because Mr. Stossel is a public figure,[10] he must show that defendants acted with "actual malice"—that is, with "knowledge that [a statement] was false" or with "reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 280 (1964). Defendants argue that Mr. Stossel does not allege facts plausibly supporting a defamation claim and that he cannot state a claim for defamation as a matter of law. Mr. Stossel opposes all of these arguments. The Court does not address all of defendants' arguments, but focuses on the question of whether the allegedly defamatory statements are actionable as statements of fact.

### A. The Allegedly Defamatory Statements

Mr. Stossel asserts a single claim for defamation against Meta and Science Feedback based on two allegedly defamatory statements. Dkt. No. 1 ¶¶ 115–133.

First, Mr. Stossel alleges that "[d]efendants stated by implication" that Mr. Stossel made a claim in the Fire Video—that "forest fires are caused by poor management[,] [n]ot by climate change"—that he did not make. *Id.* ¶ 116. In other words, Mr. Stossel alleges that defendants "falsely attributed to [him] a claim that he did not make in connection with the Fire Video" by affixing "missing context" and "misleading" labels to the Fire Video and cross-referencing Climate Feedback's Fire Article as support for those labels. *Id.* ¶¶ 112, 116, 118. Mr. Stossel calls this the "False Attribution." *Id.* ¶ 116. He alleges that a "reasonable reader of the False

---

[9] Meta vigorously disputes that it can be held responsible for the labels Science Feedback selects or for the explanations that appear when a viewer clicks on the "See Why" button. The Court finds it unnecessary to address this argument for purposes of resolving the motions.

[10] For purposes of these motions, Mr. Stossel does not dispute that he is a public figure. Dkt. No. 49 at 11; Dkt. No. 54 at 16.

Attribution, viewing Defendants['] statements in context, would and did understand it to mean that Stossel had claimed that climate change is not a cause of forest fires." *Id.* ¶ 118.

Second, Mr. Stossel alleges that "[d]efendants stated that Stossel's Alarmism Video had been subjected to a 'fact-check' that had determined that the Alarmism Video contained 'factual inaccuracies' and was 'partly false.'" *Id.* ¶ 125. Mr. Stossel calls these statements the "False Statements." *Id.* He alleges that "[a] reasonable reader, viewing these False Statements in context, would and did understand them to mean that Stossel's reporting contained inaccurate facts, rendering it partly false." *Id.* ¶ 127.

### B. Actionable Statements of Objective Fact

The First Amendment protects statements of subjective opinion, viewpoint, and interpretation, but not false statements or implied assertions of objective fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995) (citing *Unelko Corp. v. Rooney*, 912 F.3d 912 F.2d 1049, 1053 (9th Cir. 1990)). Here, the parties dispute whether the allegedly defamatory statements are actionable as statements of fact. Defendants argue that the challenged statements cannot reasonably be understood to declare or imply provable assertions of fact. Dkt. No. 27 at 16; Dkt. No. 50 at 14-16. Mr. Stossel argues that they can be, and were, understood as statements of fact by Mr. Stossel's viewers. Dkt. No. 49 at 15; Dkt. No. 54 at 7-8.

In evaluating the parties' arguments, the Court examines the general and specific contexts in which the statements were made, as well as the statements themselves. The Court considers the statements with respect to each video separately.

#### 1. Fire Video – False Attribution

Mr. Stossel does not object to the application of the "Missing Context" label to the Fire Video. He objects to statements made in connection with that label that he says imply he made a claim in that video—i.e., that "forest fires are caused by poor management[,] [n]ot by climate change." Dkt. No. 1 ¶ 116. He alleges that he did not make such a claim, and so the assertion that he did so is false. *Id.* The Court examines this contention in context.

First, Facebook's fact-check program, as practiced generally and in the particular instance

13

of the Fire Video, reflects a subjective judgment about the accuracy and reliability of assertions made in the content that has been checked. *See* Dkt. Nos., 27-3, 27-5. As is evident from text associated with the label place on the Fire Video, "Missing Context" means that "[i]ndependent fact-checkers say this information is missing context and could mislead people." Dkt. No. 1 ¶ 45. Simply because the process by which content is assessed and a label applied is called a "fact-check" does not mean that the *assessment itself* is an actionable statement of objective fact.[11]

Second, nothing in the text associating the "claim" that "[f]orest fires are caused by poor management[,] [n]ot by climate change" with the Fire Video implies that Mr. Stossel himself made such a claim. On its face, the challenged text implies or asserts that such a claim is made *in the video*.[12] A reviewer could reasonably conclude that such a claim is made in the video. For example, the video includes the following passages:

> Shellenberger: Climate change is real. It's not the end of the world. It's not our most serious environmental problem.
>
> Stossel: And it's not the main cause of the California fires.
> …
>
> Stossel: If not climate change, what is to blame?
>
> [Cartoon clip of Smokey the Bear saying, "Only you can prevent forest fires."]
>
> Stossel: Foolish policies. . . .
> …
>
> Stossel: Climate has made things worse. California's warmed three degrees over 50 years. But—
>
> Shellenberger: You could have had this amount of warming and not had these fires and the reason we know that is because the forests

---

[11] Mr. Stossel cites no authority supporting his suggestion that defendants must expressly identify their labels and associated statements as viewpoint or opinion. *See* Dkt. No. 54 at 1 ("Had Defendants transparently told the public what they now argue in court—that Defendants were not claiming to evaluate Stossel's work for factual accuracy, but instead were simply expressing a disagreement on scientific opinion—this lawsuit would not have been filed.") (cleaned up).

[12] For this reason alone, the False Attribution is not actionable. *See Hayes v. Facebook,* No. 19-CV-02106-TSH, 2019 WL 5088805, at *7 (N.D. Cal. Aug. 15, 2019), *report and recommendation adopted,* No. 19-CV-02106-HSG, 2019 WL 5091162 (N.D. Cal. Sept. 5, 2019) (holding that Facebook notice identifying link as malicious was not "of and concerning" plaintiff who posted link, and therefore not defamatory).

14

> that were well managed have survived the mega fires.
> …
> Stossel:  It's about time. Bad policies were the biggest cause of this year's fires, not the slightly warmer climate. And while climate change is a problem, Shellenberger's new book explains, it's not an apocalypse.

Dkt. No. 28 at 2:17-21, 3:10-13, 3:25-4:6, 6:25-7:4.  In any event, Mr. Stossel does not challenge the assessment that such a claim, if made, is "missing context" and therefore "misleading."  He asserts that because the "claim" is associated with a video Mr. Stossel narrated, produced, and posted on his Facebook page, any critique of the contents of that video reflects on him personally.  Even if the Court assumes, without finding, for purposes of this motion that this is so, the disputed attribution nevertheless is not a statement of objective fact about Mr. Stossel or his reporting, but rather the reviewer's subjective interpretation of the Fire Video's contents.  A reviewer's assessment that Mr. Stossel was sympathetic to, or endorsed, the views expressed by Mr. Shellenberger or otherwise in the Fire Video, and intended the video to communicate to his viewers that "poor management" caused the fires, "not climate change," is the kind of assessment that is protected by the First Amendment as a statement of opinion.[13]  *See Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (referring to judge as "dishonest" and "anti-Semitic" was statement of opinion incapable of being proved true or false); *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995) ("[A]ssessments of a lawyer's trial performance are inherently subjective and therefore not susceptible of being proved true or false."); *Moldea v. New York Times Co.*, 22 F.3d 310, 315 (D.C. Cir. 1994) ("There is a long and rich history in our cultural and legal traditions of affording reviewers latitude to comment on literary and other works. The statements at issue in the instant case are assessments of a book, rather than direct assaults on Moldea's character, reputation, or competence as a journalist.") *cert. denied,* 513 U.S. 875 (1994).  In other words, such an assessment is not capable of being proved true or false.

---

[13] In the context of First Amendment law, "the word 'opinion' is a label differentiating statements containing assertions of fact from those that do not." *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1194 (9th Cir. 1989).

Third, there is no dispute that the facts that form the basis for the "missing context" assessment are disclosed in the Forest Fire Article linked to the "Fact Check" button. That article describes at length and in detail why the claim that that "[f]orest fires are caused by poor management[,] [n]ot by climate change" is "misleading" and "misrepresents a complex reality." Dkt. No. 28-1 at ECF 2. But the article also indicates that it was intended to respond to "multiple Facebook posts published in September 2020" that, like the Fire Video Mr. Stossel posted, included a "claim that the forest fires currently burning in the western United States are caused by poor forest management and not climate change." Dkt. No. 28-1 at ECF 3. Mr. Stossel does not challenge any of the statements in the Fire Article as false. The contents of the Fire Article are consistent with defendants' contention that the alleged false attribution reflects a subjective interpretation of the contents of the video and the reviewer's assessment of the video's message based on fully disclosed facts. *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1159 (9th Cir. 2021) ("Statements are less likely to be expressions of fact where . . . the speaker fully discloses all relevant facts.")

For these reasons, the Court concludes that Mr. Stossel cannot plausibly allege that the False Attribution is actionable as a false statement of objective fact.

### 2. Alarmism Video – False Statements

Mr. Stossel objects to the application of the "Partly False" label to the Alarmism Video, and also to associated text stating that the video contains "factual inaccuracies." He contends that "[a] reasonable reader, viewing these False Statements in context, would and did understand them to mean that Stossel's reporting contained inaccurate facts, rendering it partly false." Dkt. No. 1 ¶ 127. The Court examines this contention in context.

First, as explained above with respect to the Fire Video, the application of the "Partly False" label to the Alarmism Video as part of Facebook's fact-checking program reflects a subjective judgment about the accuracy and reliability of assertions made in the video. As is evident from text associated with the label, "Partly False" means that "[i]ndependent fact-checkers say this information has some factual inaccuracies." *Id.* ¶ 125. Again, the "fact-check" performed reflects an *assessment* of the video, and is not itself a statement of objective fact.

1       Second, Mr. Stossel does not identify anything in the Alarmism Article that is linked via the text box and associated with the Alarmism Video that is a false statement of fact. To the contrary, his complaint contains only the bare and conclusory allegation that "the False Statements [by defendants] are provably false" because "the Alarmism Video contains no false facts." *Id.* ¶ 128. In other words, Mr. Stossel identifies no false statements of fact in the Alarmism Article; rather, he says that defendants' "Partly False" and "contains factual inaccuracies" statements are false because, according to him, the Alarmism Video contains no "false facts."

      Third, the Alarmism Article is a classic example of viewpoint expression, or opinion, based on disclosed facts. *See Yagman*, 55 F.3d at 1439 ("A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning."); *see also Herring Networks,* 8 F.4th at 1159. The article identifies multiple examples of false statements or factual inaccuracies in the Alarmism Video and explains why the reviewers judge the statements to be false or inaccurate. *See, e.g.,* Dkt. No. 28-3 (identifying statement made by Professor Legates that sea levels have been rising for 20,000 years and probably will continue, and observing that this is "imprecise and misleading, as it implies sea levels have continued rising since then and current sea level rise is just a continuation of past natural fluctuations"; identifying statement by Patrick Michaels that "hurricanes and other storms" are not "getting worse" and that "there is no relationship between hurricane activity and the surface temperature of the planet," and that Michaels is "cherry-picking a single measure of hurricane activity and ignoring the broader corpus of scientific research.") Mr. Stossel identifies no facts in the Alarmism Article that he contends are false. Defendants' critique of the Alarmism Video reflects a subjective assessment of the contents of the video and is not capable of being proved true or false.

      For these reasons, the Court concludes that Mr. Stossel cannot plausibly allege that the False Statements are actionable as false statements of objective fact.

## IV.   DEFENDANTS' ANTI-SLAPP MOTIONS TO STRIKE

      Defendants move to strike the complaint pursuant to California's anti-SLAPP statute. They argue that Mr. Stossel's defamation claim arises from activities protected by the First Amendment concerning matters of public interest, and that he is unlikely to succeed on the merits

17

1  of his claim. Dkt. No. 27 at 19–22; Dkt. No. 50 at 11-24. The Court first considers whether

2  defendants have shown that Mr. Stossel's defamation claim arises from each defendant's protected

3  activity concerning matters of public interest. Then, the Court considers whether Mr. Stossel has

4  shown a reasonable probability of success such that his claim has "at least minimal merit."

### A. Claim Arises from Protected Activity

Mr. Stossel alleges that with respect to Facebook's fact-checking program, defendants acted jointly or at the very least Science Feedback acted as Meta's agent. Dkt. No. 1 ¶¶ 107-109, 120, 129. Defendants dispute this characterization of their relationship and challenge the sufficiency of Mr. Stossel's allegations of joint conduct or agency. *See* Dkt. No. 27 at 10-11; Dkt. No. 50 at 3-4. The Court need not resolve this dispute. For purposes of evaluating defendants' anti-SLAPP motions, the Court considers the activity as described by Mr. Stossel in the complaint: (1) affixing the labels "Missing Context" and "Partly False," together with explanatory text, to the Fire Video and Alarmism Video, respectively, on the Facebook website; and (2) associating with those labels the additional statements and articles from the Climate Feedback website.

The anti-SLAPP statute recognizes four categories of protected speech and petitioning, including "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," Cal. C.C.P. § 425.16(e)(3), and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest," *id.* § 425.16(e)(4). Websites accessible to the public are considered "public forums" for purposes of the anti-SLAPP statute. *Nygard, Inc. v. Uusi-Kettula*, 159 Cal. App. 4th 1027, 1039 (2008). Matters of "public interest" or concerning a "public issue" include "any issue in which the public is interested." *Id.* at 1042.

The Facebook website and the Climate Feedback website are publicly accessible websites where the public can view content that is posted and, at least in the case of Facebook, post content of their own. *See* Dkt. No. 1 ¶¶ 24, 108. Defendants argue that these websites are "public forums" for purposes of the anti-SLAPP statute, and Mr. Stossel does not contend otherwise. Likewise, defendants argue that climate change, including its causes and solutions, is a matter of

United States District Court
Northern District of California

public interest. *See, e.g., Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-CV-02824, 2019 WL 281370, at *18 (N.D. Cal. Jan. 22, 2019) (where plaintiff's claims were based on defendants' speech activities regarding the "important public matter of environmental sustainability," the action arose from speech made concerning an issue of public interest). Again, Mr. Stossel does not contend otherwise.

Regardless of whether the challenged statements—i.e., the False Attribution and the False Statements—were made by both defendants, or created by one defendant and published by the other, both statements were made in a public forum and concern a matter of public interest. For this reason, the statements qualify as protected activity for purposes of the anti-SLAPP statute. *See Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (holding that "the choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment" protected by the First Amendment); *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 424–25 (9th Cir. 2014), "where . . . an action directly targets the way a content provider chooses to deliver, present, or publish news content on matters of public interest, that action is based on conduct in furtherance of free speech rights and must withstand scrutiny under California's anti-SLAPP statute.").

Accordingly, the Court finds that defendants have shown that Mr. Stossel's defamation claim arises from protected activity within the meaning of the anti-SLAPP statute.

### B. Probability of Success on the Merits

For the reasons described above, Mr. Stossel cannot show a probability of success on the merits of his defamation claim because he fails to state a claim for defamation under the Rule 12(b)(6) pleading standard. *Planned Parenthood*, 890 F.3d at 834 (plaintiff must satisfy the Rule 12(b)(6) pleading standard).

Accordingly, the Court grants defendants' motions to strike the complaint.

## V. LEAVE TO AMEND

A court should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In determining whether leave to amend is appropriate, the district court

19

considers the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citation and internal quotation marks omitted). This same standard applies where a court grants a defendant's anti-SLAPP motion to strike. *See Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (citing *Metabolife*, 264 F.3d at 845-46).

Here, Mr. Stossel requests leave to amend his complaint if the Court finds that he fails to state a claim for defamation. Dkt. No. 49 at 19; Dkt. No. 54 at 18. He does not describe the amendments he proposes to make. In any event, even if he had, the Court is not persuaded that Mr. Stossel could make any amendments that would remedy the critical deficiency the Court identifies above—i.e., that the challenged statements are not actionable as false statements of objective fact. The record before the Court includes not only the allegations of the complaint, but also the videos in question and the entirety of the challenged statements, all of which are incorporated by reference in the complaint. For this reason, the Court finds that any amendment of the pleadings would be futile because no additional allegations could alter the nature of the underlying statements challenged as defamatory. *See Herring Networks,* 8 F.4th at 1160–61 (affirming dismissal without leave to amend on grounds that amendment would be futile).

Accordingly, the Court dismisses the complaint without leave to amend.

## VI. CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss the complaint pursuant to Rule 12(b)(6) and to strike the complaint pursuant to California's anti-SLAPP statute without leave to amend. If defendants seek an award of attorneys' fees and costs pursuant to the anti-SLAPP statute, Cal. C.C.P. § 425.16(c)(1), they must file a noticed motion for attorneys' fees and costs in compliance with Civil Local Rule 54-5.

**IT IS SO ORDERED.**

Dated: October 11, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge

20